IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| QUALTEQ, INC., d/b/a VCT NEW JERSEY, INC., *et al.*,[1] | ) ) ) ) | Case No. 11-12572 (___) Joint Administration Requested |
| Debtors. | ) ) ) | |

## EMERGENCY MOTION PURSUANT TO SECTIONS 361 AND 363 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 4001 FOR INTERIM AND FINAL ORDERS: (1) AUTHORIZING USE OF CASH COLLATERAL; (2) SCHEDULING FINAL HEARING; AND (3) FOR RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the "*Debtors*"), by and through their proposed undersigned counsel, hereby move this Court (the "*Motion*") for entry of orders pursuant to sections 361 and 363 of title 11 of the United States Code (the "*Bankruptcy Code*") and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*"): (1) authorizing the Cash-Encumbered Debtors (as that term is defined herein) to use cash collateral pursuant to the respective budgets attached as Exhibit A to the Proposed Interim Order attached hereto (collectively, the "*Budgets*"); (2) scheduling a final hearing on the Motion; and (3) for other related relief as necessary. In further support of this Motion, the Debtors respectfully state as follows:[2]

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer-identification number, are: (i) Qualteq, Inc., d/b/a VCT New Jersey, Inc. (4600); (ii) 1400 Centre Circle, LLC (7091); (iii) 5200 Thatcher, LLC (6991); (iv) 5300 Katrine, LLC (6016); (v) Automated Presort, Inc. (0850); (vi) Avadamma LLC (4775; 4800; 4810; 4829); (vii) Creative Automation Company (4350); (viii) Creative Investments, a General Partnership (5992); (ix) Fulfillment Xcellence, Inc. (3461); (x) Global Card Services, Inc. (4581); (xi) Unique Data Services, Inc. (1068); (xii) Unique Embossing Services, Inc. (1043); (xiii) Unique Mailing Services, Inc. (2594); (xiv) University Subscription Service, Inc. (3669); (xv) Versatile Card Technology, Inc. (5258); (xvi) Veluchamy LLC (3434); and (xvii) Vmark, Inc. (5904).

[2] The facts and circumstances supporting this Motion are set forth in the *Declaration of Arun Veluchamy, Vice President of Qualteq, Inc., in Support of First Day Motions* (the "*First Day Declaration*"), filed contemporaneously herewith.

## JURISDICTION

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are sections 361 and 363 of the Bankruptcy Code and Bankruptcy Rule 4001.

## BACKGROUND

3. On the date hereof (the "*Petition Date*"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "*Chapter 11 Cases*"). The Debtors are functioning as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. Collectively, the Debtors operate one of the largest vertically-integrated direct marketing businesses in North America, providing a full range of direct marketing services to numerous Fortune 500 companies, major national banks, and other well-known customers. The Debtors offer their customers a broad array of services – including database management and customization, customized printing, mail sorting and shipping, and plastic card production and personalization – from multiple state-of-the-art facilities in Illinois, Iowa, and New Jersey.

5. Although the Debtors' trade name of "Vmark" is relatively recent, the first of the Vmark companies – Creative Automation Company – was actually established in 1969. Almost all of the other Debtors were formed and grown by Vmark's founders since that time, although CAC and VCT-NJ were acquired as mature businesses in 1981 and 2003 respectively.

6. Today, the Debtors operate from nine domestic facilities with over 1,000,000 square feet of production space. The Debtors' approximately 1,370 employees – none unionized – executed over six billion marketing messages for customers in the past year alone, making them

one of the largest direct marketing solution providers in North America. The Vmark companies also collectively constitute one of the nation's largest privately-held, minority-owned businesses and one of the largest minority-certified suppliers in the United States – a certification that gives them a distinct advantage in marketing to major corporate clients.

