**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In Re: | : : : | Chapter 11 |
| QUALTEQ, INC., d/b/a/ VCT NEW JERSEY, INC., *et al.*,[1] | : : : | Case No. 11-12572 (KJC) Jointly Administered |
| Debtors. | : : : : : | **Objection Deadline: October 31, 2011** **Hearing Date: November 3, 2011** **Re: Docket No. 328** |

**OBJECTION OF AMALGAMATED BANK OF CHICAGO
TO THE MOTION OF DEBTORS AND DEBTORS IN POSSESSION FOR ORDER
AUTHORIZING SECURED POST PETITION FINANCING ON A SUPER PRIORITY
BASIS PURSUANT TO 11 U.S.C. § 364**

Amalgamated Bank of Chicago ("ABOC"), by and through its undersigned counsel, Montgomery, McCracken, Walker & Rhoads, LLP files this Objection (the "Objection") to the Motion ("Motion") of Debtors and Debtors in Possession (the "Debtors") For Order Authorizing Secure Post Petition Financing on a Superpriority Basis Pursuant to 11 U.S.C § 364 and in support thereof, states as follows:

## SUMMARY OF OBJECTIONS

1. Pursuant to the Motion, the Debtors are seeking to obtain post petition financing, for Qualtec, Inc. d/b/a VCT-NJ, Inc. ("Qualtec"), including the roll up of a pre-petition loan from Sterling National Bank ("Sterling") on a superpriority basis pursuant to 11 U.S.C. § 364(c) of

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer-identification number, are: (i) Qualteq, Inc., d/b/a VCT New Jersey, Inc. (4600); (ii) 1400 Centre Circle, LLC (7091); (iii) 5200 Thatcher, LLC (6991); (iv) 5300 Katrine, LLC (6016); (v) Anar Real Estate LLC (9267); (vi) Automated Presort, Inc. (0850); (vii) Avadamma LLC (4775; 4800; 4810; 4829); (viii) Creative Automation Company (4350); (ix) Creative Investments, a General Partnership (5992); (x) Fulfillment Xcellence, Inc. (3461); (xi) Global Card Services, Inc. (4581); (xii) Unique Data Services, Inc. (1068); (xiii) Unique Embossing Services, Inc. (1043); (xiv) Unique Mailing Services, Inc. (2594); (xv) University Subscription Service, Inc. (3669); (xvi) Versatile Card Technology, Inc. (5258); (xvii) Veluchamy LLC (3434); and (xviii) Vmark, Inc. (5904).

Title 11, U.S.C. (the "Bankruptcy Code") and to have certain guarantees affirmed and assumed, as modified, including that of Versatile Card Technology, Inc. ("VCT").

2. ABOC is a secured creditor of VCT pursuant to a $4,000,000.00 credit facility it established for VCT and Fulfillment Xcellence, Inc., ("FXI"). Earlier in these cases, ABOC and the Debtors negotiated an order authorizing the use of ABOC's cash collateral (the "ABOC CCO'", at Dkt. No. 268). The relief sought in the Motion violates the ABOC CCO in several respects, most importantly by impairing ABOC's collateral position pursuant to the superpriority claim that it seeks to impose on ABOC's collateral in favor of Sterling, even though this is prohibited under the terms of the ABOC CCO. Further, to the extent ABOC might be in an oversecured position, the superpriority claim the Debtors seek on VCT's and FXI's assets could act to decrease this equity cushion as well as impair ABOC's super priority administrative claim granted under the ABOC CCO, and ABOC would not be adequately protected. The relief sought in the Motion is problematic for several other reasons as well.

3. The Debtors are seeking to have VCT reaffirm and assume its guaranty of the pre-petition Sterling loan and impose a superpriority claim on VCT's assets for doing so. In effect, this is taking a pre-petition unsecured obligation and granting it superpriority status, which is objectionable to ABOC since it directly impacts its collateral.

4. The Debtors are seeking a superpriority claim senior to all other such claims against all Debtors, including ABOC's other borrower, FXI. Again, this violates the terms of the ABOC CCO with respect to the Debtors use of FXI's cash collateral and impairs ABOC's collateral position, for the same reasons as it does with respect to VCT.

