IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>QUALTEQ, INC.,<br>d/b/a VCT NEW JERSEY, INC.,[1]<br><br>Debtor. | ) Chapter 11<br>)<br>) Case No. 11-12572 (KJC)<br>)<br>) Jointly Administered<br>)<br>) **Re: Docket No. 386**<br>) |

## DEBTORS' RESPONSE TO AMALGAMATED BANK OF CHICAGO'S OBJECTION TO MOTION FOR ORDER AUTHORIZING SECURED POSTPETITION FINANCING ON A SUPER PRIORITY BASIS PURSUANT TO 11 U.S.C. § 364

The above captioned debtors and debtors-in-possession (the "*Debtors*") hereby file this response (the "*Response*") to the objection (the "*Objection*") of Amalgamated Bank of Chicago ("*ABOC*") to the Debtors' motion (the "*Motion*") seeking authorization to obtain secured postpetition financing (the "*DIP Financing*") pursuant to 11 U.S.C. §364. In support of the Response, the Debtors respectfully submit as follows:

### RESPONSE

1. In its objection, ABOC, the primary secured lender to Versatile Card Technology, Inc. ("*VCT*"), raises certain issues regarding its position as a cash collateral lender in the VCT estate, including the impact that the administrative claims granted in the proposed DIP Financing order (the "*Proposed DIP Order*") to Sterling Bank ("*Sterling*") could have on ABOC's claims

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer-identification number, are: (i) Qualteq, Inc., d/b/a VCT New Jersey, Inc. (4600); (ii) 1400 Centre Circle, LLC (7091); (iii) 5200 Thatcher, LLC (6991); (iv) 5300 Katrine, LLC (6016); (v) Anar Real Estate, LLC (9267); (vi) Automated Presort, Inc. (0850); (vii) Avadamma LLC (4775; 4800; 4810; 4829); (viii) Creative Automation Company (4350); (ix) Creative Investments, a General Partnership (5992); (x) Fulfillment Xcellence, Inc. (3461); (xi) Global Card Services, Inc. (4581); (xii) Unique Data Services, Inc. (1068); (xiii) Unique Embossing Services, Inc. (1043); (xiv) Unique Mailing Services, Inc. (2594); (xv) University Subscription Service, Inc. (3669); (xvi) Versatile Card Technology, Inc. (5258); (xvii) Veluchamy LLC (3434); and (xviii) Vmark, Inc. (5904).

WM1A 1014392v1 11/01/11

against VCT. The Debtors are sympathetic to certain of these concerns and, at the hearing on this matter, intend to seek this Court's approval of a revised form of order that protects ABOC's interests in the VCT estate.

2. To that end, as of the filing of this Response, the Debtors have proposed to ABOC modifications to the Proposed DIP Order that should address all of the legitimate issues raised by ABOC with respect to the DIP Financing, and with those changes, the Debtors believe the DIP Financing has no impact on ABOC's interests. The Debtors intend to continue working with ABOC to reach resolution of its issues prior to the hearing on the Motion, and will be prepared to present to this Court a modified form of order that renders ABOC's legitimate objections moot.

3. Nevertheless, ABOC raises other points in its objection that the Debtors are compelled to answer, as they are misleading or incorrect.

### A. The DIP Financing Does Not Benefit Insiders

4. ABOC suggests that the DIP Financing offers little value to Qualteq, Inc. d/b/a VCT New Jersey, Inc. ("*VCT-NJ*"), and solely benefits insiders. This argument is belied by the face of the loan documents themselves, in which each of the "insiders" unequivocally reaffirm their obligations on the debt. In that regard, the Debtors' insiders are fully obligated under the DIP Financing to the same extent as they are with respect to the prepetition obligations.

5. Indeed, Sterling has made clear throughout the course of negotiations that the guarantees and pledges of the Debtors' insiders are key protections for the bank that could in no way be diluted as part of the DIP Financing. Thus, ABOC's assertions that the DIP Financing is designed to insulate the Debtors' insiders are misplaced and entirely without merit.

6. ABOC further argues, under its reading of the *Assumption Agreement, Amendment to Loan and Security Agreement and Amendment to Other Loan Documents* dated

2

October 17, 2011 (the "*DIP Amendment*") attached to the Motion as Exhibit D, that $400,000 of the DIP Financing can be used to fund a settlement of certain litigation pending against Arun Veluchamy, one of the Debtors' principals. However, this is incorrect.

7. As part of the prepetition loan agreement, Anu and Arun Veluchamy provided continuing guarantees to support the Sterling loan to VCT-NJ. However, because litigation was pending against Anu and Arun Veluchamy, which could have, in Sterling's view, threatened the value of the guarantees, Sterling insisted on a pledge of collateral from Anu Veluchamy and Sonia Veluchamy (Arun's wife), and *not any of the Debtors*, which could be used, in part, to secure settlements in the pending litigation, and in part to secure VCT-NJ's obligations under the prepetition loan.

