# ORIGINAL

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>QUALTEQ, INC.,<br>d/b/a VCT NEW JERSEY, INC., [1]<br><br>Debtor. | ) Chapter 11<br>)<br>) Case No. 11-12572 (KJC)<br>)<br>) Jointly Administered<br>)<br>) **Re: Docket No. 328**<br>)<br>) |

## FINAL ORDER AUTHORIZING SECURED POSTPETITION
## FINANCING ON A SUPER PRIORITY BASIS PURSUANT TO 11 U.S.C. § 364

Upon the motion (the "**Motion**")[2] dated October 17, 2011 of Qualteq, Inc. d/b/a VCT

New Jersey, Inc. ("**VCT-NJ**") and its affiliates, as debtors and debtors-in-possession in the

above-captioned cases (collectively, the "**Debtors**"), seeking this Court's authorization pursuant

to sections 364(c)(1), 364(c)(2) and 364(c)(3) of title 11 of the United States Code, 11 U.S.C. §§

101, et seq. (the "**Bankruptcy Code**") and Rules 2002, 4001(c) and 9014 of the Federal Rules of

Bankruptcy Procedure (the "**Bankruptcy Rules**"), among other things, (i) for VCT-NJ to obtain

postpetition financing (the "**DIP Financing**" or the "**DIP Loan**") from Sterling National Bank

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer-identification number, are: (i) Qualteq, Inc., d/b/a VCT New Jersey, Inc. (4600); (ii) 1400 Centre Circle, LLC (7091); (iii) 5200 Thatcher, LLC (6991); (iv) 5300 Katrine, LLC (6016); (v) Anar Real Estate, LLC (9267); (vi) Automated Presort, Inc. (0850); (vii) Avadamma LLC (4775; 4800; 4810; 4829); (viii) Creative Automation Company (4350); (ix) Creative Investments, a General Partnership (5992); (x) Fulfillment Xcellence, Inc. (3461); (xi) Global Card Services, Inc. (4581); (xii) Unique Data Services, Inc. (1068); (xiii) Unique Embossing Services, Inc. (1043); (xiv) Unique Mailing Services, Inc. (2594); (xv) University Subscription Service, Inc. (3669); (xvi) Versatile Card Technology, Inc. (5258); (xvii) Veluchamy LLC (3434); and (xviii) Vmark, Inc. (5904).

[2] Capitalized terms used, but not defined herein, shall have the meaning ascribed to such terms in the Motion.

("**Sterling**"), (ii) for VCT-NJ to grant Sterling, pursuant to Bankruptcy Code § 364(c), the security interests provided for herein to secure VCT-NJ's obligations under the DIP Financing, (iii) for VCT-NJ to grant Sterling priority in payment with respect to such obligations over any and all administrative expenses of the kinds specified in Bankruptcy Code §§ 503(b) and 507(b), (iv) for Veluchamy, LLC ("**Veluchamy**") to reaffirm its prepetition mortgage to Sterling as security for the DIP Loan; and (v) for Versatile Card Technologies, Inc. ("**VCT**" and, with VCT-NJ and Veluchamy, the "**Sterling Loan Debtors**") to reaffirm its prepetition guaranty to Sterling as credit support for the DIP Loan solely on an unsecured, administrative basis, junior in priority to the prepetition liens, claims and interests of Amalgamated Bank of Chicago ("**ABOC**"), including any prepetition unsecured deficiency claims of ABOC, and the postpetition adequate protection liens, claims, interests and superpriority claims of ABOC; and due and sufficient notice of the Motion under the circumstances having been given; and a final hearing on the Motion having been held before this Court; and upon the entire record made at the hearing on the Motion, and this Court having found good and sufficient cause appearing therefor;

The Debtors and Sterling STIPULATE for all purposes in these Chapter 11 Cases (as defined below), and the Court hereby makes the following FINDINGS:

A.    Petition Date.  On August 14, 2011 (the "**Petition Date**"), each of the above-captioned Debtors except for Debtor Anar Real Estate, LLC (the "**Anar**") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "**Initial Chapter 11 Cases**"). On September 11, 2011, Anar filed a petition for relief under chapter 11 of the Bankruptcy Code (the "**Anar Real Estate Chapter 11 Case**" and together with the Initial Chapter 11 Cases, the "**Chapter 11 Cases**").  By orders of the Court, the Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered.  The Debtors continue to manage

and operate their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

B.    <u>Jurisdiction</u>.  This Court has jurisdiction over the Chapter 11 Cases and the Motion pursuant to 28 U.S.C. 157(b) and 1334.  Consideration of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2).

C.    <u>Debtors' Stipulations Regarding the Prepetition Secured Indebtedness</u>.  Without prejudice to the rights of the parties in interest to the extent set forth in ordering paragraph 20 below:

(i)    Sterling, as lender, and VCT-NJ, as borrower, are parties to that certain Loan and Security Agreement dated as of July 29, 2011 (as has been or may be further amended, restated, supplemented or otherwise modified from time to time, the "**Prepetition Credit Agreement**") and all collateral and ancillary documents executed in connection therewith (the "**Prepetition Secured Loan Documents**"), pursuant to which, among other things, Sterling agreed, subject to the terms and conditions set forth in the Prepetition Credit Agreement, to make certain loans and other financial accommodations to VCT-NJ through a term loan facility (the "**Prepetition Secured Term Indebtedness**") and a revolving loan facility (the "**Prepetition Secured Revolving Indebtedness**" and together with the Prepetition Secured Term Indebtedness, the "**Prepetition Secured Indebtedness**"). The principal amount of the Prepetition Secured Indebtedness outstanding was not less than $3,714,962.83 as of the Petition Date, plus accrued and unpaid prepetition and postpetition interest, fees, expenses and other amounts chargeable under the Prepetition Secured Loan Documents.  A true and correct copy of the Prepetition Credit Agreement and the amendments thereto (including the DIP

Amendment, as defined below) were filed contemporaneously with the Motion as exhibits thereto. Unless otherwise specified, all capitalized terms used but not defined herein shall have the meanings given in the Prepetition Credit Agreement. Without limiting the foregoing, the term "**DIP Event of Default**" shall mean any of the events of default specified in the DIP Loan Documents (as defined below).

(ii)     Without prejudice to the rights of any other party (but subject to the limitations described in ordering paragraph 20 below), (a) the Debtors stipulate that, in accordance with the terms of the Prepetition Secured Loan Documents, the Sterling Loan Debtors are truly and justly indebted to Sterling under the Prepetition Secured Loan Documents, without defense, counterclaim or offset of any kind, and that as of the Petition Date, the Sterling Loan Debtors were liable to Sterling in the amount of the Prepetition Secured Indebtedness, which was not less than the amount set forth in finding paragraph (i) above; and (b) as of the Petition Date, the Debtors, in consideration of the DIP Financing to be extended, waive and release any and all causes of action and claims against Sterling and its affiliates, agents, attorneys, officers, directors, employees, representatives, assigns and successors that may exist in respect of the Prepetition Secured Indebtedness or under the Prepetition Secured Loan Documents.

