# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| QUALTEQ, INC., | ) Case No. 11-12572 (KJC) |
| d/b/a VCT NEW JERSEY, INC.,[1] | ) |
| | ) Jointly Administered |
| Debtors. | ) |
| | ) Objection Deadline: November 28, 2011 at 4:00 p.m. (ET) |
| | ) Hearing Date: December 6, 2011 at 10:00 a.m. (ET) |

## DEBTORS' MOTION FOR ENTRY OF AN ORDER DISMISSING UNIVERSITY SUBSCRIPTION SERVICES, INC.'S CHAPTER 11 CASE PURSUANT TO BANKRUPTCY CODE SECTION 1112(b)

The above-captioned debtors and debtors-in-possession (the "*Debtors*") hereby move this Court (the "*Motion*"), by and through their undersigned counsel, for entry of an order dismissing the Chapter 11 case of University Subscription Services, Inc. ("*University Subscription*") styled *In re University Subscription Services, Inc.*, Case No. 11-12585 (KJC) (the "*University Subscription Chapter 11 Case*") pursuant to Section 1112(b) of title 11 of the United States Code (the "*Bankruptcy Code*"). In support of this Motion, the Debtors respectfully state as follows:

## Background

1. On August 14, 2011 (the "*Petition Date*"), each of the above-captioned Debtors except for Debtor Anar Real Estate, LLC ("*Anar*") filed voluntary petitions for relief under

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer-identification number, are: (i) Qualteq, Inc., d/b/a VCT New Jersey, Inc. (4600); (ii) 1400 Centre Circle, LLC (7091); (iii) 5200 Thatcher, LLC (6991); (iv) 5300 Katrine, LLC (6016); (v) Anar Real Estate, LLC (9267); (vi) Automated Presort, Inc. (0850); (vii) Avadamma LLC (4775; 4800; 4810; 4829); (viii) Creative Automation Company (4350); (ix) Creative Investments, a General Partnership (5992); (x) Fulfillment Xcellence, Inc. (3461); (xi) Global Card Services, Inc. (4581); (xii) Unique Data Services, Inc. (1068); (xiii) Unique Embossing Services, Inc. (1043); (xiv) Unique Mailing Services, Inc. (2594); (xv) University Subscription Service, Inc. (3669); (xvi) Versatile Card Technology, Inc. (5258); (xvii) Veluchamy LLC (3434); and (xviii) Vmark, Inc. (5904).

chapter 11 of the Bankruptcy Code (the "*Initial Chapter 11 Cases*"). By Order of the Court dated August 16, 2011, the Initial Chapter 11 Cases were consolidated for procedural purposes only and are being jointly administered [Docket No. 28].

2. On August 25, 2011, the Office of the United States Trustee (the "*U.S. Trustee*") appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "*Committee*"). Pursuant to an order of the Court dated September 6, 2011, the Debtors retained Scouler & Company ("*Scouler*") as their financial advisors, and Dan Scouler, the Chief Executive Officer of Scouler, as the Debtors' Chief Restructuring Officer [Docket No. 135].

3. On September 11, 2011, Anar filed a petition for relief under chapter 11 of the Bankruptcy Code (the "*Anar Real Estate Chapter 11 Case*" and together with the Initial Chapter 11 Cases, the "*Chapter 11 Cases*"). On September 13, 2011, this Court ordered the Anar Real Estate Chapter 11 Case to be consolidated with the Initial Debtors' Chapter 11 Cases for procedural purposes only and the Chapter 11 Cases are being jointly administered [Docket No. 172]. The Debtors are functioning as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. Collectively, the Debtors operate one of the largest vertically-integrated direct marketing businesses in North America, providing a full range of direct marketing services to numerous Fortune 500 companies, major national banks, and other well-known customers. The Debtors offer their customers a broad array of services – including database management and customization, customized printing, mail sorting and shipping, and plastic card production and personalization – from multiple state-of-the-art facilities in Illinois, Iowa, and New Jersey. Each

of the operating Debtors serves a unique function in the direct marketing services that the Debtors provide their customers.

