IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>QUALTEQ, INC.,<br>d/b/a VCT NEW JERSEY, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 11-12572 (KJC)<br><br>Jointly Administered<br><br>Ref. Docket No. 106 |

Hearing Date: December 16, 2011 at 10:00 a.m.
Objections Due: November 4, 2011 at 4:00 p.m.

## OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO MOTION OF BANK OF AMERICA, N.A. TO TRANSFER VENUE OF THESE CASES TO THE UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF ILLINOIS

The Official Committee of Unsecured Creditors (the "Committee") of Qualteq, Inc. d/b/a VCT New Jersey, Inc., *et al.*, the above-captioned debtors and debtors-in-possession (the "Debtors"), by and through its proposed undersigned counsel, files this objection (the "Objection") to the *Motion of Bank of America, N.A. to Transfer Venue of These Cases to the United States Bankruptcy Court for the Northern District of Illinois* (the "Motion") [Docket No. 106]. In support of the Objection, the Committee respectfully states as follows:

## PRELIMINARY STATEMENT

1. Bank of America has an axe to grind. As evidenced by the "parade of horribles" alleged in the Motion with respect to certain conduct of the Debtors' equity holders, Bank of America appears most interested in airing the dirty laundry of four individuals --

---

[1] The Debtors, followed by the last four digits of their respective taxpayer identification numbers, are as follows: (i) Qualteq, Inc., d/b/a VCT New Jersey, Inc. (4600); (ii) 1400 Centre Circle, LLC (7091); (iii) 5200 Thatcher, LLC (6991); (iv) 5300 Katrine, LLC (6016); (v) Automated Presort, Inc. (0850); (vi) Avadamma LLC (4775, 4800, 4810, 4829); (vii) Creative Automotion Company (4350); (viii) Creative Investments, a General Partnership (5992); (ix) Fulfillment Xcellence, Inc. (3461); (x) Global Card Services, Inc. (4581); (xi) Unique Data Services, Inc. (1068); (xii) Unique Embossing Services, Inc. (1043); (xiii) Unique Mailing Services, Inc. (2594); (xiv) University Subscription Service, Inc. (3669); (xv) Versatile Card Technology, Inc. (5258); (xvi) Veluchamy LLC (3434); (xvii) Vmark, Inc. (5904); and (xviii) Anar Real Estate, LLC (9267).

Pethinaidu Veluchamy, Parameswari Veluchamy, Arun Veluchamy and Anu Veluchamy -- in whatever venue is most conducive to such attacks and accusations rather than in reorganizing or maximizing the value of the Debtors' estates for the benefit of legitimate creditors. However, Bank of America is not a party in interest in these chapter 11 bankruptcy cases. Bank of America is neither a debtor entity nor a creditor of any debtor entity. At best, Bank of America can claim to be a judgment creditor of certain of the Debtors' equity holders, Pethinaidu, Parameswari, Arun and Anu Veluchamy, which under the Bankruptcy Code and relevant case law does not afford it with "party in interest" status. Under well-established law, only a party in interest to a particular legal action has standing to appear and be heard in connection with that action. Accordingly, without even considering the merits of Bank of America's request, the Motion should be denied because Bank of America lacks the requisite standing to bring such an action in these chapter 11 cases before this Court.

2. In the alternative, in the event Bank of America is found to have standing to file its Motion in these chapter 11 cases -- which it does not -- Bank of America has failed to establish that the requested transfer of venue would be in the interest of justice or for the convenience of the parties. None of the Debtors' ten (10) secured lenders have joined the Motion. None of the Debtors' creditors have joined the Motion. Both the Debtors and the Committee strongly oppose the Motion. In sum, Bank of America stands alone as the sole entity claiming to be inconvenienced by the Debtors' choice of venue and requesting a transfer to the Northern District of Illinois. Accordingly, the Motion should be denied.

## BACKGROUND

3. On August 14, 2011 and on September 11, 2011 (only for the debtor Anar Real Estate, LLC ("Anar")), the Debtors commenced their respective bankruptcy cases (collectively, the "Petition Date") by filing voluntary petitions for relief under title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

4. No trustee or examiner has been appointed in the Debtors' bankruptcy cases.

5. On August 25, 2011, the Office of the United States Trustee appointed the Committee pursuant to 11 U.S.C. § 1102 and shortly thereafter, the Committee selected Lowenstein Sandler PC ("Lowenstein") to serve as its counsel. The Committee filed an application to retain Lowenstein as counsel on September 23, 2011 [Docket No. 218], which retention application was approved by order dated October 20, 2011 [Docket No. 330].