7. Although the Debtors have been historically profitable – generating a small operating profit on gross revenues of approximately $155 million in 2010 – in recent months the Debtors' businesses have been harmed by unrelated litigation and judgments against certain of the Debtors' shareholders. The Debtors' problems first arose in December of 2010 when Vasu and Jaganath Naidu (individual creditors of Debtor Vmark, Inc., who are owed approximately $1.23 million) and Rajiv Parthasarathy (an individual creditor of Debtor Versatile Card Technology, Inc. who is owed approximately $980,000) obtained judgments against Pethinaidu Veluchamy ("*Mr. Veluchamy*"), the Debtors' founder. Although unrelated to the Debtors, due to default provisions in certain of the Debtors' loan documents, millions of dollars in loans from numerous lenders – including BBH Financial Services (API), Key Equipment Finance (GCS), Key Equipment Finance (VCT), Key Equipment Finance (UMS), TCF (VCT), TD Bank (VCT-NJ), Inland Bank (UMS), Pitney Bowes (UMS), Broadway Bank-MB Financial (Avadamma LLC), Harris Bank (Creative Investments), Skyland Bank (Veluchamy LLC), Western Springs National Bank (GCS), and Western Springs National Bank (API) – were suddenly in default. These defaults and associated cross-defaults (due to cross-default provisions in other loan facilities) have caused a ripple of effects, given that the Debtors collectively have at least 27 secured lenders (*see* chart in the First Day Declaration).

8. Although the damage was already done when the Naidu judgments were entered, subsequent developments have only exacerbated these problems, as multiple other creditors have

WM1A 1007904v1 08/14/11

obtained multi-million dollar judgments against Mr. Veluchamy and/or his wife. Although once again wholly unrelated to the Debtors, the judgments have generated significant negative publicity. Accordingly, even beyond the numerous defaults under their lending facilities, the Debtors have been struggling to hold on to concerned customers, and competitors have been actively taking advantage of the Debtors' plight.

9. Despite the cascade of defaults and negative publicity emanating from the judgments against Mr. and Mrs. Veluchamy, the Debtors have managed to maintain operations for several months. Unfortunately, however, the foregoing issues have resulted in serious concerns about the Debtors' continued ability to operate. This is particularly true given that the Debtors' businesses are seasonal, with the Debtors' greatest volumes of both sales of plastic cards (including retailer gift cards) and shipments of promotional materials arriving in the months leading up to the holidays. Right now, as the Debtors gear up for their busiest season, their cash needs (for example, to purchase raw materials and other inputs and to fund payroll and other costs) are most acute. Any unexpected disruption in operations at this time would be devastating to the Debtors' ability to survive over the long term.

10. The Debtors' concerns about their continued ability to operate during this critical part of the year have been heightened further by the fact that many customers have exhibited insecurity about the Debtors' stability in light of the litigation surrounding the Debtors' principals. This uncertainty has threatened key customer relationships, and competitors have been aggressively waging a negative campaign, suggesting to customers that the Debtors may be unable to service their orders during the critical holiday season. The Debtors vitally need stability and a way to assure customers that the high level of service they have always received from the Debtors will not be disrupted.

11. In light of these circumstances, and to best exercise their fiduciary duties, the Debtors retained Dan Scouler and Scouler & Company as an independent Chief Restructuring Officer, and after a thorough review of their options, have initiated the instant bankruptcy proceeding to restructure their debts and maximize value. The Debtors determined that a proactive chapter 11 bankruptcy filing presented the best and most efficient forum for globally resolving their financial issues, restoring the confidence of customers and suppliers, and generally maximizing value for all stakeholders.

## DISCUSSION

### *The Need for Use of Cash Collateral*

12. Certain entities (collectively, the "*Lenders*") appear to assert security interests in cash or cash proceeds of other assets of the respective Debtors as follows:

| Entity | Debtor(s) |
|---|---|
| Amalgamated Bank of Chicago | Fulfillment Xcellence, Inc. ("*FXI*") |
| | Versatile Card Technology, Inc. ("*VCT*") |
| Burr Ridge Bank and Trust | Global Card Services, Inc. ("*GCS*") |
| Inland Bank | Unique Mailing Services, Inc. ("*UMS*") |
| Oakbrook Financial[3] | Creative Automation Company ("*CAC*") |
| | Unique Data Services, Inc. ("*UDS*") |
| | University Subscription Service, Inc. ("*USS*") |
| Sterling Bank | Qualteq, Inc. ("*VCT-NJ*") |

13. The Debtors set forth above (collectively, the "*Cash-Encumbered Debtors*") have an immediate need to use cash collateral (as that term is defined in section 363 of the Bankruptcy Code, the "*Cash Collateral*") of the respective Lenders in order to assure the orderly administration of their bankruptcy estates. Without use of the Lenders' Cash Collateral on a limited basis, the Cash-Encumbered Debtors will not be able to pay their employees and other direct operating expenses. Inability to use the Cash Collateral on an emergency basis will likely

---

[3] For purposes of disclosure, the Debtors note that Oakbrook Financial is a finance company in which the spouse of one of the Debtors' principals has an interest.