2829066v1

5.  The Debtors have not demonstrated that they have sought credit from other sources or that they are unable to obtain credit on better terms than are being offered by Sterling, which is prerequisite to debtor in possession ("DIP") financing under Bankruptcy Code § 363.

6.  The terms of the DIP loan do not provide any significant benefit the Debtors. It does, however, provide significant benefits to their insider guarantors. For instance, under the DIP loan, it appears that one of the guarantors, Arun Velachamy may use up to $400,000 to satisfy a settlement resolving a pending RICO case pursuant to a pledge agreement being modified and assumed under the terms of the DIP loan. This pledge agreement is not annexed to the Motion, nor is there any explanation as to nature of the RICO suit or the proposed settlement. Additionally, both Arun and Anu Velachamy have guaranteed the pre-petition Sterling loan for $2 million each. In the event the pre-petition loan is rolled up and given superpriority status, these guarantors will receive a direct benefit, since their potential liability as guarantors may be reduced. ABOC submits that, to the extent that the DIP loan is being used for these purposes, it is clearly unacceptable.

7.  Pursuant to the ABOC CCO, both VCT and FXI are required to maintain a borrowing base and report compliance under the borrowing base to ABOC on a bi-monthly basis. To the extent that the relief sought in the Motion renders assets ineligible under this borrowing base, it is objectionable. Further, the ABOC CCO, which incorporates the terms and conditions of the underlying loan documents, precludes VCT and FXI from encumbering assets subject to the borrowing base and ABOC's security interests. The proposed DIP loan and the superpriority it seeks to put in place on these assets violate these terms and cannot be approved. Moreover, even without such superpriority impairment, the eligible collateral securing ABOC's interests under the borrowing base has been declining, leaving ABOC in a position that it may

not be adequately protected under the ABOC CCO. Thus, to allow further impairment of ABOC's eligible collateral, which is protected under the ABOC CCO is objectionable as well.

8. For these reasons, and as set forth below, ABOC objects to the entry of an order approving the Sterling DIP loan sought by the Debtors, and respectfully submits that the relief sought in the Motion be denied.

**PROCEDURAL BACKGROUND**

9. On August 14, 2011, (the "Petition Date") Qualteq, Inc., d/b/a VCT New Jersey, Inc., 1400 Center Circle, LLC, 5200 Thatcher, LLC, 5300 Katrine, LLC, Automated Presort, Inc., AVADAMMA LLC, Creative Automation Company, Creative Investments, A General Partnership, Global Card Services, Inc., Unique Data Services, Inc., Unique Embossing Services, Inc., Unique Mailing Services, Inc., University Subscription Service, Inc., Veluchamy, LLC, Vmark, Inc., FXI and VCT (collectively, the "Initial Debtors") each filed voluntary petitions for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court" or "Court"). Additionally, on September 11, 2011 the Initial Debtors' real estate management company, Anar Real Estate LLC ("Anar," collectively with the Initial Debtors, the "Debtors") filed for chapter 11 relief (Case No. 11-12860).

10. Pursuant to Bankruptcy Code §§ 1007 and 1108, the Debtors are presently acting as debtors in possession, continuing in possession of their respective property, and managing and operating their respective businesses.

11. The Court is jointly administering the Debtors' chapter 11 cases pursuant to the Court's Orders entered August 16, 2011 [Dkt. No. 28] and September 13, 2011 [Dkt. No. 172].

12. An official committee of unsecured creditors (the "Committee") was appointed on August 25, 2011.

13. On August 18, 2011, the Court entered an Interim Order Authorizing Use of Cash Collateral in which Amalgamated Bank of Chicago and Burr Ridge Bank & Trust and Inland Bank Assert Security Interests and Scheduling Final Hearing (the "Interim Order"). [Dkt. No. 47]. By agreement of the parties, the final hearing regarding the use of cash collateral was extended to September 22, 2011, and then again to October 6, 2011. In advance of the October 6 hearing, ABOC filed an objection.