8. The effect of the DIP Amendment is to actually apply *more* of these personally pledged assets to secure VCT-NJ's obligations under the DIP Financing by approximately $400,000. Moreover, under no circumstances can any of the Debtors' principals tap funds in the DIP Financing to finance a settlement in any pending litigation.[2]

### B. DIP Financing Supported by Sound Business Judgment

9. ABOC has also questioned the Debtors' business judgment in seeking approval of the DIP Financing. As set forth in greater detail in the Motion, the Debtors' Chief Restructuring Officer believes there are numerous reasons why the DIP Financing makes sound business sense. First, VCT-NJ has cash needs to fuel the operation of its business, which, prior to the events leading to its bankruptcy filing was in the midst of a period of growth. Having access to a revolving line of credit will facilitate VCT-NJ's ability to service increased sales volume during

---

[2] ABOC notes in its objection that the pledge agreements of the insiders were not filed with this Court. In an effort to avoid inundating the Court with lengthy loan documents, the pledge agreements were not included with Motion. The Debtors provided counsel to ABOC with a copy of the relevant pledge agreement and provided an explanation of how the pledge agreement works. It is unclear to the Debtors why ABOC is continuing to raise this issue.

3

peak periods of its operations. The DIP Financing also assures VCT-NJ's customers and vendors that the company has the support of its lender during the chapter 11 process and will be able to adequately finance its operations going forward.

10. Moreover, having the ability to pay down its line with Sterling in the ordinary course will allow VCT-NJ to avoid unnecessary interest expense throughout the case. Additionally, the rates under the DIP Financing are significantly lower than the default rate that would otherwise accrue, as Sterling is very likely oversecured in its collateral.

11. Importantly, the DIP financing also allows VCT-NJ to normalize relations with Sterling, which following the bankruptcy filing were badly strained given the proximity of the filing to the loan closing. At that time, Sterling was not amenable to negotiating use of cash collateral on a final basis, unlike the other lenders in these cases. The uncertainty surrounding VCT-NJ's relationship with the party holding direct control over VCT-NJ's ability to finance its operations posed a real and credible threat to VCT-NJ's estate.

12. Nevertheless, Sterling requested that the Debtors enter into a postpetition financing facility which would reaffirm the prepetition loan agreement and normalize relations between the parties. The Debtors and their Chief Restructuring Officer firmly believe that going forward on a consensual basis with Sterling and engendering a harmonious relationship between the parties is the best and least disruptive path forward for VCT-NJ, particularly because there is almost no added burden on the Debtors by entering into the DIP Financing and substantial cost savings.

### C. No Better Alternative Means of Financing

13. ABOC also argues that the borrower -- Qualteq, Inc. (d/b/a VCT New Jersey, Inc.) ("*VCT-NJ*") -- has made no showing that it could not obtain financing on less onerous

terms. However, the DIP Financing effectively mirrors the terms of the prepetition financing between VCT-NJ and Sterling, except that the applicable interest rates increase slightly under the DIP Financing, and that the borrowing base has been loosened to provide VCT-Inc. with increased borrowing availability. In that regard, the DIP Financing essentially reflects market terms for a company that is *not* in bankruptcy. Given the proximity to the bankruptcy petition date in which the Sterling prepetition loan closed, it is unlikely that there can be a better barometer for the state of the market.

14. There are numerous other reasons that make the DIP Financing advantageous to the Debtors, including favorable interest rates, no meaningful fees associated with the DIP Financing, and a structure that fully protects the liens and claims of other secured lenders in the impacted estates.

15. In addition to the foregoing, however, ABOC, under a revised form of order, which will be filed with the Court prior to the hearing, retains the right to challenge Sterling's prepetition liens and claims throughout the pendency of the bankruptcy cases. In that regard, the waivers of claims and releases in the Proposed DIP Order do not bind ABOC. As a result, the "roll up" feature of the DIP Financing is greatly tamed by the lengthy period during which parties in interest can investigate the prepetition liens and claims of Sterling, which again, in the case of the ABOC, lasts for the balance of the chapter 11 cases. To the extent Sterling's prepetition liens and claims are invalidated, Sterling's postpetition liens would also be invalidated.

5

WM1A 1014392v1 11/01/11

16. For the foregoing reasons, the Debtors respectfully ask this Court to overrule ABOC's objections, and grant the relief requested in the Motion, as set forth in the Proposed DIP Order.

Dated: November 1, 2011
Wilmington, Delaware

FOX ROTHSCHILD LLP

*/s/ Eric M. Sutty*
Jeffrey M. Schlerf (DE Bar No. 3047)
Eric M. Sutty (DE Bar No. 4007)
L. John Bird (DE Bar No. 5310)
Citizens Bank Center, Suite 1300
919 North Market Street
Wilmington, Delaware 19801
Telephone: (302) 654-7444
Facsimile: (302) 656-8902

-and-

GOLDSTEIN & McCLINTOCK LLLP
Harley J. Goldstein, Esq. (*Pro Hac Vice*)
Matthew E. McClintock, Esq. (*Pro Hac Vice*)
980 North Michigan Avenue, Suite 1400
Chicago, Illinois 60611
Telephone: (312) 337-7700
Facsimile: (312) 227-2305

*Co-Counsel for the Debtors and
Debtors in Possession*