(iii)     Without prejudice to the rights of any other party (but subject to the limitations described in ordering paragraph 20 below), the Debtors further admit that, by reason of the Prepetition Secured Loan Documents, the Prepetition Secured Indebtedness is secured by (a) enforceable liens and security interests granted by VCT-NJ to Sterling, upon and in substantially all of VCT-NJ's assets and property, including all of VCT-NJ's real property and all of VCT-NJ's assets and property in which a security interest can be

obtained under the Uniform Commercial Code, including equipment, inventory, accounts receivable, instruments, chattel paper, general intangibles, contracts, documents of title, and all other tangible and intangible personal property and the proceeds and products thereof (including the setoff rights described below, the "**VCT-NJ Prepetition Collateral**"); and (b) enforceable mortgage liens and security interests granted by Veluchamy to Sterling, upon and in <u>inter alia</u> the real property described in that certain Mortgage dated July 29, 2011 between Veluchamy and Sterling (the "**Veluchamy Prepetition Collateral**" and, with the VCT-NJ Prepetition Collateral, the "**Prepetition Collateral**").

D.    <u>Need for Immediate Financing</u>.  Absent the DIP Financing, VCT-NJ does not have sufficient available sources of working capital and financing to expand the operation of its business as contemplated by the Debtors prior to the Petition Date and to maximize the value of VCT-NJ's estate.  The ability of VCT-NJ to maintain and foster business relationships with its vendors and suppliers, to maintain its inventory and otherwise finance its operations, is essential to VCT-NJ's continued viability.  In the absence of the DIP Financing, the continued operation and success of VCT-NJ's business, much of which is seasonal in nature, would be in jeopardy.

E.    <u>No Unsecured Credit Available</u>.  Given VCT-NJ's current financial condition and capital structure, VCT-NJ is unable to obtain unsecured credit allowable under Bankruptcy Code § 503(b)(1) as an administrative expense.  Financing on a postpetition basis is not otherwise available without VCT-NJ granting, pursuant to Bankruptcy Code § 364(c)(1), claims having priority over any and all administrative expenses of the kinds specified in Bankruptcy Code §§ 503(b) and 507(b), and securing such indebtedness and obligations with the security interests in and the liens upon the property described below pursuant to Bankruptcy Code § 364(c).

F.    Notice.  Notice of the hearing on the Motion and the relief requested in the Motion has been given to (i) the Office of the United States Trustee, (ii) all parties who have filed a request for service of notices under Bankruptcy Rule 2002(i); (iii) counsel to Sterling, (iv) all known holders of prepetition liens against the Sterling Loan Debtors' property, and (v) counsel to the official committee of unsecured creditors appointed in these cases (the "**Committee**"). The final hearing on the Motion was held pursuant to the provisions of Bankruptcy Rule 4001(c)(2).

G.    Good Faith.  Based on the record presented to this Court by the Debtors, it appears (and the Debtors and Sterling have stipulated) that the DIP Financing has been negotiated in good faith and at arm's length between the Debtors and Sterling, and any credit extended and loans made to VCT-NJ pursuant to this Order shall be deemed to have been extended, issued or made, as the case may be, in good faith as required by, and within the meaning of, Bankruptcy Code § 364(e).

H.    Terms Fair and Reasonable.  Based on the record before this Court, it appears (and the Debtors and Sterling have stipulated) that the terms of this Order, including the terms of the DIP Financing, are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

I.    Relief Essential; Best Interests.  This Court concludes that entry of this Order is in the best interests of the Debtors' estates and creditors as its implementation will, among other things, allow for the flow of supplies and services to VCT-NJ necessary to sustain the operation of its existing business.

Based upon the foregoing findings, stipulations, and conclusions, and upon the record made before this Court at the hearing on the Motion, and good and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED** that:

1.     <u>Motion Granted</u>.  The Motion is granted, subject to the terms and conditions set forth in this Order.

2.     <u>Authorization</u>.  Subject to the terms of this Order (i) VCT-NJ is authorized and empowered to borrow money, incur secured obligations, and perform their obligations pursuant to the provisions of this Order and (ii) the Sterling Loan Debtors are authorized and empowered to enter into or ratify and confirm such agreements, instruments and documents including the Assumption Agreement, Amendment to Loan and Security Agreement, and Amendment to Other Loan Documents, dated as of October 17, 2011 by and among the Sterling Loan Debtors, Sterling and certain other parties (collectively, the "**DIP Amendment**") and the Prepetition Secured Loan Documents (collectively with the DIP Amendment, the "**DIP Loan Documents**"), as incorporated in this Order, as may be necessary or required to evidence their obligations to Sterling, to consummate the terms and provisions of this Order and to evidence perfection of the liens and security interests granted to Sterling pursuant hereto and thereto.  In the event of any inconsistency between the terms of this Order and any other DIP Loan Documents, this Order shall control.  All postpetition loans and all other indebtedness and obligations incurred on or after the Petition Date by the Sterling Loan Debtors to Sterling pursuant to this Order and the DIP Loan Documents (including principal, accrued and unpaid interest, and costs and expenses) are referred to herein as the "**DIP Indebtedness**," and, together with the Prepetition Secured Indebtedness, as the "**Secured Indebtedness**."

3. <u>Borrowing; Refinancing of Prepetition Secured Debt</u>.

a. Subject to the terms and conditions of this Order and the DIP Loan Documents, Sterling will extend DIP Financing consisting of (i) a term loan to VCT-NJ in the amount of the Prepetition Secured Term Indebtedness, (the "**DIP Term Loan**") and (ii) revolving credit loans to VCT-NJ (the "**DIP Revolving Loan**"), not to exceed a maximum amount at any time outstanding of the lesser of (1) $2,500,000 and (2) the Borrowing Base (unless the Borrower Base limitation is waived in writing by Sterling), in each of cases (1) and (2), less (y) a reserve for the Carve-Out (as defined below), and (z) any other Borrowing Base reserves instituted by Sterling at any time, which may be permitted pursuant to the DIP Loan Documents (which right of Sterling to do so at any time in its sole discretion, is hereby preserved) (the "**DIP Commitment**").