### A. *University Subscription's Ailing Operational Performance*

5. The Debtors' current business model is the outgrowth of a business formed over 30 years ago by Pethinaidu Veluchamy – University Subscription. Although it was formed and developed by the Debtors' founders, University Subscription's business is limited to marketing magazine subscriptions largely to university students and faculty. University Subscription has six employees and acts as a broker for magazine publishers, providing sales and order processing of magazine subscriptions in exchange for a portion of any profits received on each subscription sold. University Subscription's services are not an integral component of any of the Debtors' direct marketing services, which have evolved significantly since the founding of University Subscription.

6. As consumer content demand in the media industry continues to become increasingly digital-based, the magazine subscription industry has become even more obsolete. This gathering trend toward digital content can be seen in the impact on the sales performance of University Subscription in the last several years. University Subscription's income statements from the one year period ending December 31, 2009, the one year period ending December 31, 2010, and the 2011 year-to-date statement for the eight month period ending August 31, 2011 (*"Income Statements"*) are attached hereto as Exhibit A. The Income Statements show a steady decline in sales from $1,078,699.68 annual sales in 2009 to $921,124.91 in 2010, a fifteen percent decrease from the prior year. With only four months of the current year remaining, University Subscription's year-to-date sales for 2011 have reached only $421,887.39. Thus,

3

even if this amount somehow doubled over the next four months to $843,774.78 – a generous estimate given the company's sales performance over the last few years – University Subscription would still be at an eight percent decrease from the prior year, and a twenty-two percent decrease from the 2009 fiscal year. More importantly, University Subscription's gross profits, including profits from sales, have failed to support its steadily increasing operating expenses, leaving University Subscription with a net income gain of only $48.62 as of December 31, 2010, and a net income loss of $36,201.08 for the eight months ending August 31, 2011.

7. Dan Scouler, the Debtors' Chief Restructuring Officer, has concluded that University Subscription no longer makes sense as an operating enterprise, as the business is no longer vibrant, and is unlikely to significantly grow in any material way in the coming years, as media trends continue moving away from print. Moreover, University Subscription is no longer part of the Debtors' core business function, and does not enhance the value of the Debtors collectively as an operating concern.

### B. *University Subscription's Financial Condition*

8. Oakbrook Financial, University Subscription's sole secured creditor, holds a security interest in all of the property and assets of University Subscription in the approximate amount of $256,000.00. *See* Declaration of Arun Veluchamy, Vice President of Qualteq, Inc., in Support of First Day Motions [Docket No. 10], at page 6.

9. University Subscription's balance sheets dated December 31, 2009, December 31, 2010, and August 31, 2011, which are attached hereto as Exhibit B, show that University Subscription's liabilities grossly exceed its assets. University Subscription had only approximately $98,157.22 of assets against $640,937.55 in current liabilities as of August 31,

4

2011. A statement of University Subscription's accounts payable, which is attached hereto as Exhibit C, shows that, as of September 20, 2011, University Subscription's post-petition payables owing to non-insiders totaled $4,838.17, and pre-petition payables totaled $26,680.93. Additionally, as of August 31, 2011, University Subscription was operating at loss of $4,525.13 per month for the current fiscal year.

10. As of September 20, 2011, University Subscription's pre-petition unsecured payables totaled over $234,885.98, with $208,205.05 owed to insiders.

11. A statement of University Subscription's current accounts receivables, which is attached hereto as Exhibit D, shows that as of September 14, 2011, University Subscriptions' receivables were only $16,479.11. However, approximately seventy percent of that amount – $11,535.38 – is significantly aged and has been written off by University Subscriptions as uncollectable.

12. Aside from University Subscription's limited available cash on hand and balance of receivables, the only available asset owned by University Subscription is an essentially obsolete computer that holds databases of customer information, which was purchased by University Subscription approximately twenty years ago, and is fully depreciated to a book value of zero.

13. After performing a detailed analysis of University Subscription's business and financial condition, the Debtors' CRO has determined that there is no value for the Debtors' estates in continuing University Subscription's business operations, which have been in decline in recent years. University Subscription's sole secured creditor concurs with the Debtors'

5

conclusions and consents to relief sought herein. Additionally, the Committee has reviewed the Motion and the Debtors' understand that the Committee concurs with the relief sought herein.