6. On September 2, 2011, Bank of America, N.A. ("B of A" or the "Movant") filed a sealed version of the Motion, along with a separate motion seeking Court authority to file the Motion under seal (the "Motion to Seal") [Docket Nos. 107 & 106, respectively].

7. On October 12, 2011, B of A withdrew the Motion to Seal [Docket No. 320] and unsealed the Motion found at Docket No. 106.

8. In the Motion, B of A requests entry of an order transferring venue of the Debtors' seventeen (17) bankruptcy cases to the United States Bankruptcy Court for the Northern District of Illinois.

## OBJECTION

**A. Bank of America Does Not Have Standing to Request the Relief Sought in the Motion Because Bank of America Is Not a Party in Interest.**

9. Without even reaching the merits of B of A's request for relief, the Motion should be denied because B of A lacks the requisite standing to bring such an action in these chapter 11 cases.

10. The issue of standing "is the threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498,

(1975). Section 1109(b) of the Bankruptcy Code provides that "[a] party in interest, including the debtor, the trustee, a creditors' committee, an equity holders' committee, a creditor, an equity security holder, or an indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109(b). This provision, however, does not confer standing in the absence of a legally protected interest affected by the bankruptcy proceeding. *See In re James Wilson Assocs.*, 965 F.2d 160, 169 (7th Cir. 1992) (holding mortgagee of debtor's landlord in sale/leaseback transaction had no standing to challenge assumption of lease); *In re Caldor, Inc.*, 193 B.R. 182, 186 (Bankr. S.D.N.Y.1996) (holding bank that was creditor of debtor's landlord was not a party in interest and had no standing to object to the debtor's motion for authority to enter into lease). Rather, the party asserting standing must show that it is a beneficiary of the bankruptcy provision that it invokes. *See James Wilson Assocs.*, 965 F.2d at 169; *In re Caldor, Inc.*, 193 B.R. at 186. Further, the party seeking standing must assert its own legal rights and interests, and cannot rest its claim for relief on the legal rights or interests of third parties. *See In re Caldor, Inc.*, 193 B.R. at 186 (*citing Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 474, (1982)).

11. "Party in interest" is to be interpreted broadly to allow those parties affected by the chapter 11 case to be heard. *See* 5 Lawrence P. King, COLLIER ON BANKRUPTCY ¶ 1109.02, at 1109–27 (15th ed. 1996). Nevertheless, "party in interest" has a particular connotation in bankruptcy, and its meaning depends upon the purposes of the Bankruptcy Code. *See In re Comcoach Corp.*, 698 F.2d 571, 573 (2d Cir.1983) (holding mortgagee of debtor's landlord was not a party in interest and therefore had no standing to seek stay relief). One purpose of bankruptcy is to "convert the bankrupt's estate into cash and distribute it among creditors." *Id.* at 573 (citations omitted); *see also In re Ionosphere Clubs, Inc.*, 101 B.R. 844, 849 (Bankr. S.D.N.Y. 1989) (holding consumers organization with no right to payment from the debtors was not "party in interest" under § 1109). Thus, a "party in interest" is reserved to the debtor or one who is a creditor of the estate, *see Comcoach*, 698 F.2d at 573, or is able to assert

an equitable claim against the estate. *See Ionosphere Clubs,* 101 B.R. at 849. Established law confirms that a creditor of the debtor's creditor is *not* a "party in interest." *See In re Lifeco Inv. Group, Inc.,* 173 B.R. 478, 487 (Bankr. D.Del. 1994) (holding receiver of insolvent insurance company with no authority to pursue insurance company's cause of action against debtor insurance holding company and had no standing to request change of venue); *In re Goldman,* 82 B.R. 894, 896 (Bankr. S.D.Ohio 1988) (holding judgment creditor of debtor's corporation, which corporation held option to purchase debtor's property, was not a party in interest with standing to object to chapter 7 trustee's rejection of such option as executory contract). Not everyone with an economic stake in the outcome of a bankruptcy case has standing to participate in the case. *See Lifeco,* 173 B.R. at 487. Further, a "party in interest" does not include a person who is merely "concerned" with the results of the proceeding. *See Goldman,* 82 B.R. at 896.