5

result in an immediate cessation of the ongoing operations of the Cash-Encumbered Debtors' businesses and will cause irreparable harm to the Cash-Encumbered Debtors' estates (not to mention to the estates of the other Debtors since all are part of an integrated direct marketing operation). Put simply, the Cash-Encumbered Debtors cannot continue operations and cannot continue their restructuring efforts absent use of the Cash Collateral. For this reason, this Motion is being presented on an emergency interim basis.

### *Adequate Protection*

14. Pursuant to section 363(c)(2) of the Bankruptcy Code, a debtor in possession may not use cash collateral without the consent of the secured party or court approval. As will further be demonstrated at the hearings on this Motion, regardless of whether the Lenders consent to the respective Cash-Encumbered Debtors' use of Cash Collateral, the respective Lenders will be adequately protected for the reasons set forth below.

15. *First*, with the exception of Oakbrook Financial,[4] each of the Lenders is oversecured. Based on a review of the most current balance sheets, the assets of the Cash-Encumbered Debtors (other than CAC, UDS, and USS) materially exceed the secured claims of their respective Lenders.

16. Where the creditor is oversecured, courts often conclude that the equity cushion alone constitutes adequate protection. *See, e.g., Matter of Continental Airlines, Inc.*, 146 B.R. 536, 539 (Bankr. D. Del. 1992) (*citing In re Senior Care Props., Inc.*, 137 B.R. 527, 529 (Bankr. N.D. Fla. 1992) (creditor adequately protected by $530,000 equity cushion)).

17. *Second*, as additional adequate protection for the Cash-Encumbered Debtors' use of Cash Collateral hereunder, each Cash-Encumbered Debtor shall provide its respective Lenders,

---

[4] Oakbrook Financial is nevertheless adequately protected for other reasons discussed herein.

6

to secure payment of an amount equal to any diminution in value of the Lenders' respective collateral, a security interest in and lien upon all personal property assets of the respective Cash-Encumbered Debtors and all hereafter-acquired personal property assets of the Cash-Encumbered Debtor, of any kind or nature, wherever located, and the proceeds, products, rents, and profits thereof, whether arising from section 552(b) of the Bankruptcy Code or otherwise, (*but not including any causes of action arising under the Bankruptcy Code*), senior to any other security interests, liens, or encumbrances, subject only to, in the following order of priority (a) valid, perfected, and enforceable prepetition liens which are senior to the Lenders' respective liens or security interests as of the Petition Date, (b) the payment of the United States Trustee's fees, pursuant to 28 U.S.C. § 1930, (c) the amount of the Debtors' professionals' fees and disbursements accrued as of the date of the termination of the Cash-Encumbered Debtors' use of Cash Collateral.[5]

18. Pursuant to section 361 of the Bankruptcy Code, replacement liens in the nature of those provided by the Cash-Encumbered Debtors in this instance also serve as adequate protection. 11 U.S.C. § 361; *see also In re Conference of African Union First Colored Methodist Protestant Church*, 184 B.R. 207, 220 n.9 (Bankr. D. Del. 1995) ("pursuant to Code § 361, 'adequate protection' to a secured creditor may be provided in the form of an additional or replacement lien").

### *Interim Approval of the Use of Cash Collateral Should Be Granted*

19. Bankruptcy Rule 4001(b) provides that a final hearing on a motion to use cash collateral pursuant to section 363 may not be commenced earlier than fifteen (15) days after the service of such motion. Upon request, however, the Court is empowered to conduct a preliminary

---

[5] As set forth in paragraph 3 of the Proposed Interim Order, the Budgets shall include payments to a professional fee escrow.

7

expedited hearing on the motion and authorize use of cash collateral to the extent necessary to avoid immediate and irreparable harm to a debtor's estate.