14. At a hearing held on October 6, 2011, with the consent of ABOC, the Debtors obtained approval of the ABOC CCO.

15. On October 19, 2011 the Debtors filed the Motion. By agreement of the parties, ABOC's objection deadline was extended to October 31, 2011.

## JURISDICTION AND VENUE

16. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter constitutes a core proceeding pursuant to 28 U.S.C. § 157(b).

## OBJECTION

**A. The Debtors have Failed to Comply with Bankruptcy Code § 364(c)**

17. As a preliminary matter, the Debtors have failed to satisfy their burden under Bankruptcy Code section 364(c), which permits the obtaining of credit or incurrence of debt on an unsecured superpriority basis if a finding is made after notice and hearing, that the Debtors are "unable to obtain unsecured credit allowable under section 503(b)(l) of [the Bankruptcy Code]." 11 U.S.C. § 364(c); see In re Ames Dep't Stores, Inc., 115 B.R. 34, 37 (Bankr.

S.D.N.Y. 1990) (debtor must show that it has made a reasonable effort to seek other sources of financing under sections 364(a) and (b) of the Bankruptcy Code).

18. Courts have applied the following three-part test to determine whether a debtor is entitled to financing under section 364(c) of the Bankruptcy Code:

(a) the debtor is unable to obtain unsecured credit under section 364(b), i.e., by allowing a lender only an administrative claim;

(b) the credit transaction is necessary to preserve the assets of the estate; and

(c) the terms of the transaction are fair, reasonable, and adequate, given the circumstances of the debtor-borrower and the proposed lender. In re Crouse Group, Inc., 71 B.R. 544, 549 (Bankr. E.D. Pa. 1987).

19. Here, the Debtors have failed to demonstrate on any level that they sought alternative financing on terms more favorable than those offered by Sterling. Moreover, the new financing sought is in an amount of less than $800,000, with a roll up of approximately $3.7 million of pre-petition debt on a superpriority basis. Why the Debtors are seeking such an arrangement, without exploring any other options is not explained in the Motion. Further, there is nothing set forth in the Motion to establish that the DIP loan terms are fair and reasonable or that it is necessary to preserve estate assets. In fact, a review of the Qualtec budget annexed to the Debtors' Initial Monthly Operating Reports would indicate otherwise, since it shows the positive net cash balance for Qualtec as of December 16, 2011 over $352,000, without any additional financing. Accordingly, the Debtors have not sustained their burden under Bankruptcy Code §364 (c) and for this reason alone, the Motion should be denied.

-6-
2829066v1

**B.     The Relief Sought in the Motion Violates the Terms of the ABOC CCO**

20.     As set forth above and in the ABOC CCO, FXI and VCT owed ABOC approximately $4 million, inclusive of interest. In order to allow VCT and FXI to continue fund operations, ABOC consented to the use of its cash collateral and the ABOC CCO was entered. The ABOC CCO sets forth terms and conditions that require VCT and FXI to maintain a borrowing base of eligible assets to secure their obligations to ABOC, and that pursuant to the pre-petition loan documents among VCT, FXI and ABOC, VCT and FXI are precluded from otherwise encumbering ABOC's assets. The relief sought in the Motion violates these terms by seeking a superpriority claim on these potential eligible assets of VCT and FXI. Moreover, the borrowing base certificates that FXI and VCT are required to deliver to ABOC show that its collateral position has been declining as these cases progress. Accordingly, any equity cushion that ABOC may have is steadily eroding, and further impairing it by granting a superpriority claim under the Motion leaves ABOC in a position that it may not be adequately protected in violation of the ABOC CCO.

21.     The ABOC CCO also provides ABOC with a superpriority administrative expense claim with respect to VCT and FXI that shall not be subject to, subordinated or made *pari passu* with any other lien or security interest, whether under Bankruptcy Code sections 363, 364 or otherwise, unless specifically provided for in the ABOC CCO. There is no provision in the ABOC CCO that would permit the Debtors to provide Sterling with the superpriority administrative claim that it seeks to provide under the Motion. Accordingly, the Debtors' Motion is seeking relief that is prohibited under the ABOC CCO.