b. VCT-NJ is authorized to borrow the amount up to the DIP Commitment to refinance the Prepetition Secured Term Indebtedness and the Prepetition Secured Revolving Indebtedness (the "**Replacement DIP Loan**") and use the proceeds thereof to refinance in full the then-outstanding Prepetition Secured Indebtedness. Such refinancing as provided herein, and the Replacement DIP Loan made for such refinancing, shall constitute part of the DIP Loan.

c. All DIP Loans shall be used to fund only (a) the Carve-Out, (b) the payment of the Prepetition Secured Indebtedness, and (c) the budgeted expenditures set forth in the Approved Budget in accordance with the provisions of ordering paragraph 13 hereof.

d. Notwithstanding anything herein or in the other DIP Loan Documents to the contrary, (a) unless express prior written consent has been given by Sterling, and

subject to the Committee's right to object to such uses, VCT-NJ shall not use the proceeds of any DIP Financing to fund (i) any key employee incentive plan costs, any management incentive plan costs or any other employee bonuses, (ii) any distributions to shareholders in any form or for any reason, or (iii) any director and officer insurance premiums or costs (other than as set forth in the Approved Budget), and (b) if Sterling in its sole discretion advances funds or other extensions of credit in excess of the borrowing base limitations in the DIP Loan Documents, such advances (and any other indebtedness in excess of such amount) shall constitute DIP Indebtedness entitled to the benefits of the DIP Loan Documents and this Order.

4.    <u>Interest, Fees, Costs and Expenses</u>.  All DIP Indebtedness shall bear interest at the rates set forth in the DIP Amendment.  Interest shall be payable monthly in arrears on the first day of each month in accordance with the Approved Budget.  All fees and interest payable under the Prepetition Credit Agreement shall be applicable to the DIP Financing and shall be charged to the DIP Revolving Loan.  All of Sterling's reasonable out-of-pocket expenses, including audit fees and out-of-pocket audit expenses, and including reasonable consultants', appraisers', and attorneys' fees, and other costs and expenses incurred in connection with the Secured Indebtedness, shall be paid on a monthly basis by Sterling charging them to the DIP Revolving Loan, provided that such payments shall be charged to the DIP Revolving Loan no earlier than ten (10) days following receipt by the United States Trustee, counsel to the Debtors, and counsel to the Committee, of a written invoice (without limiting the right of any professionals to redact privileged, confidential or sensitive information and subject to a full reservation of all subject to any applicable privileges or work product doctrines).  Such charges may be charged to the DIP Revolving Loan absent a written objection sent to Sterling by any such party within such ten (10)

day period contesting the reasonableness of such costs and expenses. In the event of a written objection, such charges may not be charged to the DIP Revolving Loan until such time as the parties have reached consensus on the reasonableness of such charges, or the Court makes a determination regarding the reasonableness of such charges.

5. <u>Termination of DIP Financing</u>. Sterling's willingness to extend DIP Financing hereunder shall immediately and automatically terminate (except as Sterling may otherwise agree in writing in its sole discretion) upon the earliest to occur of (the "**Termination Date**") the following:

      (i)     the date of final indefeasible payment and satisfaction in full in cash of the Secured Indebtedness;

      (ii)     the effective date of any confirmed plan of reorganization in any or all of the Chapter 11 Cases of the Sterling Loan Debtors;

      (iii)     VCT-NJ or Veluchamy files a motion with the Court seeking authority to sell any Collateral (as defined below) outside of the ordinary course of business without the consent of Sterling (which consent may not be unreasonably withheld provided that the proceeds of any such sale are used to repay DIP Loans);

      (iv)     the occurrence of any violation by any Sterling Loan Debtor of this Order, VCT-NJ's failure to adhere in all material respects to the Approved Budgets as set forth in ordering paragraph 13 of this Order, any material violation of the covenants set forth in ordering paragraph 14 of this Order, or any DIP Event of Default;

      (v)     the dismissal of any of the Chapter 11 Cases of the Sterling Loan Debtors or the conversion of any of the Chapter 11 Cases of the Sterling Loan Debtors into a case under Chapter 7 of the Bankruptcy Code;

      (vi)     a trustee or an examiner with enlarged powers (beyond those set forth in §§ 1106(a)(3) and (4) of the Bankruptcy Code) relating to the operation of the business of VCT-NJ or Veluchamy is appointed in any of the Chapter 11 Cases of a Sterling Debtor without the prior written consent of Sterling (which consent may be withheld in Sterling's sole discretion), or VCT-NJ or Veluchamy applies for, consents to, or acquiesces in, any such appointment without the prior written consent of Sterling (which consent may not be unreasonably withheld);

      (vii)     this Order or any other order of the Court affecting the DIP Indebtedness is reversed, vacated, amended or otherwise modified in any material respect, or any material provision of the DIP Loan Documents shall cease to be valid and

binding on the Debtors, without the prior written consent of Sterling (which consent may not be unreasonably withheld);

(viii) this or any other Court enters an order or judgment in the Chapter 11 Cases of VCT-NJ or Veluchamy granting any party other than Sterling relief from the automatic stay to permit any party other than Sterling to enforce its rights with respect to any Collateral (as defined below) having an aggregate value for all such parties in excess of $50,000;

(ix) any Debtor files with this or any other Court a challenge to the priority or validity of any Secured Indebtedness or the perfection, priority or validity of Sterling's prepetition or postpetition liens on any Collateral (as defined below), or this or any other Court with valid jurisdiction enters an order or judgment in either of the Chapter 11 Cases of VCT-NJ or Veluchamy modifying, limiting, subordinating or avoiding the priority or validity of any Secured Indebtedness or the perfection, priority or validity of Sterling's prepetition or postpetition liens on any Collateral without Sterling's express prior written consent;

(x) either VCT-NJ or Veluchamy files with this or any other Court a plan of reorganization or plan of liquidation in any of the Chapter 11 Cases of a Sterling Debtor that does not provide for payment in full in cash of all Secured Indebtedness on the date of effectiveness of such plan, unless otherwise agreed to in writing by Sterling (which agreement may be withheld in its sole discretion);

(xi) the consummation of the sale or other disposition of all or substantially all of the Collateral;

(xii) the payment of any prepetition indebtedness of VCT-NJ other than the Prepetition Secured Indebtedness or payments on account of prepetition amounts allowed and approved by the Court pursuant to the Debtors' first day motions and related orders, except as otherwise consented to by Sterling (which consent may not be unreasonably withheld);

(xiii) November 1, 2012.

Upon the Termination Date, (a) all Secured Indebtedness shall be immediately due and payable in cash (except as Sterling may otherwise agree in writing in its sole discretion), and (b) Sterling shall have no obligation to lend or advance any additional funds to VCT-NJ, or provide other financial accommodations to VCT-NJ.