## JURISDICTION

14. This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409. The statutory basis for the relief requested herein is section 1112(b) of the Bankruptcy Code.

## RELIEF REQUESTED

15. Pursuant to Bankruptcy Code section 1112(b), the Debtors request that the Court enter an order dismissing the University Subscription Chapter 11 Case without prejudice.

## BASIS FOR RELIEF

16. Bankruptcy Code section 1112(b) provides in pertinent part:

> (1) [O]n request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.
>
> (2) The court may not convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate . . .

11 U.S.C. § 1112(b)(1) and (2).

17. A motion filed pursuant to Bankruptcy Code section 1112(b) requires the court to take a two-step analysis to determine (i) if "cause" exists to either dismiss or convert a chapter

11 case and (ii) whether dismissal or conversion is in the best interests of the bankruptcy estate and its creditors. *See In re Brewery Park Associates*, Case No. 10-11555, at *44 (Bankr. E.D. Pa. April 29, 2011).

18. The Bankruptcy Code does not define "cause." However, courts have recognized that where parties in interest agree to the dismissal of a chapter 11 case, "cause" exists. *See AC Rentals, Inc. v. U.S. Trustee (In re AC Rentals, Inc.)*, No. 04-098, 02-10540-WV, at *3 (10th Cir. B.A.P. May 12, 2005) (stating that when certain parties in interest agree that a chapter 11 case should be either dismissed or converted, "there is no question that 'cause' exists under § 1112(b)"). Because the Debtors and Oakbrook Financial have agreed that dismissal is appropriate for the University Subscription Chapter 11 Case, the Debtors have established the requisite "cause" under Bankruptcy Code 1112(b).

19. Moreover, the Debtors can establish "cause" for dismissal under Bankruptcy Code section 1112(b)(4)(A) due to University Subscription's substantial or continuing losses and the absence of any reasonable likelihood of rehabilitation. Bankruptcy Code section 1112(b)(4)(A) provides that "cause" exists for dismissal where a debtor incurs "substantial or continuing loss to or diminution of the estate" and there is an "absence of a reasonable likelihood of rehabilitation." *See* 11 U.S.C. § 1112(b)(4)(A).

**Substantial and Continuing Losses**

20. University Subscription's businesses have been in decline in recent years, and are no longer generating operating profits such that it can regularly meet its expenses as they become due. Moreover, since University Subscription has few assets and cannot continue to fund its operations in chapter 11, there can be no reasonable dispute that it is incurring both continual and

7

substantial losses. *See, e.g., In re AdBrite Corp.*, 290 B.R. 209, 215 (Bankr. S.D.N.Y. 2003) ("Courts have held that a negative cash flow post-petition and an inability to pay current expenses satisfy the elements of § 1112(b)(10)"); *In re East Coast Airways, Ltd.*, 146 B.R. 325, 326 (Bankr. E.D.N.Y. 1992) ("[a]bsent a reasonable amount of assets and a feasibly operating business, there is no reason for continuing a corporate debtor in Chapter 11").

**No Reasonable Likelihood of "Rehabilitation"**

21. The Debtors can also establish that there is no reasonable likelihood of rehabilitation for University Subscription under Bankruptcy Code § 1112(b)(4)(A). It is well-settled that "rehabilitation," as distinguished from "reorganization," denotes a restoration of a viable business and does not include liquidation. *Loop Corp. v. U.S. Trustee*, 379 F.3d 511, 516 (8th Cir. 2004) ("Courts have consistently understood 'rehabilitation' to refer to the debtor's ability to restore the viability of its business."); *In re AdBrite*, 290 B.R. at 216 ("rehabilitation does not mean the same thing as reorganization for purposes of Chapter 11 because a reorganization may include an orderly or complete liquidation. In this context, rehabilitation means to put back in good condition and reestablish on a sound basis. It signifies that the debtor will be reestablished on a secured financial basis, which implies establishing a cash flow from which its current obligations can be met.").