12. Here, B of A is not a lender to or otherwise an unsecured creditor of the Debtors. It is not a holder of equity in any Debtor entity, nor does it have any other type of ownership interest in, or economic relationship with, the Debtors or their bankruptcy estates. Accordingly, B of A is not a party in interest with a direct financial stake in these chapter 11 cases and therefore has no standing to bring the Motion.

13. In December 2010, B of A obtained judgments against Pethinaidu and Parameswari Veluchamy (the "Veluchamys") in litigation in the Northern District of Illinois (the "B of A Litigation") and has taken discovery with an eye towards asserting claims against third parties to recover alleged fraudulent transfers. Thereafter, the Veluchamys filed for bankruptcy relief under chapter 7. However, the judgment debtors in the B of A litigation are not Debtor entities, rather, they are certain of the Debtors' equity holders, the Veluchamys. While B of A may have a direct financial stake in the Veluchamys' chapter 7 bankruptcy case, it clearly does not have a direct financial stake in the Debtors' chapter 11 cases, and therefore has no standing to assert claims or causes of action in the Debtors' chapter 11 cases. Further, the only party that may have a direct financial stake in the chapter 11 cases based on alleged fraudulent transfers

made by the Veluchamys is the chapter 7 Trustee. *See, e.g., In re JMP-Newcor Int'l*, 225 B.R. 462, 464 (Bankr. N.D. Ill. 1998) (holding creditor had no direct economic interest after assigning its claim, and therefore was no longer a party in interest); *In re WHET, Inc.*, 33 B.R. 438, 440 (Bankr. D. Mass. 1983) (holding equity holder of debtor was not party in interest in corporate bankruptcy proceeding in which equity holder had filed for bankruptcy and his equity interests thus vested in the chapter 7 trustee); *see also* 11 U.S.C. § 544 (granting trustee the powers of, among other things, a hypothetical judicial lien creditor, to "avoid any transfer of property of the debtor"); *see also, e.g., BRS Associates, L.P. v. Dansker*, 246 B.R. 755, 772 (S.D.N.Y. 2000) ("Where the trustee has standing to sue, the automatic stay prevents creditors or shareholders from asserting the claim notwithstanding that outside of bankruptcy, they have the right to do so.") (citations omitted); *PHP Liquidating, LLC v. Robbins, et al., (In re PHP Healthcare Corp.)*, 128 Fed. Appx. 839, 844-845 (3d Cir. 2005) (finding that an individual creditor of a debtor may not assert a claim for fraudulent transfer belonging to all creditors); *Bd. of Trs. v. Foodtown, Inc.*, 296 F.3d 164, 169 (3d Cir. 2002) (holding "[o]nce a company or individual files for bankruptcy, creditors lack standing to assert claims that are 'property of the estate.'") (citation omitted); *Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, 554 (3d Cir. 2003) (finding absent a grant of derivative standing, only a trustee or debtor in possession may pursue claims under 11 U.S.C. § 544); *In re Keene Corp.*, 164 B.R. 844, 850 (Bankr. S.D.N.Y. 1994) (enjoining creditor lawsuits against non-debtor third parties to recover assets allegedly fraudulently transferred by the debtor and holding that "the trustee alone" has the authority to assert claims to recover property under 11 U.S.C. § 544).

14. At a hearing on the Debtors' motion for authority to enter into a debtor in possession financing facility (the "DIP Financing Motion") held November 3, 2011, the Court concluded that B of A did not have standing to object to the DIP Financing Motion because, *inter alia*, B of A had no direct claims or right to payment from the Debtors. These facts have not changed. B of A is not a party in interest with direct claims against the Debtors and therefore has

no standing to request a change of venue. Accordingly, without any consideration of the merits of the relief sought, the Motion should be denied.

**B. The Motion Should Be Denied Because Bank of America Has Not Established That the Requested Transfer of Venue Would Be in the Interest of Justice or for the Convenience of the Parties.**

15. Even if the Movant is found to have standing -- which it does not -- the Motion should be denied because B of A has not established that the requested transfer of venue would be in the interest of justice or for the convenience of the parties.