20. Pursuant to Bankruptcy Rule 4001(b), the Cash-Encumbered Debtors request that the Court conduct a preliminary expedited hearing as soon as practicable to enter the Proposed Interim Order authorizing the Cash-Encumbered Debtors to use Cash Collateral in an aggregate amount not to exceed the amounts set forth in the Budget attached to the Proposed Interim Order (subject to a 15% variance as set forth in the Proposed Interim Order) pending the final hearing.

21. The ability of the Cash-Encumbered Debtors to finance, through the use of Cash Collateral, their ongoing operations as they restructure their indebtedness and businesses for the benefit of all creditor constituencies is in the best interests of the Cash-Encumbered Debtors, all their creditors, and their estates. The relief requested herein is necessary in order to avoid immediate and irreparable harm and prejudice to the estates and to all parties-in-interest in these Chapter 11 Cases.

22. The Cash-Encumbered Debtors have an urgent and immediate need to use Cash Collateral to continue to their business operations while they pursue the restructuring. All of the Debtors' businesses will be immediately and irreparably harmed without authorization from the Court to use Cash Collateral, as requested, on an interim basis pending the final hearing, and the Cash-Encumbered Debtors' restructuring efforts (as well as, in all likelihood, the restructuring efforts of all of the Debtors) will be over.

23. The interests of the respective Lenders in the Cash Collateral will be adequately protected pursuant to the Proposed Interim Order as discussed above. Pending the final hearing, this Motion should be granted on an interim basis, on the terms set forth in the Proposed Interim

WM1A 1007904v1 08/14/11

Order, in order to maximize the value of the estates, and to prevent irreparable harm to the Cash-Encumbered Debtors prior to the final hearing.

### *Request for a Final Hearing*

24. Finally, pursuant to Bankruptcy Rule 4001(c)(2), the Cash-Encumbered Debtors respectfully request that this Court set a date for the final hearing. The Cash-Encumbered Debtors request that they be authorized to serve a copy of the signed Interim Order, which fixes the time and date for filing objections, if any, by first class mail upon the Lenders, the United States Trustee, the Debtors' thirty (30) largest creditors on a consolidated basis, and any party having filed a request to receive service in the Chapter 11 Cases. The Debtors request that the Court consider such notice of the final hearing to be sufficient notice under Rule 4001 of the Bankruptcy Rules.

### *Compliance with Local Rule 4001-2*

25. Rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedures of the United States Bankruptcy Court for the District of Delaware (the "*Local Rules*") requires that certain provisions of cash collateral requests be highlighted and that the Debtors provide justification for the inclusion of such highlighted provisions. No separate disclosure or discussion is required with respect to Local Rule 4001-2(a)(i)(A)-(G) as there are no provisions in the Proposed Interim Order that are implicated by the requirements therein. *See* Local Rule 4001-2(a)(i)(A)-(G).

### **NOTICE**

26. Notice of this Motion has been given to (a) the Office of the United States Trustee, (b) the secured lenders with security interests in the Debtors' cash, (c) the Debtors' largest thirty (30) unsecured creditors on a consolidated basis, as identified in their chapter 11 petitions, (d) the Office of the United States Attorney for the District of Delaware, and (e) the Internal Revenue

Service. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

WHEREFORE, the Debtors respectfully request that this Court (a) conduct an emergency hearing on this Motion; (b) enter an Interim Order substantially in the form submitted herewith; (c) schedule a final hearing on the relief requested herein; and (d) grant such further relief as may be equitable and just.

Dated: August 14, 2011

K&L GATES LLP
Harley J. Goldstein
Sven T. Nylen
Matthew E. McClintock
Jeffrey M. Heller
70 West Madison Street, Suite 3100
Chicago, Illinois 60602
Telephone: (312) 372-1121
Facsimile: (312) 827-8000

-and-

FOX ROTHSCHILD LLP

Jeffrey M. Schlerf (DE Bar No. 3047)
Eric M. Sutty (DE Bar No. 4007)
John H. Strock (DE Bar No. 4965)
L. John Bird (DE Bar No. 5310)
Citizens Bank Center, Suite 1300
919 North Market Street
Wilmington, Delaware 19801
Telephone: (302) 654-7444
Facsimile: (302) 656-8920

*Proposed Co-Counsel for the Debtors and Debtors in Possession*