22.     Further, to the extent that VCT's guaranty is assumed under the proposed DIP loan and Sterling is granted a superpriority administrative claim against VCT's and FXI's assets,

in the event of a default under the DIP loan, Sterling could seek payment from these assets on a superpriority basis (as opposed to a pre-petition unsecured basis), which has the potential to wipe out the equity cushion that currently adequately protects ABOC interests, contrary to the ABOC CCO. Thus, the Debtors have failed to demonstrate that granting the relief sought under the Motion will not impact the adequate protection afforded to ABOC under the ABOC CCO. *See* 11 U.S.C. § 363(p); *see also* In re Swedeland Dev. Group, Inc., 16 F.3d 552, 564 (3d Cir. 1994) (the Debtors bear the burden of proof on the issue of adequate protection).

23. The proposed DIP loan is further problematic because the DIP loan documents contain numerous events of default that could permit Sterling to terminate the DIP loan and seek full repayment of all outstanding amounts, some of which may be triggered simply because the Debtors are seeking to comply with the terms of the ABOC CCO. For instance, it is an event of default if VCT makes any payments other than to pay Sterling on the DIP loan indebtedness or Sterling's pre-petition secured indebtedness. The ABOC CCO, however, requires that VCT and FXI make any payment to ABOC that is necessary to bring them into compliance with the borrowing base requirements under its loan with ABOC. Should VCT make such a payment, Sterling could declare the DIP loan immediately due, terminate it and seek to liquidate its collateral, thereby shutting down Qualtec and potentially jeopardizing the Debtors reorganization.

**C.   The Terms of the DIP Loan Benefit Insider Guarantors**

24. The Assumption Agreement, Amendment to Loan and Security Agreement and Amendment to other Loan Documents attached at Exhibit "B" to the Motion (the "Amendment") requires the assumption of certain guarantees of the Debtors' insiders, namely Arun and Anu Velachamy. Thus, the DIP loan would provide a direct benefit to them, by potentially using the

assets of Qualtec, VCT and FXI to satisfy the DIP loan in the event of default, on a superpriority basis, potentially relieving them of liability as guarantors. This is not disclosed with any clarity in the Motion. Thus, given that the DIP loan provides under $800,000 in new money to the Debtors, the DIP Loan does not appear to be for the benefit of the Debtors, but rather for the benefit of these insiders.

25. Further, with respect to Arun Velachamy, the Amendment purports to allow him to use up to $400,000 in satisfaction of a RICO settlement, pursuant to a pledge agreement entered into pre-petition. Despite seeking approval of the Amendment with respect to the pledge agreement, however, it is not attached the Motion, leaving interested parties to guess at what is being modified. Moreover, the Amendment purports to allow use of $400,000 in loan proceeds to satisfy Arun's RICO settlement while rolling up the entire pre-petition debt of Sterling including this amount, on a superpriority basis. This is an inappropriate use of a roll up and/or DIP loan proceeds, as it benefits the insiders of the Debtors and does not provide any substantial benefit to the Debtors' estates, yet burdens them with superpriority claims in favor of Sterling.

## **CONCLUSION**

WHEREFORE, for the foregoing reasons set forth herein, the Amalgamated Bank of Chicago respectfully requests that this Court enter an Order denying the Debtors' Motion and granting such other relief as this Court deems just and proper.

Wilmington, Delaware
October 31, 2011

        **MONTGOMERY, MCCRACKEN,**
          **WALKER & RHOADS, LLP**

By:   */s/ Natalie D. Ramsey, Esquire*
      Natalie D. Ramsey, Esq. (DE Bar No. 5378)
      Joseph O'Neil, Jr., Esq. (admitted *pro hac vice*)

      1105 North Market Street, Suite 1500
      Wilmington, DE, 19801
      *Telephone*: 302-504-7800
      *Facsimile*: 302-504-7820

      *Counsel for the Amalgamated Bank of Chicago*

2829066v1