6.     Security for Indebtedness.     Sterling is hereby granted as security for the repayment of the DIP Indebtedness, pursuant to §§ 363, 364(c)(2) and 364(c)(3) of the

Bankruptcy Code, valid and perfected first priority liens, subject only to Prior Claims (as defined below), on all (a) present and after-acquired personal and real property of VCT-NJ of the same nature and type that Sterling held valid and perfected liens upon prior to the Petition Date (except to the extent the postpetition revolving loan balance as of the Termination Date exceeds the revolving loan balance as of the Petition Date, which differential amount (the "**DIP Differential**") shall be secured by all assets of VCT-NJ) , including all cash contained in any account maintained by VCT-NJ, all rights of VCT-NJ under any contract for the sale of its assets, all real property, the title to which is held by VCT-NJ, or possession of which is held by VCT-NJ pursuant to a leasehold interest to the extent that such leasehold interest may be encumbered, together with all proceeds of the foregoing (collectively with all proceeds and products of any or all of the foregoing, the "**VCT-NJ DIP Collateral**"), but specifically excluding all actions arising under §§ 502(d), 544, 545, 547, 548, 549, 550 and 551 of the Bankruptcy Code (such causes of action, the "**Avoidance Actions**") and the proceeds of the Avoidance Actions, and (b) all real property of Veluchamy (the "**Veluchamy DIP Collateral**" and, with the VCT-NJ DIP Collateral, the "**DIP Collateral**") and collectively with the Prepetition Collateral, the "**Collateral**"). As used herein, the term "**Prior Claims**" shall mean (i) any non-avoidable valid, enforceable and perfected liens and security interests in favor of any person or entity on or in the assets of VCT-NJ as prepetition debtor, or on or in the real property of Veluchamy, as prepetition debtor which existed on the Petition Date and are not subject to § 552(a) of the Bankruptcy Code, but only to the extent such liens and security interests are superior in priority to the prepetition liens and security interests of Sterling, (ii) non-avoidable, valid and enforceable rights of set-off, (iii) the Carve-Out described in ordering paragraph 11 below, (iv) amounts required to be paid by VCT-NJ to the United States Trustee during the term

of this Order, and (v) any superior right, claim, title, or legal share held by Jet LithoColor, Inc. ("**Jet Litho**") in royalty payments, cash or other proceeds arising under that certain Licensing Agreement referenced in Paragraph 23 of this Order and/or any escrow created herein and related to the same. Other than the liens and security interests in favor of Sterling pursuant to the DIP Loan Documents and this Order and the Prior Claims, no other claims, liens or security interests whether prior to or *pari passu* with the claims, liens or security interests of Sterling shall attach to the DIP Collateral in these or any subsequent or superseding cases of the Sterling Loan Debtors (including any conversion of any of the Chapter 11 Cases to a case under Chapter 7 of the Bankruptcy Code or any other proceeding related hereto or thereto, collectively, "**Successor Case**") without the express written consent of Sterling (which consent may be withheld in its sole discretion). Sterling at its option may release at any time from its liens and security interests any assets determined by Sterling to have a risk of environmental liabilities which Sterling in its sole discretion deems unacceptable. In addition, subject to ordering paragraph 20 of this Order and except to the extent otherwise expressly set forth in this Order, or in a written instrument, agreement or other document executed by one or more duly authorized representatives of Sterling, no liens or security interests granted to Sterling herein, and no claim of Sterling in respect of the Secured Indebtedness, shall be subject to subordination to any other liens, security interests or claims under § 510 of the Bankruptcy Code or otherwise. For the avoidance of doubt, nothing in this Order is intended to, or shall be deemed to affect the nature, extent or priority of any liens or claims against any Debtors except the Sterling Loan Debtors. The liens and claims of Sterling with respect to amounts advanced or rolled up pursuant to the DIP Loan shall remain subordinate to the liens, claims and interests of ABOC in the assets of VCT presently and in the future, including, without limitation, in the event of substantive

consolidation, merger or consolidation of the Debtors' estates. ABOC shall have no claims or liens with respect to the Collateral presently and in the future, including, without limitation, in the event of substantive consolidation, merger or consolidation of the Debtors' estates.

7. <u>Sterling's Superpriority Claims.</u> Sterling is hereby granted allowed superpriority administrative expense claims (the "**DIP Financing Superpriority Claims**") pursuant to Bankruptcy Code section 364(c)(l) for the DIP Loan, having priority over any and all other administrative claims against the Sterling Loan Debtors other than VCT, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kinds specified in or arising or ordered under Bankruptcy Code sections 105(a), 326, 328, 330, 331, 503(b), 507, 546(c), 726, 1113, and 1114 or otherwise, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall be payable from and have recourse to all of the Collateral and all proceeds thereof specifically excluding the Avoidance Actions and any proceeds or property recovered in connection with the pursuit of Avoidance Actions; provided, that the DIP Financing Superpriority Claims shall be subject and subordinate only to the payment of the Carve-Out, and except with respect to any administrative claim of Sterling arising hereunder on account of any DIP Differential, any administrative claim of Jet Litho arising under the Licensing Agreement referenced in Paragraph 23 of this Order.

8. <u>Perfection of New Liens.</u> All liens and security interests on or in the DIP Collateral granted to Sterling by this Order and the DIP Loan Documents shall be, and they hereby are, deemed duly perfected and recorded under all applicable federal or state or other laws as of the date hereof, and no notice, filing, mortgage recordation, possession, further order, landlord or warehousemen lien waivers or other third party consents or other act, shall be

required to effect such perfection; provided, however, that notwithstanding the provisions of § 362 of the Bankruptcy Code, (i) Sterling may, at its sole option, file or record, or cause VCT-NJ and Veluchamy to obtain, any such landlord or warehousemen lien waivers or other third party consents, or execute, file or record, at the expense of VCT-NJ or Veluchamy, as applicable, any such UCC financing statements, notices of liens and security interests, mortgages and other similar documents as Sterling may require, and (ii) Sterling may require VCT-NJ and Veluchamy to deliver to Sterling any chattel paper, instruments or securities evidencing or constituting any DIP Collateral, and VCT-NJ and Veluchamy are directed to cooperate and comply therewith. If Sterling, in its sole discretion, shall elect for any reason to cause to be obtained any landlord or warehouse lien waivers or other third party consents or cause to be filed or recorded any such notices, financing statements, mortgages or other documents with respect to such security interests and liens, or if Sterling, in accordance with the DIP Loan Documents, shall elect to take possession of any DIP Collateral, all such landlord or warehouse lien waivers or other third party consents, financing statements or similar documents or taking possession shall be deemed to have been filed or recorded or taken in these Chapter 11 Cases as of the commencement of these Chapter 11 Cases but with the priorities as set forth herein. Sterling may (in its sole discretion), but shall not be required to, file a certified copy of this Order in any filing or recording office in any county or other jurisdiction in which VCT-NJ or Veluchamy has real or personal property or is incorporated or formed, and such filing or recording shall be accepted and shall constitute further evidence of perfection of Sterling's interests in the DIP Collateral.