22. There can be no reasonable doubt that University Subscription's business is no longer viable in the long term. *See, e.g., Nester v. Gateway Access Solutions, Inc. (In re Gateway Access Solutions, Inc.)*, 374 B.R. 556, 564 (Bankr. M.D. Pa. 2007) (finding an absence of a reasonable likelihood of rehabilitation of a debtor in chapter 11 where "[t]he track record of the debtor suggests a pattern of declining assets and substantial continuing losses.") Indeed, the

8

print media industry is ailing as a general matter, a fact highlighted by University Subscription's decline in recent years. Moreover, and perhaps more importantly, in the context of the Debtors' overall operating enterprise, University Subscriptions offers no synergistic value. University Subscription's inability to conduct its business in a profitable manner and the continued accrual of post-petition debt constitute cause for the dismissal or conversion.

**Conversion Is Not Appropriate**

23. Having established "cause" through both the agreement of the parties in interest under Bankruptcy Code 1112(b)(1), substantial and continuing losses, and no reasonable likelihood of rehabilitating under Bankruptcy Code 1112(b)(4), the Movants further submit that the Case warrants dismissal over conversion. Because University Subscription has substantial and continuing losses and no reasonable likelihood of rehabilitating, the Court must dismiss or convert the University Subscription Chapter 11 Case. Whether a court dismisses or converts a debtor's case depends upon "whichever is in the best interests of creditors and the estate." 11 U.S.C. § 1112(b)(1). "As between conversion and dismissal, conversion to chapter 7 should only be considered if a chapter 7 trustee would have assets to administer upon conversion." *In re Brewery Park Associates*, Case No. 10-11555, at *50 (Bankr. E.D. Pa. 2011).

24. Because there are few assets to liquidate, it is in the best interest of the creditors of University Subscription to dismiss the University Subscription Bankruptcy Case. If the Case is converted to chapter 7, all recoveries of parties in interest recoveries will be diminished due to the added layer of administrative fees. Upon dismissal of the University Subscriptions Chapter 11 Case, University Subscription intends to conduct an orderly wind down of its operations over the coming months, and collecting the company's existing accounts receivable to the extent

9

possible to pay its outstanding debts. University Subscription will have sufficient funds available in its operating account to pay its non-insider unsecured and administrative creditors in full upon dismissal, and will make such payments as provided in the proposed order attached hereto.

25. As courts have recognized, "creditors are the best judge of their own interests." *Camden Ordnance Mfg. Co. of Ark., Inc. v. United States Trustee (In re Camden Ordnance Mfg. Co. of Ark., Inc.)*, 245 B.R. 794, 802 (E.D. Pa. 2000). As noted, here the Committee – the official representative of the body of unsecured creditors sanctioned by the Bankruptcy Code – concurs with the relief requested herein.

26. Based on the foregoing, the Debtors respectfully submit that relief requested herein is appropriate and should be authorized on the terms set forth in the order attached hereto as Exhibit E.

## NOTICE

27. Notice of this Motion has been given to (a) the Office of the United States Trustee, (b) Oakbrook Financial, (c) counsel to the Committee, and (d) parties entitled to receive notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, the Debtors submit that no further notice is required.

## NO PRIOR REQUEST

28. No prior motion for the relief requested herein has been made to this or any other court.

WM1A 1014664v1 11/03/11

WHEREFORE, the Debtors respectfully request the entry of an order dismissing the University Subscription Chapter 11 Case without prejudice and granting such other and further relief as the Court deems appropriate.

Dated: November 3, 2011

FOX ROTHSCHILD LLP

Jeffrey M. Schlerf (DE Bar No. 3047)
Eric M. Sutty (DE Bar No. 4007)
John H. Strock (DE Bar No. 4965)
L. John Bird (DE Bar No. 5310)
919 North Market Street
Wilmington, Delaware 19801
Telephone: (302) 654-7444
Facsimile: (302) 656-8920

-and-

Harley J. Goldstein, Esq. (*Pro Hac Vice*)
Matthew E. McClintock, Esq. (*Pro Hac Vice*)
One Magnificent Mile
980 North Michigan Ave., Suite 1400
Chicago, Illinois 60611
Telephone: (312) 337-7700
Facsimile: (312) 277-2305