16. "A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C. §1412. *See also*, Fed. R. Bank. P. 1014(a) ("If a petition is filed in the proper district, the court...may transfer the case to any other district if the court determines that the transfer is in the interest of justice or for the convenience of the parties.... If a petition is filed in an improper district, the court ... may dismiss the case or transfer it to any other district if the court determines that transfer is in the interest of justice or for the convenience of the parties.").

17. The United States Bankruptcy Court for the District of Delaware (the "Court") has recognized that when considering a motion to transfer venue under 28 U.S.C. § 1412 there is "a strong presumption of maintaining venue where the bankruptcy case is pending." *In re Hayes Lemmerz Int'l Inc.*, 312 B.R. 44, 46 (Bankr. D.Del. 2004) (citations omitted) (preference action). *See also In re Mobile Tool Int'l, Inc.*, 320 B.R. 552, 556 (Bankr.D.Del.2005). Also, courts in the Third Circuit have observed that the choice of forum should "not be lightly disturbed." *See Rita's Water Ice, Inc. v. Josie's Water Ice, Inc.*, No. Civ. A. 98-6603, 1999 WL 482319, at * 4 (E. D. Penn. July 9, 1999); *In re Visteon Corp.*, Adv. No. 11–52073, 2011 WL 5025004, at *1 (Bankr. D.Del. October 21, 2011) (in the context of preference actions "Courts generally defer to plaintiff's decision of venue if it is legally proper").

18. The party seeking to transfer venue has to demonstrate by a preponderance of the evidence that the transfer is appropriate. *Hayes Lemmerz Intern. Inc.*, 312 B.R. at 46. "[w]hether to transfer venue is within the Court's discretion" and must be exercised after an "individualized case-by-case analysis of convenience and fairness". *In re Enron Corp.*, 284 B.R. 376, 386 (Bankr. S.D.N.Y. 2002) (citations omitted). The decision to transfer venue "is not to be taken lightly" and should be done "cautiously" as it is a "cumbersome disruption of the Chapter 11 process." *Enron*, 284 B.R. at 386 (citations omitted).

19. The Debtors' choice of forum "is entitled to great weight if venue is proper." *Enron*, 284 B.R. at 386 (*citing In re Ocean Properties of Delaware, Inc.*, 95 B.R. 304, 305 (Bankr.D.Del.1988)); *In re Windtech*, 73 B.R. 448 (Bankr.D.Conn.1987). A transfer of venue is not appropriate where "a transfer would merely shift the inconvenience from one party to the other, or where after balancing all the factors, the equities leaned but slightly in favor of the movant, the [debtor's] choice of forum should not be disturbed." *Enron*, 284 B.R. at 286 (citations omitted).

20. B of A predominantly relies upon the following six factors[2] to argue that venue of the Debtors' bankruptcy cases should be transferred from Delaware to Illinois "in the interest of justice[3] or for the convenience of the parties":

---

[2] B of A also recognizes that the Third Circuit has articulated the following factors to be weighed when determining whether it is appropriate to transfer venue pursuant to Bankruptcy Code Sections 1404 or 1412:

(1) plaintiff's choice of forum, (2) defendant's forum preference, (3) whether the claim arose elsewhere, (4) the location of books and records and/or the possibility of viewing premises if applicable, (5) the convenience of the parties as indicated by their relative physical and financial condition, (6) the convenience of the witnesses, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora, (7) the enforceability of the judgment, (8) practical considerations that would make the trial easy, expeditious, or inexpensive, (9) the relative administrative difficulty in the two fora resulting from congestion of the court's dockets, (10) the public policies of the fora, (11)

(1) proximity of creditors of every kind to the court;

(2) proximity of the debtor;

(3) proximity of witnesses who are necessary to the administration of the estate;

(4) the location of the debtor's assets;

(5) the economic administration of the estate; and

(6) the necessity for ancillary administration in the event of liquidation.

*In re Innovative Communication Co.*, LLC, 358 B.R. 120, 126 (Bankr. D. Del. 2006), *clarified on denial of reconsideration*, 2007 WL 496439 (Bankr. D. Del. 2007) *citing Matter of Commonwealth Oil Refining Co., Inc.* 596, F.2d 1239 (5th Cir. 1979) *cert. denied* 444 U.S. 1045, 100 S.Ct. 732, 62 L.Ed. 2d 731 (1980) ("*CORCO*")(seminal case listing the six above factors to consider when analyzing a motion to transfer venue).