9.     Waiver.  The Debtors and their estates (and any party in interest acting on behalf of any Debtor) hereby irrevocably waive, and are barred from asserting or exercising any right, (a) without Sterling's prior written consent (which may be withheld in its sole discretion), or (b)

without prior indefeasible payment and satisfaction in full of the Secured Indebtedness: (i) to grant or impose, or request that the Court grant or impose, under § 364 of the Bankruptcy Code or otherwise, liens on or security interests in any Collateral, which are *pari passu* with or superior to Sterling's liens on and security interests in such Collateral; or (ii) to modify or affect any of the rights of Sterling under this Order or any DIP Loan Documents by any order entered in any of the Chapter 11 Cases or any Successor Case.

10.    Modification of Automatic Stay; Other Remedies.

a.     Except as set forth in subparagraph (b) of this paragraph, which govern any action by Sterling to foreclose on its liens on any DIP Collateral or to exercise any other default-related remedies as to VCT-NJ and Veluchamy, the automatic stay pursuant to § 362 of the Bankruptcy Code is hereby vacated as to Sterling to permit it to perform in accordance with this Order and the other DIP Loan Documents and without further application or motion to, or order from, the Court, and regardless of any change in circumstances (whether or not foreseeable), so that Sterling may (i) receive and apply payments of the Secured Indebtedness and collections on and proceeds of the Collateral to the Secured Indebtedness in the manner specified in this Order, (ii) file or record any financing statements, mortgages or other instruments or other documents to evidence the security interests in and liens upon the DIP Collateral, (iii) to the extent permitted by § 506(b) of the Bankruptcy Code, charge and collect any interest, fees, costs, and expenses and other amounts accruing at any time under the Prepetition Secured Loan Documents, the DIP Loan Documents and this Order as provided therein, (iv) to give any Sterling Debtor any notice provided for in any of the DIP Loan Documents or this Order, (v) upon the Termination Date, cease making loans or other extensions of credit and/or suspend or

terminate any obligation of Sterling to make loans or other extensions of credit under the DIP Loan Documents or this Order, and (vi) upon the Termination Date, and without application or motion to, or order from the Court or any other court, (A) terminate the DIP Financing under this Order and the other DIP Loan Documents, and (B) declare all Secured Indebtedness immediately due and payable.

b.      Upon the occurrence of any DIP Event of Default, or upon the Termination Date, Sterling shall be entitled, solely with respect to VCT-NJ and Veluchamy, (i) to file an expedited motion for relief from the automatic stay for the purpose of foreclosing or otherwise enforcing its liens on any or all of the DIP Collateral and/or to exercise any other default-related remedies under the DIP Loan Documents, this Order or applicable law, and (ii) to obtain an expedited hearing, subject to the Court's calendar, on such motion upon seven (7) business days' notice to counsel for the Debtors, counsel for the Committee, and the United States Trustee. Sterling shall be entitled to relief from the automatic stay sought pursuant to the preceding sentence upon a finding by the Court that one or more DIP Events of Default have occurred and are then continuing or that the Termination Date has occurred.

c.      Upon Sterling's obtaining relief from the automatic stay to enforce Sterling's liens or to exercise any other default-related remedies solely with respect to VCT-NJ or Veluchamy, as applicable (whether upon further order of this Court or automatically as provided in this Order), (i) Sterling may exercise any remedies available to Sterling under this Order, the Prepetition Credit Agreement and other Prepetition Secured Loan Documents or applicable law, as amended by the  DIP Amendment, including to foreclose on the Collateral and (ii) VCT-NJ and Veluchamy shall cooperate

with Sterling in connection with any enforcement action by Sterling as required by applicable law, including without limitation by making prompt and direct payment of any post-petition receivables owing to VCT-NJ. In addition, upon the occurrence of any DIP Event of Default, or upon the Termination Date, VCT-NJ and Veluchamy, as the case may be, shall, at the request of Sterling, use commercially reasonable efforts to sell or otherwise dispose of the DIP Collateral on terms and conditions acceptable to Sterling and shall turn over the proceeds of such sale(s) or other disposition(s) to Sterling for application to the Secured Indebtedness in accordance with the provisions hereof and the DIP Loan Documents.

11.    Carve-Out.

   a.    "**Carve-Out**" shall mean:

      (i)    allowed and unpaid professional fees and disbursements incurred by professionals of the Debtors (the "**Debtor Professionals**") and any professionals of statutory committees appointed in the Chapter 11 Cases (the "**Committee Professionals**") from and after the first date upon which both a DIP Event of Default has in fact actually occurred and Sterling has given notice thereof to the Debtor Professionals and Committee Professionals (the "**Trigger Date**"), regardless of when such fees and expenses become allowed by order of the Court, in an aggregate amount not in excess of $50,000 for Debtor Professionals and $75,000 for Committee Professionals, plus, for the period prior to a Trigger Date, the lesser of (a) the aggregate weekly line item amounts for (y) "Lead Counsel," "Local Counsel," "Financial Advisors," and "Claims Agent" set forth in the Approved Budget under "Bankruptcy Related Expenses" (which amounts per week shall be reserved exclusively for the Debtor Professionals and shall not be shared with any other professionals retained in these cases) and (z) "UCC Counsel," "UCC Financial Advisors" and "Creditor Local Counsel" under "Bankruptcy Related Expenses" (which amounts per week shall be reserved exclusively for the Committee Professionals and shall not be shared with any other professionals retained in these cases), and (b) the actual professional fees and disbursements incurred by the Debtor Professionals and the Committee Professionals, in either case to the extent such amounts (x) were incurred on or prior to the Trigger Date and (y) are previously or subsequently allowed by the Court; and

      (ii)    the payment of fees of VCT-NJ pursuant to 28 U.S.C. § 1930.

b.      Notwithstanding anything to the contrary herein, the Carve-Out and payment of allowed professional fees covered by the Carve-Out that are due and owing shall be prior to the repayment of obligations under the DIP Loan Documents, and other payment obligations of VCT-NJ.  Any professional fees paid pursuant to the Carve-Out, if any, shall not be construed as reducing any claims of Sterling under the DIP Loan Documents;

c.      Subject to the Approved Budgets, Bankruptcy Court approval, and Subsection (a) above, VCT-NJ is authorized to pay (i) Debtor Professionals' compensation and reimbursement of fees and expenses payable under Bankruptcy Code sections 328, 330 and 331, as the same may be due and payable under any interim compensation procedures or otherwise, and (ii) Committee Professionals' compensation and reimbursement of fees and expenses allowed and payable under Bankruptcy Code sections 328, 330 and 331, as the same may be due and payable; provided, however, that the Debtor Professionals and the Committee Professionals shall be required to first satisfy such allowed fees and expenses from any prepetition retainers held by such professionals prior to payment from the Debtors or from the proceeds of DIP Financing.