**(1)** **Proximity of Creditors of Every Kind to the Court**

---

> the familiarity of the judge with the applicable state law, and (12) the local interest in deciding local controversies at home.
>
> *Hechinger*, 296 B.R. at 325 (*citing Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879–80 (3d Cir.1995)).

As the vast majority of these factors overlap with the six factors relied upon by B of A, they will not be discussed in detail here.

³  Although not focused on by B of A, certain courts also consider the "interest of justice" separately when analyzing whether it is appropriate to transfer venue. *Enron*, 284 B.R. at 403. Significantly, Courts consider whether there will be "a delay in the administration" of the cases at issue if venue is transferred. *Id.* Here, a transfer of venue would undoubtedly cause some "delay in the administration" of the cases. Courts also consider the "learning curve" which involves "consideration of the time and effort spent by the current judge and the corresponding effect on the bankruptcy case in transferring venue." *Id.* As the Second Circuit in *Johns Manville* held, even though a venue change would be more convenient for the parties and witnesses, the "efficient administration of the case, such as the fact that the bankruptcy court had developed a substantial learning curve, weighed in favor of retention of the case." *Id.* (citations omitted). Here, Judge Carey has developed a significant learning curve about these cases over the last two months as he has presided over several substantive hearings. Accordingly, in the interest of justice, the venue of the Debtors bankruptcy cases should not be transferred.

21.     This factor, even when it strongly favors transferring venue, which is not the case here, is not determinative. *Enron*, 284 B.R. at 400 (citations omitted). In the *Enron* case, a general unsecured creditor bank of a Enron affiliate debtor entity ("<u>SJG</u>") that operated in Puerto Rico sought a change of venue of SJG's bankruptcy case from the Southern District of New York, to the District of Puerto Rico. In SJG's bankruptcy case only one (1) of the twenty (20) largest creditors was not based in Puerto Rico (where the moving party sought to transfer venue) and the majority of claims in dollar amount were also located in Puerto Rico. *Id.* The bank seeking to transfer venue to Puerto Rico from New York argued that due to the geographic distance from Puerto Rico to New York, the number of creditors that would participate would be reduced. *Id.* The Court agreed that this statement is generally accurate, but because a creditors' committee may not be formed in Puerto Rico (it is unclear if another committee would be formed in New York), there would be "little or no effect on creditor participation." *Id.*

22.     Likewise, in this case, the Committee submits that there would also be "little or no effect on creditor participation" as (i) the Debtors' ten secured lenders are located across the country have already retained counsel and have actively participated in numerous cash collateral hearings, (ii) the Committee members, from across the United States and internationally, have played a very active role in the Debtors' cases, from the use of cash collateral and debtor in possession financing to the retention of ordinary course professionals, and (iii) various other creditors that are not members of the Committee have participated in the cases in various ways, including the negotiation of critical vendor payments and filing objections to the treatment of royalties associated with certain patents. There is no indication that there would be any additional participation in the Debtors' cases if venue was transferred to Illinois.

23.     Additionally, B of A's argument that creditor participation is stymied because venue of the Debtors' cases is in Delaware, is disingenuous based upon its own active role in the Debtors' cases. Significantly, B of A, one of the largest banks in the world has a significant business presence in Delaware, and for purposes of the Debtors' cases, has retained

local counsel in Delaware. Further, B of A has played an active role in the Debtors' cases by filing this motion to transfer venue and other motions. Accordingly, as the *Enron* court observed, this Court can anticipate "Movant's continued participation in this case, as well as participation by any other interested creditor wherever located" *Enron*, 284 B.R. at 400 (citations omitted), even if the cases remain in Delaware.

24. Further, due to the "convenience and speed of the airplane", "it is reasonable to expect creditors [ ] will travel [to Delaware] for these proceedings." *Id.* (citations omitted). Moreover, as this Court has allowed B of A to do on prior occasions, it and other creditors, could participate via telephone if they were concerned with travel costs. *Id.* at 400-01. Moreover, (a) the Court's docket is available on the Court's website by obtaining a PACER password, (b) the electronic filing system allows all interested parties to access all pleadings filed in the case, and (c) any pleadings "that directly impact [ ] any employee or creditor [are] required to be served upon such individual or entity." *Id.* at 401 (citations omitted).