d.      Subject to subsection (a) above, as and when a line item for professional fees is included in an Approved Budget, the Debtors shall transfer cash in the amount of such line item to the professional for whose benefit the line item is included, to be held in trust (the "**Professional Fee Accounts**") by the professional at issue until applied to the allowed fees and disbursements of such professional pursuant to one or more orders of this Court, including the interim compensation procedures previously approved by the Court in these cases.  Each payment made to the Professional Fee Accounts made

pursuant to this paragraph shall be deemed to be and shall be treated as if such payment was, a security retainer paid to the applicable professionals as set forth in the Approved Budgets, as of, and nunc pro tunc to, the Petition Date, which amounts shall become free and clear of all liens, claims, and encumbrances upon final allowance of such fees and disbursements by the Court.

e.     Notwithstanding anything to the contrary in this Order or the DIP Loan Documents, the prepetition and postpetition liens and security interests and the administrative priority claims of Sterling shall be senior to, and no proceeds of Secured Indebtedness may be used to pay, any claims for services rendered by any of the Debtor Professionals or the Committee Professionals in connection with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense or other contested matter, the purpose of which is to seek or the result of which would be to obtain any order, judgment, determination, declaration or similar relief: (x) invalidating, setting aside, avoiding or subordinating, in whole or in part, the Secured Indebtedness or the liens and security interests of Sterling in any Collateral; or (y) following a DIP Event of Default, preventing, hindering or otherwise delaying, whether directly or indirectly, the exercise by Sterling of any of their rights and remedies under this Order and/or the DIP Loan Documents or Sterling's enforcement or realization upon any of the liens on or security interests in any Collateral in accordance with the terms of this Order; provided, however, that the foregoing limitations shall not apply to claims of up to $50,000 in the aggregate for services rendered by the Committee Professionals in connection with the investigation of (but not a challenge of) the validity,

extent, priority, avoidability or enforceability of the Prepetition Secured Indebtedness or Sterling's prepetition liens on and security interests in the Prepetition Collateral.

12.    <u>Cash Collection and Application Procedures</u>.  From and after the date of the entry of this Order all collections and proceeds of any DIP Collateral and all other cash or cash equivalents which shall at any time come into the possession or control of VCT-NJ or Veluchamy, or to which VCT-NJ shall become entitled at any time, shall be deposited in the same bank accounts into which the collections and proceeds of the Prepetition Collateral were deposited or were to be deposited under the Prepetition Credit Agreement (or in such other accounts as are designated by Sterling from time to time and pursuant to the same collection procedures (*i.e.*, lock-box) set forth in Prepetition Credit Agreement).  Any Debtor which owes VCT-NJ a post-petition receivable shall pay same on a prompt and timely basis into such bank accounts, provided that, nothing in this Order shall authorize any Debtor to make any payment which would cause such Debtor to violate any order authorizing such Debtor to use the cash collateral of a secured lender entered by the Court in these cases.  All financial institutions in which any lockboxes, blocked accounts or other accounts of VCT-NJ are located are hereby authorized and directed to comply with any request of Sterling, consistent with the Prepetition Credit Agreement, to turnover to Sterling all funds therein without offset or deduction of any kind.  Except as provided in Approved Budgets, VCT-NJ shall not transfer any funds to any other Debtor without Sterling's and the Committee's written consent.  All debtor and debtor-in-possession accounts for VCT-NJ shall be kept at Sterling, with the exception that VCT-NJ may maintain a payroll account at PNC Bank, with such account funded from Sterling accounts only to the extent needed to fund VCT-NJ payrolls (VCT-NJ shall not transfer any funds into the PNC Bank account other than amounts needed to cover payrolls and shall transfer any other funds

received into such accounts to the Sterling account on not less than a weekly basis and upon any specific request of Sterling), provided, however, all set-off rights shall be subject to any and all Prior Claims of Jet Litho in said funds.

13.   Budget; Use of Loan Proceeds.

a.      Attached as **Exhibit A** hereto and incorporated herein by reference is a budget (which has been approved by Sterling) setting forth by line item all projected sales, cash receipts and disbursements and the Borrowing Base on a weekly and cumulative basis through January 28, 2012 (the "**Initial Approved Budget**"). Except as to budgeted payments to Jet Litho and as otherwise provided herein, the Initial Approved Budget may be modified or supplemented from time to time by additional budgets (covering any time period covered by a prior budget or covering additional time periods) to which Sterling, the Committee and VCT-NJ agree in each of their sole discretion, without the need for further Court approval (each such additional budget, a "**Supplemental Approved Budget**"). The aggregate of all items approved by Sterling in the Initial Approved Budget and any and all Supplemental Approved Budgets (acceptable to Sterling in its sole discretion) shall constitute an "**Approved Budget**." Sterling's obligation to lend funds is conditioned upon its approval of a Supplemental Approved Budget, and Sterling has made no commitments with respect thereto; provided, however, that Sterling shall negotiate all Supplemental Approved Budgets in good faith, and consistent with the parties' course of dealing.

b.      Unless Sterling shall agree otherwise in writing, VCT-NJ shall not use proceeds of the DIP Financing in an amount greater than 15% more than a particular

"category" in an Approved Budget (*e.g.*, "rent," "phone," or "utilities"), measured on a weekly basis, provided that DIP Loan proceeds are available.

c.    Within two (2) business days following the end of each calendar week, VCT-NJ shall provide Sterling and the Committee with a report, in form and scope reasonably satisfactory to Sterling, comparing actual sales and cash receipts and disbursements with budgeted sales and cash receipts and disbursements for the preceding calendar week and for the aggregate period from the Petition Date through the end of such preceding calendar week.

d.    Sterling shall have no obligation with respect to VCT-NJ's use of the proceeds of the DIP Financing and shall not be obligated to ensure or monitor VCT-NJ's compliance with any Approved Budget or to pay (directly or indirectly from its DIP Collateral) any expenses incurred or authorized to be incurred pursuant to the Approved Budget, other than with respect to the Carve-Out. Funds borrowed under this Order shall be used by VCT-NJ in accordance with this Order. The proceeds of any DIP Financing shall be used for the payment of the expenses set forth in any Approved Budget (subject to the limitations and exceptions set forth in this ordering paragraph) and to fund the Carve-Out. Upon the Termination Date, other than with respect to the Carve-Out, (x) Sterling's obligation to extend the DIP Financing hereunder and under the DIP Loan Documents shall terminate, and (y) Sterling shall have no obligation to provide any additional loans or extensions of credit to VCT-NJ or to allow VCT-NJ to use its cash collateral, and VCT-NJ shall no longer be entitled to any additional DIP Financing. Sterling may waive any postpetition DIP Event of Default under the Prepetition Credit Agreement or the Prepetition Secured Loan Documents only in writing. So long as any