25. Finally, B of A has made no showing that witnesses would not be willing to travel to Delaware for either its motion to transfer venue or any subsequent action that it may seek to bring against the Debtors. Accordingly, even if Delaware is an inconvenient forum, without a showing that "witnesses are actually unavailable for trial in Delaware", "witnesses are presumed to be willing to testify in either forum" and this factor favors keeping the action in Delaware. *Visteon Corp*, 2011 WL 5025004, at * 3 (*citing Hayes Lemmerz*, 312 B.R. at 47) (quotations omitted).

(2) **Proximity of the Debtors**

26. Although the Debtors' operations are predominantly located in Illinois, the Debtors' problems are predominantly financial and the restructuring efforts since the Petition Date have been focused in California and Delaware. *Enron*, 284 B.R. at 393 (citations omitted). The Debtors are "no longer the same entit[ies] that [they were] before the bankruptcy filing.

[They are] now [ ] debtor[s]-in-possession and with such a status [they have] abandoned [their] pre-petition existence to one now dependent on a different series of considerations." *Enron*, 284 B.R. at 394. Executive decision-making in terms of the chapter 11 cases now lies with Scouler & Company ("Scouler"), the Debtors' chief restructuring officer, which is based in California, and its law firm Goldstein & McClintock ("G&M"), which has offices in Illinois.

27. This group of professionals determined that the Debtors' best chance to reorganize and to preserve value for their respective creditor constituencies required the separation of the Debtors' cases from the myriad legal issues in Illinois involving the Debtors' principals. Accordingly, the Debtors' "choice of venue is highly probative and should not be disturbed." *Enron*, 284 B.R. at 394.

28. In addition, as it is the Debtors' main goal to keep their operations in Illinois and throughout the county running as smoothly as possible throughout the duration of the cases "there is no particular need for the case to be pending in [Illinois] to achieve that goal." *Id.*

29. Finally, with respect to this factor, the presence of the Debtors' books and records in Illinois is not a concern because "with modern technology that information which is ordinarily computerized, can be readily be transported via electronic mail." *Id.* (citations omitted); *Visteon Corp*, 2011 WL 5025004, at * 2 *quoting DHP Holdings II Corp. v. Home Depot, Inc. (In re DHP Holdings II Corp.)*, 435 B.R. 264, 273 (Bankr. D.Del. 2010) (citations omitted) (quotations omitted). The Committee's professionals, which are not located in Illinois, have not had any additional issues obtaining financial and other information from the Debtors that they would not have had if they were in Illinois.

(3) **Proximity of Witnesses Who Are Necessary to the Administration of the Estates**

30. This factor focuses on not "the employees on the production line", but the Debtors' "employees who must appear in court." *Enron*, 284 B.R. at 392 (citations omitted). Accordingly, the Court needs to determine which of the Debtors' employees are familiar with the

"financial status of the company." *Id.* at 393. As of now, it is not exactly clear which live witnesses will be necessary, however, it appears that the Debtors' current executives (Anu and Arun Veluchamy) and the professionals retained in the Debtors' cases (G&M located in Chicago and Scouler in California) would need to participate in the proceedings. Additionally, certain B of A employees may have to participate as well.

31. The Debtors' executives and professionals are obviously willing to, and have on numerous occasions, traveled to Delaware, as have necessary professionals and representatives of B of A. Moreover, to the extent necessary, with Court approval, any necessary appearances "can be addressed by telephonic and video conferencing capabilities." *Enron*, 284 B.R. at 393; *see also In re Innovative Communication Co.*, 358 B.R. at 128 (observing that "videoconferencing and teleconferencing have been utilized effectively to limit travel to either court location to date"). In addition, "[t]he limited and likely infrequent, appearances that may be required of the principals should not cause any inconvenience." *Enron*, 284 B.R. at 393 (citations omitted).

(4) **The Location of the Debtors' Assets**

32. When the ultimate goal of a bankruptcy case is a reorganization, instead of a liquidation, the location of the assets "is not as important". *Enron*, 284 B.R. at 390 (relying on *CORCO*, 596 F.2d at 1248). *See also In re Island Club Marina, Ltd.*, 26 B.R. 505, 508 (Bankr. N.D. Ill. 1983) (holding that "this factor is not controlling in reorganization cases"); *In re One-Eighty Investments, Ltd.*, 18 B.R. 725, 729 (Bankr. N.D. Ill. 1981) (holding that in a reorganization, "the location of the assets of the Debtor is not particularly important").