Secured Indebtedness is outstanding, VCT-NJ shall not seek, assert, argue for, encourage or support any alternative debtor-in-possession financing ("**Alternative DIP Financing**") that contemplates any superpriority administrative expense claim or any lien which is *pari passu* with or senior to those of Sterling, or authorization to use cash collateral without the consent of Sterling (together, a "**Priming Position**"), and the approval of any such Alternative DIP Financing or Priming Position shall be prohibited, unless such Priming Position and the corresponding Alternative DIP Financing requires the repayment in cash in full of all outstanding Secured Indebtedness from the first funds obtained via the Priming Position.

14.    Books and Records.  The Sterling Loan Debtors shall permit Sterling and any authorized representatives designated by Sterling (including their auditors, appraisers and financial advisors) to visit and inspect any of the properties of any Sterling Loan Debtor, including the Sterling Loan Debtors' respective financial and accounting records, and to make copies and take extracts therefrom, and to discuss the Sterling Loan Debtors' affairs, finances and business with the Sterling Loan Debtors' officers, financial advisor, and independent public accountants, at such reasonable times during normal business hours and as often as may be reasonably requested, but in no event, on more than two occasions per month, unless otherwise agreed by the parties. The Sterling Loan Debtors shall permit Sterling and any authorized representatives designated by Sterling (including their auditors, appraisers and financial advisors) and the Committee to conduct field exams, inventory appraisals, real estate appraisals and environmental analyses, as reasonably deemed necessary by Sterling in its sole discretion and at the expense of VCT-NJ, and the Sterling Loan Debtors shall cooperate with such efforts; provided, however, that any such field exams, inventory appraisals, real estate appraisals or

environmental analyses shall be conducted during normal business hours and at the least disruption to the Debtors' business operations, and any expense associated with such exams, appraisals or analyses shall be reasonable. Without limiting the generality of the foregoing, the Sterling Loan Debtors shall promptly provide to Sterling and Sterling's designated representatives any information, data, appraisals and such other reports and financial information reasonably requested to monitor the Sterling Loan Debtors' compliance with the covenants in the DIP Loan Documents and this Order and to perform Sterling's own appraisals or other valuation analyses of any property of any Sterling Loan Debtors, if elected by Sterling.

15. <u>Sterling's Reservation of Rights; No Waiver</u>. Except as set forth herein, Sterling does not waive, and expressly reserves, any and all claims, defenses, rights and remedies it has pursuant to any or all of the DIP Loan Documents, the Bankruptcy Code and/or other applicable law against any Debtor and any officer, director, employee, agent or other representative of any Debtor in respect of the Secured Indebtedness; provided, however, that Sterling shall waive any rights arising from or related to any event of default arising under the Prepetition Secured Loan Documents arising prior to the Petition Date. In addition, the rights and obligations of the Debtors and the rights, claims, liens, security interests and priorities of Sterling arising under this Order are in addition to, and are not intended as a waiver or substitution for, the rights, obligations, claims, liens, security interests and priorities granted by the Debtors, in their prepetition capacity, under the Prepetition Secured Loan Documents. Without limiting the generality of the foregoing, Sterling may petition this Court for any such additional protection it may reasonably require with respect to the Prepetition Secured Indebtedness, the DIP Indebtedness or otherwise, and nothing in this Order constitutes a finding with respect to the adequacy of the protection of Sterling's interests in the Prepetition Collateral. Nothing contained

herein or in the DIP Loan Documents shall bind, commit, obligate or otherwise require Sterling to vote in favor of any plan of reorganization or liquidation in these Chapter 11 Cases.

16. <u>Order Binding on Successors</u>. The provisions of this Order shall be binding upon and inure to the benefit of Sterling, the Debtors, and their respective successors and assigns (including any trustee or other estate representative appointed as a representative of the Debtors' estates or of any estate in any Successor Case). Except as otherwise explicitly set forth in this Order, no third parties are intended to be or shall be deemed to be third party beneficiaries of this Order or the DIP Loan Documents.

17. <u>Effect of Dismissal, Conversion or Substantive Consolidation</u>. If any of the Chapter 11 Cases are dismissed, converted, otherwise superseded or substantively consolidated, Sterling's rights and remedies under this Order and the DIP Loan Documents shall be and remain in full force and effect as if such Chapter 11 Case had not been dismissed, converted, superseded or substantively consolidated. Furthermore, notwithstanding any such dismissal, conversion, supercission or substantive consolidation, all of the terms and conditions of this Order, including the liens and the priorities granted hereunder, shall remain in full force and effect.

18. <u>Releases and Validation of Prepetition Secured Indebtedness and Liens; Allowance of Secured Claim</u>. Subject only to the right of the Committee, ABOC and any other party in interest to object on the terms and conditions set forth in ordering paragraph 20 below, the Debtors and their estates, hereby: (a) release and discharge Sterling, together with its affiliates, agents, attorneys, officers, directors, employees, representatives, assigns and successors from any and all claims and causes of action arising out of, based upon or related to, in whole or in part, any of the Prepetition Secured Loan Documents, or any other acts or omissions by Sterling in connection with any of the Prepetition Secured Loan Documents ; (b)

waive any and all defenses (including offsets and counterclaims of any nature or kind) as to the validity, perfection, priority, enforceability and nonavoidability (under §§ 510, 544, 545, 547, 548, 550, 551, 552 or 553 of the Bankruptcy Code or otherwise) of the Prepetition Secured Indebtedness and the security interests in and liens on the Prepetition Collateral in favor of Sterling (which liens and security interests are first priority subject only to the Prior Claims); and (c) agree, without further Court order and without the need for the filing of any proof of claim, to the allowance of the prepetition claims of Sterling pursuant to §§ 502 and 506 of the Bankruptcy Code on account of the Prepetition Secured Indebtedness as fully secured claims according to Sterling's books and records. Prior to Sterling's release of liens on the DIP Collateral as and when otherwise appropriate under this Order (other than the release of liens on the DIP Collateral in accordance with ordinary course sales), the Debtors must provide full and general releases to Sterling, acceptable in form and substance to Sterling in its sole discretion.