33. Currently, it is the Committee's belief that the Debtors seek to formulate a plan of reorganization. Accordingly, this factor is not relevant to the resolution of the Motion.

### (5) The Economic Administration of the Estates

34. This factor is the most important to be considered by the Court. *Enron*, 284 B.R. at 395 (citations omitted). It boils down to whether the "debtor-in-possession will be able to formulate a plan that is acceptable to all relevant parties." *Id.* (citations omitted). This consideration involves an analysis of the "post-petition efforts of the debtor in possession[.]" *Id.* (citations omitted). Additionally, the "learning curve" involved in another judge taking over the Debtors' bankruptcy cases also has to be considered. *Id.* at n. 18. The fact that the chapter 7 bankruptcy cases of the Veluchamys and other litigation involving B of A (currently stayed) is pending in Illinois, is not sufficient to transfer the Debtors' bankruptcy cases. Significantly, one of the main reasons the Debtors' Bankruptcy cases were filed in Delaware was to ensure that value could be preserved and that the cases would not "become[] entangled or lost" in the litigation already pending in the Northern District of Illinois. *Id.* at 397-98 (citations omitted).

35. When addressing the economic administration of the estate, courts have also focused on local considerations and found it to be "highly probative" that no creditors (B of A is even a creditor) have joined B of A's motion. *Id.* at 399 (citations omitted). In fact, the Debtors' ten (10) secured lenders, which have been actively involved in this case and have authorized the Debtors to continue using their cash collateral, have not joined B of A's motion to transfer venue. Moreover, none of the Debtors' unsecured creditors (which B of A argues are predominantly from the Illinois area) have joined the Motion.

36. Also, Courts have focused on the views of the official committee of unsecured creditors when addressing the economic administration of the estate. The official committee of unsecured creditors has a unique role as it is "a fiduciary to and representative body of the unsecured creditors of all the [Debtors'] estates". *Id.* at 399 (citations omitted). The proximity of the Court to "most of the creditors are not significant here[4], since the creditors' committee ... [has] voiced [its] support in favor of the debtor[s]' choice of venue." *Id.* at 399

---

[4] *See* discussion of factor 1 above.

(citations omitted). When like here, the Committee "has indicated....strong opposition to a transfer of the bankruptcy case," and it has "been involved in the administration of the [Debtors'] estates, and thus [has] a familiarity with the issues of these cases", a transfer of venue to Illinois is not proper. *Id.* at 399.

(6) <u>**The Necessity for Ancillary Administration in the Event of Liquidation**</u>

37. This factor is often discounted by the courts because anticipation of failure of the chapter 11 process is an "illogical basis upon which to predicate transfer." *Enron*, 284 B.R. at 402 (citation omitted). Further, at this early stage, there is no indication that these chapter 11 cases will be converted to cases under chapter 7 liquidation proceedings. Accordingly, this factor is not relevant to the resolution of the Motion.

38. B of A has not established that the requested transfer of venue would be in the interest of justice or for the convenience of the parties. Accordingly, the Motion should be denied.

## **RESERVATION OF RIGHTS**

39. The Committee reserves the right to revise, amend or supplement this Objection at any time or at any further hearing on the Motion.

## CONCLUSION

40. The Committee respectfully requests that the Court (i) deny the Motion in its entirety; and (ii) grant the Committee such other and further relief as the Court deems just and appropriate.

Dated: November 4, 2011

                          Respectfully submitted,

                          **COZEN O'CONNOR**

                          Mark E. Felger (No. 3919)
                          Simon Fraser (No. 5335)
                          1201 North Market Street
                          Suite 1400
                          Wilmington, DE 19801
                          Tel: (302) 295-2000
                          Fax: (302) 295-2013

                          -- and --

                          **LOWENSTEIN SANDLER PC**
                          Kenneth A. Rosen, Esq.
                          Jeffrey D. Prol, Esq
                          Timothy R. Wheeler, Esq.
                          Eric Chafetz, Esq.
                          65 Livingston Avenue
                          Roseland, New Jersey 07068
                          Tel: (973) 597-2500
                          Fax: (973) 597-2400

                          *Counsel to the Official Committee*
                          *of Unsecured Creditors of Qualteq, Inc.,*
                          *d/b/a VCT New Jersey, Inc., et al.*