19. <u>Sterling's Relationship with Debtors</u>. In making decisions to advance any Loans or other extensions of credit to VCT-NJ, establishing and funding any reserves, in taking any other actions or exercising any discretion set forth in this Order or the DIP Loan Documents (including the exercise of its approval rights with respect to any budget), Sterling shall have no liability to any third party and shall not be deemed to be in control of the operations of any Debtor, and Sterling's relationship with any Debtor shall not constitute or be deemed to constitute a joint venture or partnership of any kind between Sterling and any Debtor with respect to all parties who have received actual notice of this Order.

20. <u>Objections by Parties in Interest</u>. Except as set forth in finding paragraph C hereof and in this ordering paragraph, all of the provisions of this Order shall be final and binding on the Debtors and all creditors and other parties in interest. With respect to objections

(i) parties in interest other than the Debtors or the Committee shall have the earlier of (a) January 17, 2012 and (b) the date of confirmation of a plan of reorganization in any of these Chapter 11 Cases (the "**General Objection Deadline**"), and (ii) the Committee and ABOC shall have until the date of confirmation of any plan of reorganization in these Chapter 11 Cases (the "**Extended Objection Deadline**") within which to file, on behalf of any Sterling Loan Debtors, and to serve upon counsel for Sterling, objections or complaints respecting (y) the claims, causes of actions and defenses released by the Debtors pursuant to ordering paragraph 18 above or (z) the validity, extent, priority, avoidability, or enforceability of the Prepetition Secured Indebtedness or Sterling's prepetition liens on and prepetition security interests in the Prepetition Collateral (any such party that timely files such an objection or complaint, an "**Objecting Party**"). The Committee and ABOC are hereby granted standing to file any such action, complaint or objection. In the event that no objections or complaints are filed with this Court and served upon counsel of record for Sterling prior to the General Objection Deadline or the Extended Objection Deadline, as applicable, the provisions of ordering paragraph 18 of this Order shall become final and binding on all such parties subject to either the General Objection Deadline, or Extended Objection Deadline, as applicable. In the event that one or more objections or complaints are filed with this Court and served upon counsel of record for Sterling prior to the General Objection Deadline or Extended Objection Deadline, as applicable, the provisions of ordering paragraph 18 of this Order shall become final and binding on all parties other than the Objecting Parties on the General Objection Deadline or Extended Objection Deadline, as applicable. For the avoidance of doubt, any trustee appointed or elected in these cases shall, until passage of the General Objection Deadline, and thereafter for the duration of any litigation commenced by the filing of an objection or complaint as described in this paragraph 20 (whether filed by such

trustee or by any other party in interest, including the Committee, on behalf of the Debtors' estates), be deemed to be a party "other than the Debtors or the Committee" and shall not, for purposes of such litigation, be bound by the acknowledgments, admissions and confirmations of the Debtors in this Order. To the extent it is determined by final order of this Court that Sterling did not have a valid and enforceable lien on any prepetition asset or assets of the Debtors, the Court shall also avoid any postpetition liens granted to Sterling hereunder on those assets (except with respect to the DIP Differential, which shall remain secured by such liens) and grant any other necessary and appropriate relief. For the avoidance of doubt, nothing included herein is intended to prejudice the Committee's or ABOC's lien challenge rights as set forth herein.

21. <u>Effect of Modification of Order</u>. The Debtors shall not, without Sterling's prior written consent, seek to modify, vacate or amend this Order or any DIP Loan Documents. If any of the provisions of this Order are hereafter modified, vacated or stayed by subsequent order of this or any other Court, such stay, modification or vacatur shall not affect the validity of any Secured Indebtedness outstanding immediately prior to the effective time of such stay, modification or vacation, or the validity and enforceability of any lien, priority, right, privilege or benefit authorized hereby with respect to any such Secured Indebtedness. Notwithstanding any such stay, modification or vacatur, any Secured Indebtedness outstanding immediately prior to the effective time of such modification, stay or vacatur shall be governed in all respects by the original provisions of this Order, and Sterling shall be entitled to all the rights, privileges and benefits, including the security interests and priorities granted herein, with respect to all such Secured Indebtedness.

22. <u>Safe Harbor</u>. The Court has considered and determined the matters addressed herein pursuant to its powers under the Bankruptcy Code, including the power to authorize the

Sterling Loan Debtors to obtain credit on the terms and conditions upon which the Sterling Loan Debtors and Sterling have agreed. Thus, each of such terms and conditions constitutes a part of the authorization under § 364 of the Bankruptcy Code, and is, subject to paragraph 20 hereof, subject to the protections contained in § 364(e) of the Bankruptcy Code.   *the Committee*

23.   <u>Royalty Claims of Jet Litho</u>.  The Debtors shall provide Jet Litho and Sterling with the "Royalty Reporting Statements" provided for under the Licensing Agreement entered into by and between Jet Litho and Borrower dated May 1, 2009 (the "**Licensing Agreement**"). Following entry of this Order, Borrower shall place into escrow the portion of any royalty payments collected since the Petition Date under the Licensing Agreement that are attributable to Jet Litho (and shall continue to place all such amounts into escrow as collected going forward), and shall maintain such amounts in escrow until paid to Jet Litho in accordance with the Budget or further order of the Court.  With respect to amounts collected under the License Agreement that relate to pre-petition periods, the Borrower shall escrow Jet Litho's share of such amounts, but shall not pay any such amounts to Jet Litho until further order of this Court.

24.   <u>Objections Overruled or Withdrawn</u>.  All objections to the entry of this Order have been withdrawn, overruled or resolved in accordance with the terms of this Order.

25.   <u>Controlling Effect of Order</u>.  To the extent any provisions in this Order conflict with any provisions of the Motion, any Prepetition Secured Loan Documents or any DIP Loan Documents, the provisions of this Order shall control.  For purposes of clarity, nothing contained in this Order, any of the DIP Loan Documents or the Prepetition Loan Documents shall confer upon or grant Sterling any secured or priority status and/or rights with respect to the assets of VCT superior to the liens, claims, interests super priority claims of ABOC notwithstanding anything contained in the DIP Loan Documents, including without limitation in the event the

Debtors' estates shall be substantively consolidated or otherwise merged or consolidated, and the DIP Loan Documents shall be amended as necessary to ensure compliance with the provisions of this Order. For purposes of further clarity, nothing in this Order shall confer upon or grant ABOC any secured or priority status and/or rights with respect to the Collateral, and ABOC shall have no claims or liens with respect to the Collateral presently and in the future, including, without limitation, in the event of substantive consolidation, merger or consolidation of the Debtors' estates.

26.    <u>Order Effective</u>.  This Order shall be effective as of the date of signature by the Court.

Dated:  <u>NW 3</u>, 2011
        Wilmington, Delaware

_____
United States Bankruptcy Judge

848129v.5