## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| QUALTEQ, INC., | ) | Case No. 11-12572 (KJC) |
| d/b/a VCT NEW JERSEY, INC.,[1] | ) | |
| | ) | Jointly Administered |
| Debtor. | ) | |
| | ) | **Hearing Date: December 16, 2011 at 10:00 a.m.** |
| | ) | **RE: Docket No. 106** |

## DEBTORS' OBJECTION TO BANK OF AMERICA'S MOTION
## TO TRANSFER VENUE OF THE CHAPTER 11 CASES TO
## <u>THE NORTHERN DISTRICT OF ILLINOIS (DOCKET NO. 107)</u>

The above-captioned debtors and debtors in possession (collectively, the "*Debtors*"), by and through their undersigned counsel, hereby object (the "*Objection*") to the motion (Docket No. 107; the "*Venue Motion*") of Bank of America, N.A. ("*BANA*") for entry of an order transferring the venue of the Debtors' properly-venued chapter 11 cases (the "*Chapter 11 Cases*") to the United States Bankruptcy Court for the Northern District of Illinois. In opposition to the Venue Motion, the Debtors respectfully represent as follows:

## <u>PRELIMINARY STATEMENT</u>

### A.    <u>Summary of Argument</u>

These Chapter 11 Cases are about restoring the Debtors' business operations to a sound footing, preserving and maximizing the value of the Debtors as a going concern, safeguarding

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer-identification number, are: (i) Qualteq, Inc., d/b/a VCT New Jersey, Inc. (4600); (ii) 1400 Centre Circle, LLC (7091); (iii) 5200 Thatcher, LLC (6991); (iv) 5300 Katrine, LLC (6016); (v) Anar Real Estate, LLC (9267); (vi) Automated Presort, Inc. (0850); (vii) Avadamma LLC (4775; 4800; 4810; 4829); (viii) Creative Automation Company (4350); (ix) Creative Investments, a General Partnership (5992); (x) Fulfillment Xcellence, Inc. (3461); (xi) Global Card Services, Inc. (4581); (xii) Unique Data Services, Inc. (1068); (xiii) Unique Embossing Services, Inc. (1043); (xiv) Unique Mailing Services, Inc. (2594); (xv) University Subscription Service, Inc. (3669); (xvi) Versatile Card Technology, Inc. (5258); (xvii) Veluchamy LLC (3434); and (xviii) Vmark, Inc. (5904).

over a thousand jobs, and fulfilling the Debtors' fiduciary obligations to their many stakeholders. The implications of these Chapter 11 Cases are indeed far reaching, impacting, among others, over 1,300 employees located in various locations domestically, hundreds of customers and vendors that span the globe, nearly twenty secured lenders and equipment financers holding over $66 million in debt collectively, and many unsecured creditors.

To that end, the Debtors have chosen this Court as the best forum to reorganize their businesses for the benefit of their countless stakeholders and parties in interest. That venue is legally proper in this Court is not in serious dispute.

More importantly, however, are the parties that have lined-up alongside the Debtors, who are also in strenuous opposition to the Venue Motion, and who support keeping these Chapter 11 Cases in this Court. These parties include: (i) the official committee of unsecured creditors (the "*Committee*"), who stands as a fiduciary to *all* the unsecured creditors in these cases; (ii) Sterling National Bank ("*Sterling*") – the debtor in possession lender; and (iii) PYN, S.A. de C.V., the largest unsecured creditor in these cases.

Moreover, many individual creditors who have not retained counsel – including a number of Illinois-based creditors – have expressed to the Debtors their desire that these cases remain in Delaware:

- The Debtors received a letter from Dreamworks Graphic Communications, LLC, a creditor located in Skokie, Illinois.

- The Debtors received a letter from TW Graphics Group, a vendor located in Commerce, California.

- The Debtors received a letter from Advance Mailing Services, Inc. a creditor located in West Chicago, Illinois.

- The Debtors received a letter from Lamb, Little & Co., a creditor located in Schaumburg, Illinois.

- The Debtors received a letter from Lake County Press, Inc., a creditor located in Waukegan, Illinois.

2

- The Debtors received a letter from Protec Product Technology Corp., a creditor located in Rumson, New Jersey.

- The Debtors received a letter from Superior Staffing, a creditor located in Melrose Park, Illinois.

- The Debtors received a letter from Case Packaging LLC of Illinois, a creditor located in Downers Grove, Illinois.

- The Debtors received a letter from Silone Company Limited, a creditor located in Hong Kong.

- The Debtors received e-mail correspondence from Apollo Colours NA, a creditor located in Ontario, Canada.

- The Debtors received e-mail correspondence from Gans Ink and Supply Co., a creditor located in Los Angeles, California.

- In addition, the Debtors have received numerous verbal indications from creditors that they desire that these cases remain in Delaware.

*See* Group Exhibit A attached hereto). Importantly, as courts have recognized, "creditors are the best judge of their own interests." *Camden Ordnance Mfg. Co. of Ark., Inc. v. United States Trustee (In re Camden Ordnance Mfg. Co. of Ark., Inc.)*, 245 B.R. 794, 802 (E.D. Pa. 2000). All of these parties represent the true economic interests in these Chapter 11 Cases, and all of them desire to see venue remain in Delaware, such that the Debtors are preserved as a going concern and *all* parties in interest may reap the benefits of the Debtors' continued operations. To achieve those ends, these parties have supported and continue to support the efforts of the Debtors and their independent Chief Restructuring Officer to stabilize the Debtors' businesses and avoid a downward spiral (the very thing the Chapter 11 Cases were initiated to prevent).

Standing in stark contrast to these parties in interest is BANA, one of the largest multi-national lending institutions in the world (with both offices and counsel in Wilmington), which is neither a shareholder nor a creditor of any of the Debtors. It is not a counterparty to any unexpired leases or executory contracts with the Debtors, nor is it an affiliate of any of the Debtors. BANA has no claim - contingent or otherwise – against any of the Debtors, and it does

3

not have a direct financial interest in the Chapter 11 Cases. In short, BANA has no standing to bring the Venue Motion, and consequently, the motion should be denied solely on this basis.

Unlike all of the Debtors' legitimate creditors, employees, and other constituencies, BANA's sole focus is furthering stayed litigation that it has been pursuing against certain of the Debtors' shareholders in Chicago, Illinois (the "*Shareholder Litigation*"). Although the Debtors are not and have never been defendants in the Shareholder Litigation – which relates to a failed bank previously owned by certain of the Debtors' equity holders – BANA nevertheless seeks to transfer venue of these Chapter 11 Cases to Chicago so that it can suck the Debtors into the ambit of that litigation.

The Venue Motion is utterly without merit, and only serves to distract the Debtors from proceeding in due course toward a reorganization that will preserve value for all parties in interest in these cases. Thus, the Venue Motion presents the Debtors, the Committee, and all of the true creditors and parties in interest in the Chapter 11 Cases with a unique (though extremely troubling) dilemma – an external threat to the Debtors' effort to maximize value from a party that does not even have a direct economic interest in the Debtors' Chapter 11 Cases.

Looking past BANA's nonexistent standing in these Chapter 11 Cases to the merits of the Venue Motion, BANA fails to meet its heavy burden of establishing that venue in Chicago is more appropriate than in this Court.

As an initial matter, it is largely undisputed – even by BANA – that venue of these Chapter 11 Cases is proper in this District pursuant to 28 U.S.C. § 1408. When venue is proper, substantial deference is given to the debtor's venue selection, and it can only be changed upon a strong showing under 28 U.S.C. § 1412 that transferring venue would be in the interest of justice

4

or for the convenience of the parties. Here, BANA has not and will not be able to meet its

burden. The evidence will show, among other things, that:

- Venue is proper in Delaware.

- The Committee wants to retain the Chapter 11 Cases in Delaware, as do a host of the Debtors' true stakeholders. Given that the Debtors and the Committee concur on venue – not to mention one of the Debtors' debtor in possession lender, the Debtors' largest individual unsecured creditor, and numerous of the Debtors' smaller creditors – BANA's self-interested arguments that venue, although proper, is inconvenient to creditors or not in the interests of justice lose all force.

- For the reasons enumerated below – namely the substantial harm that the relief BANA is seeking would cause to the Debtors' efforts to reorganize and maximize value for their true stakeholders – transfer of the Chapter 11 Cases cannot possibly further the interest of justice.

- The Debtors are a large multifaceted business, with significant operations in New Jersey and Iowa (in addition to their locations in Illinois). For example, Qualteq, Inc. – the lead debtor and a Delaware corporation, employs approximately 165 people and manufactures approximately 75% of the credit cards that are later personalized by other Debtors – the core of their business – at a plant in New Jersey (far closer to Delaware than BANA's preferred venue in Illinois).

- The Debtors sell their products to businesses around the world, and their customer base is widely-disbursed geographically (both nationally and internationally). The Debtors top six customers by sales are located in Wilmington, Delaware (two customers); L ouisville, Kentucky; New York, New York; White Plains, New York; and Seattle, Washington. In fact, of the five largest customers for each of the operating Debtors, approximately 37.5% of the sales volume comes from East Coast customers (as opposed to 17.5% from Illinois-based customers).

- The Debtors' largest unsecured creditor – with a claim which substantially exceeds that of the next largest creditor – is located in Mexico, and supports the Debtors' choice of venue in Delaware. Three of the Debtors' other top 30 creditors are located abroad (Singapore, Hong Kong, and Canada), while additional creditors are located in various states other than Illinois – including Wisconsin, Michigan, North Carolina, Maryland, Texas, Missouri, Ohio, Iowa, New Jersey, and California.

- Notwithstanding BANA's strained effort to portray the Debtors' national creditor base as being Illinois-centric (even based on BANA's own numbers, Illinois-based creditors hold less than 30% of the total dollar amount of claims against the Debtors), the Debtors' creditors are geographically disbursed across the United States and around the world, with creditors located in at least thirty-one states and two Canadian provinces, not to mention China, Mexico, Germany, India,

5

Singapore, the United Kingdom, and Hong Kong. Delaware – a short drive from the Philadelphia international airport and with train connections to New York and up the Eastern seaboard – is as accessible as any location in the United States.

- Venue in Delaware is significantly more convenient for the professionals involved in the Chapter 11 Cases – the parties who have and will be consistently attending hearings in this matter. For example, the Committee's lead counsel is based out of New Jersey and its financial advisor is based out of New York (both a short train ride from Delaware). The Committee is also represented by experienced Delaware counsel, as are the Debtors. The Debtors' Chief Restructuring Officer has primary offices in Los Angeles and New York (and the CRO professionals primarily involved in the representation are based out of New Jersey, California, and Washington), and at least a dozen creditors are represented by Delaware counsel. Although the Debtors' lead counsel's main office is in Illinois, it also has offices in New York, and given that the Delaware venue is more convenient for almost all of the professionals who will be appearing in these cases, a transfer of venue would result in additional travel burdens on all of the other professionals (and many creditors having to retain new counsel), causing the estates to incur tremendous additional costs.

- The members of the Committee are: Plami S.A. De. C.V. located in Mexico; Quad/Graphics Inc., located in Sussex, Wisconsin; Xpedx, located in Clifton, New Jersey; and JDSU Uniphase Corporation located in Milpitas, California. None of the members of the Committee are Illinois-based.

- Sterling Bank, the DIP Lender to Qualteq, Inc. ("*VCT-NJ*"), is headquartered in New York.

- Even BANA – the non-creditor movant – is headquartered in Charlotte, North Carolina – making venue in Delaware no more inconvenient in Delaware (a short drive from the Philadelphia international airport) than Illinois. Moreover, it is represented by Mayer Brown LLP, a law firm with large offices and hundreds of attorneys in New York and Washington DC.

To change venue of a case based on 28 U.S.C. § 1412, BANA must show compelling equities. The rare decisions transferring chapter 11 cases initially filed in proper venues demonstrate the acute showings required. BANA has made no such showing.

BANA's arguments for moving venue center on the fact that (i) the majority of the Debtors' assets and employees are in Illinois and most of the Debtors are organized there and (ii) various proceedings related to the Debtors' shareholders are located in Illinois. The location of pending litigation, which is stayed and which does not directly involve any of the Debtors,

6

should have no bearing on where the Debtors' restructuring proceedings take place, particularly when the Debtors, and their primary stakeholders, have properly chosen a forum. Moreover, as discussed below, courts in this District have routinely held that many of the other "factors" that BANA raises in support of the Venue Motion do not control the venue issue, and certainly are not sufficient in and of themselves to deprive a debtor of a properly chosen venue.

Perhaps more important, however, is the particular harm and economic impact that transferring venue of the Chapter 11 Cases will likely have on the Debtors' businesses as a practical matter. As the Debtors have previously explained, their customers – largely national banks and Fortune 500 companies – entrust sensitive customer lists and credit card information to the Debtors. Prior to the bankruptcy, these customers were becoming increasingly concerned about negative publicity stemming from litigation involving the Debtors' shareholders. The Debtors then newly-appointed CRO decided to initiate the Chapter 11 Cases to avoid a situation where significant customers began to pull their business – which could have quickly spiraled out of control as others followed suit.

The Debtors' management team and CRO have spent countless hours explaining the filing, and reassuring customers that the Debtors remain healthy and able to service their orders just as they always have done before. A large part of that process has been explaining the planned and voluntary nature of the process – that the Debtors initiated the bankruptcy proceedings in Delaware of their own volition, and that if anything, customers should be reassured because they can now transparently see that the Debtors are healthy and working to reorganize and stabilize their operations under the leadership of an independent CRO.

To this point, this effort has assisted tremendously in averting a mass exodus of customers, and the Debtors are hopeful that they will ultimately be able retain the majority of

7

their customer base and reorganize in a manner that will provide a substantial return to creditors. Given the already fragile state of the customer base, however, a venue transfer would significantly endanger the Debtors' long-term recovery prospects by directly undermining the message of stability that the Debtors and their CRO have been conveying to retain key customers. The Debtors are adamantly convinced that to transfer venue at this time would have a catastrophic impact on their businesses.

For these reasons, as set forth in greater detail below, the Debtors believe the Venue Motion is utterly misplaced and should be denied.

## I.
## BANA LACKS STANDING TO
## PURSUE THE RELIEF REQUESTED
## IN THE VENUE MOTION

As noted above, BANA is not a lender to or otherwise owed money by the Debtors. It is not a shareholder or a counterparty to any unexpired leases or executory contracts, and is not an affiliate of the Debtors. BANA has no claim – contingent or otherwise – against any of the Debtors, and it does not have a direct financial interest in the Chapter 11 Cases.

Nonetheless, BANA asserts that it has standing under section 1109(b) of the Bankruptcy Code, which provides that "[a] party in interest, including ... a creditor, an equity security holder, or any indenture trustee, may appear and be heard on any issue in a case under this chapter." 11 U.S.C. §1109. The fundamental premise underlying section 1109 of the Bankruptcy Code is that only parties with an economic interest in a proceeding should have a say in how such proceedings reach resolution. *See* 7 Collier on Bankruptcy P 1109.01 (Lawrence P. King, 15th ed. rev. 1996) ("The general theory behind this section is that anyone holding a *direct financial stake* in the outcome of the case should have an opportunity . . . to participate in the adjudication of any issue that ultimately shape the disposition of his or her interest") (emphasis

8

added); *In re Ionosphere Clubs*, 101 B.R. 844, 849 (Bankr. S.D.N.Y. 1989) (holding that while the term "party in interest" should be construed broadly, "the party requesting standing must either be a creditor of a debtor to invoke the court's jurisdiction or be able to assert an equitable claim against the estate").

Courts have consistently found that entities with no direct economic stake in the outcome of a bankruptcy proceeding have no standing to participate in such proceeding. *See, e.g.*, *Matter of Goldman,* 82 B.R. 894, 895 (Bankr. S. D. Ohio 1988) (creditors of an estate's creditor are not parties in interest); *In re Lifeco Inv. Group, Inc.*, 173 B.R. at 487 (stating that the purpose of §1109(b) is to place a limit on who can participate in a case in order to make the case manageable); *In re Comcoach Corp. (Roslyn Savings Bank v. Comcoach Corp.)*, 698 F.2d 571 (2d Cir. 1983) (mortgagee not a party in interest entitled to seek relief from automatic stay because neither a creditor or debtor); *In re Ledges Apartments*, 54 B.R. 85 (Bankr. D. Vt. 1985) (bank not a "party in interest" entitled to move to modify automatic stay where it had status of neither debtor nor creditor and sought modification only to proceed against debtor's partnership who guaranteed credit); *In re Baker*, 29 B.R. 174 (Bankr. N. D. Miss. 1983) (assignee of debtor's creditor not a party in interest); *In re Tour Train Partnership (Greg Restaurant Equip. and Supplies, Inc. v. Tour Train Partnership)*, 15 B.R. 401 (Bankr. D. Vt. 1981) (judgment creditor of creditor of bankrupt not a "real party in interest" because the judgment creditor was not itself a direct creditor of the bankrupt); *Great Road Service Center, Inc. v. Golden, et al. (In re Great Road Service Center, Inc.)*, 304 B.R. 547, 550 (B.A.P. 1st Cir. 2004) (holding that to have standing to challenge an order the order must directly and adversely affect the appellant's pecuniary interests).

9

In a feeble attempt to establish standing, BANA points to certain post-judgment citations to discover assets that it served on the children of the Debtors' founders – Pethinaidu and Parameswami Veluchamy (the "*Veluchamys*") – and certain of the Debtors. In simplified form, BANA maintains that, in an effort to avoid paying a judgment to BANA stemming from litigation in the District Court for the Northern District of Illinois, the Veluchamys fraudulently transferred assets to their children and that some of these assets were later used to purchase equity interests in or provide funding to the Debtors. Consequently, BANA concludes that by virtue of certain potential fraudulent transfer causes of action with respect to the Veluchamys and their children, it may have an interest in certain of the Debtors, and therefore, it has a say in these chapter 11 cases. *See* Venue Motion at 18-19.

The fundamental flaw in BANA's theory lies in the chapter 7 bankruptcy proceeding that the Veluchamys have filed in the Northern District of Illinois. A chapter 7 trustee (the "*Chapter 7 Trustee*") has been appointed in that case, and absent a grant of derivative standing by the bankruptcy court in the chapter 7 case, any derivative causes of action – including causes of action relating to the improper transfers of assets from the Veluchamys – belong to and can only be pursued by the Chapter 7 Trustee for the benefit of all creditors of the Veluchamys. *See* 11 U.S.C. § 544 (granting trustee the powers of, among other things, a hypothetical judicial lien creditor, to "avoid any transfer of property of the debtor"); *see, e.g., BRS Associates, L.P. v. Dansker,* 246 B.R. 755, 772 (S.D.N.Y. 2000) ("Where the trustee has standing to sue, the automatic stay prevents creditors or shareholders from asserting the claim notwithstanding that outside of bankruptcy, they have the right to do so.") (citations omitted); *PHP Liquidating, LLC v. Robbins, et al., (In re PHP Healthcare Corp.),* 128 Fed. Appx. 839, 844-845 (3d Cir. 2005) (finding that an individual creditor of a debtor may not assert a claim for fraudulent transfer

10

belonging to all creditors); *Bd. of Trs. v. Foodtown, Inc.*, 296 F.3d 164, 169 (3d Cir. 2002) ("Once a company or individual files for bankruptcy, creditors lack standing to assert claims that are 'property of the estate.'") (citation omitted); *Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, 554 (3d Cir. 2003) (absent a grant of derivative standing, only a trustee or debtor in possession may pursue claims under 11 U.S.C. § 544); *Keene Corp. v. Coleman (In re Keene Corp.)*, 164 B.R. 844, 850 (Bankr. S.D.N.Y. 1994) (enjoining creditor lawsuits against non-debtor third parties to recover assets allegedly fraudulently transferred by the debtor and holding that "the trustee alone" has the authority to assert claims to recover property under 11 U.S.C. § 544).

In this case, absent a proper grant of derivative standing in the chapter 7 bankruptcy, the only party that possibly has standing to assert claims to recover assets that the Veluchamys allegedly improperly transferred is the Chapter 7 Trustee on behalf of all of the Veluchamys' creditors. It should be noted that no lawsuit of this nature has been initiated let alone reduced to judgment by BANA or anyone else, including the Chapter 7 Trustee, and at this point in time, any talk of fraudulent transfer liability with respect to the Veluchamys is utter speculation. At best, BANA is a "creditor of a potential creditor" on account of highly speculative claims of a highly complex and uncertain nature against non-Debtor parties.

11

Moreover, even if it had a lien on the fraudulent transfer actions (which it does not),[2] BANA would still not have standing in the Debtors' Chapter 11 Cases. *See, e.g., Greg Restaurant Equip. and Supplies, Inc.* v. *Tour Train Partnership*, (*In re Tour Train Partnership*) 15 B.R. 401, 402-403 (Bankr D.Vt. 1981) (a judgment creditor of a secured creditor of a debtor was not a "party in interest" even though the judgment creditor had a lien against the assets of the secured creditor held by the debtor – only the secured creditor had the right to enforce its rights and the lien was not grounds for permitting the judgment creditor to interfere with the orderly administration of the debtor's estate); *In re Lifeco Inv. Group, Inc.*, 173 B.R. 478, 487 (Bankr. D. Del. 1994) (ancillary receiver of insolvent insurance company lacked authority to pursue insurance company's cause of action against bankrupt insurance holding company, and did not have standing in holding company's Chapter 11 case as a "creditor of a creditor has no standing in a bankruptcy case" ); *Roslyn Savings Bank* v. *Comcoach Corp.* (*In re Comcoach Corp.)*, 698 F.2d 571 (2d Cir. 1983) (a mortgagee was not a "party in interest" where the mortgagee only had a claim against property mortgaged by a creditor of the debtor and had no direct claim against the debtor's possession of the property for rent of property); *In re Morris*

---

[2]    BANA asserts that it has a perfected security interest in fraudulent conveyance actions against the Veluchamys. Under Illinois law, which would govern whether BANA had a perfected security interest in any fraudulent conveyance actions, BANA's citations do not extend to personal property purportedly transferred prior to the entry of the judgment against the Veluchamys in December 2010, but can only attach to property owned or actually controlled by the judgment debtor at the time of service of the citations. *See American National Bank and Trust Co. of Chicago v. Vinson*, 273 Ill.App.3d 541, 544 (1st Dist. 1995). Under 735 ILCS 5/2-1402, which governs citation liens, a lien extends only to "choses in action," which are actions that are in the process of being litigated. *See Gonzalez v. Profile Sanding Equipment, Inc.*, 333 Ill.App.3d 680, 694 (1st Dist. 2002). Because no causes of action for fraudulent transfer had been initiated under Illinois prior to BANA's issuance of the citations, its liens cannot extend to any future fraudulent transfer actions. Moreover, and perhaps more fundamentally, a fraudulent transfer action is not "personal property" of a debtor that can be subject to a citation lien. Indeed, it is well settled law that a fraudulent transfer cannot be set aside by the granting party (*i.e.,* the debtor). *See American National Bank and Trust Co. of Chicago*, 273 Ill.App.3d at 544. Those causes of actions belong to the debtor's creditors, which, as discussed in the body of this Objection, belong to the Chapter 7 Trustee in the Veluchamys' chapter 7 bankruptcy case.

12

*White Handbags Corp.*, 77 F.2d 827 (2d Cir. 1935) (holders of a lien imposed upon the assets of the debtor that was transferred to and in the possession of a non-debtor company had no standing in the debtor's bankruptcy). BANA is thus not a creditor of the Debtors, and is not otherwise a "party in interest" with a direct financial stake in these cases.[3]

While BANA may have a direct financial stake in the Veluchamys' personal bankruptcy, it plainly does not have a direct financial stake in (or standing to assert claims in) the Debtors' Chapter 11 Cases. To the extent any party has a direct financial stake in these cases based on alleged fraudulent transfers made by the Veluchamys it would be the Chapter 7 Trustee. *See*, *e.g.*, *In re JMP-Newcor Int'l*, 225 B.R. 462, 464 (Bankr. N.D. Ill. 1998) (creditor that had assigned its claim no longer had a direct economic interest and was thus no longer a party in interest, even where assignment agreement provided that creditor would share in any recovery obtained by the assignee); *In re WHET, Inc.*, 33 B.R. 438, 440 (Bankr. D. Mass. 1983) (equity holder of debtor was not party in interest in corporate bankruptcy proceeding where equity holder had filed for bankruptcy and his equity interests thus vested in the chapter 7 trustee).

In fact, even the Chapter 7 Trustee likely does not have a direct financial stake (or standing) in the Chapter 11 Cases given that the fraudulent transfer claims are really against the Veluchamy's children. The Debtors are at most an alleged subsequent transferee – and based on BANA's allegations, a subsequent transferee many steps removed from the initial transfer at issue. Certainly, if the Chapter 7 Trustee herself lacks standing, then BANA – a step removed – does not itself possess standing.

---

[3] BANA's reliance on *Dexia Credit v. Rogan*, 629 F.3d 612 (7th Cir. 2010) to argue that the issuance of the citations – and B of A's previous (and now-stayed) effort to obtain turnover of assets that it claims were fraudulently transferred by the Veluchamys – somehow makes it a creditor or party-in-interest in the Chapter 11 Cases is wholly misplaced. *Dexia*, merely stands for the uncontroversial proposition that a judgment creditor may initiate supplemental proceedings to obtain turnover of judgment creditor assets held by third parties. *See id.* at 622-625.

13

BANA has also, in other proceedings before this Court, asserted standing on the basis of "certain payments" it received from "Qualteq" within the 90 days leading to the bankruptcy filing, arguing that as a result it *could be* subject to a hypothetical avoidance action in the future. Not only has BANA failed to identify the payments it received, but has also failed to identify the Debtor-parties from whom payment was received. The Debtors are aware of two payments from a Debtor entity to BANA within the 90-day preference period. The first is from Debtor Unique Data Services, Inc. in May of 2011 in a total amount of $1,559,365.08, which paid off two secured loans – one, an equipment loan and the other a line of credit. The second is a payment in the amount of approximately $268,890.02 in July of 2011 from VCT-NJ, which was also on account of a secured equipment loan.

It is black letter law that there is no preference exposure to a secured creditor that receives payment on account of a fully secured loan. *See* 11 U.S.C. §547(b); *see also In re Powerine Oil Co.*, 59 F.3d 969 (9th Cir. 1996) (holding that a payment to a fully secured creditor is not preferential); *In re J. Silver Clothing, Inc.*, 453 B.R. 518, 533 (Bankr. D. Del. 2011); *In re USA Detergents, Inc.*, 418 B.R. 533, 542 (Bankr. D. Del. 2009); *In re Radnor Holdings, Corp.*, 353 B.R. 820, 847 (Bankr. D. Del. 2006); *In re Cavalier Industries, Inc.*, 2002 WL 975868 (Bankr. E.D. Pa. 2002). Moreover, as this Court ruled on November 3, 2011, this Court will not find standing in the main bankruptcy case for a preference recipient even where that recipient had *actually* been sued. *See* Hearing Transcript dated November 3, 2011 at 8 (Mr. Kiriakos: I'm a potential preference defendant; The Court: Well, I've held ... that an actual preference defendant did not have standing in the main case ... I think you're one step removed from that ....).

---

Again, this argument wholly ignores the intervening chapter 7 bankruptcy and the fact that only the Chapter 7 Trustee has standing to assert derivative claims.

14

Thus, as the Debtors are not aware of any basis for seeking a clawback of any payments to BANA on preference grounds, it is apparent that BANA's supposed "preference" exposure is nothing more than a very thinly veiled attempt to fabricate standing when its lack of any legitimate interest in these cases is so plainly obvious.[4]

BANA bears the burden of establishing its own standing by a preponderance of the evidence. *See*, *e.g.*, *Gulf States Exploration Co. v. Manville Forest Prod. Corp.* (*In re Manville Forest Prod. Corp.*), 896 F.2d 1384, 1390 (2d Cir. 1990) (holding that a party seeking to transfer venue of a bankruptcy case bears the burden of establishing its standing by a preponderance of the evidence); *In re Stone & Webster, Inc.*, 373 B.R. 353, 361 (Bankr. D. Del. 2007) *aff'd*, 00-02142(PJW), 2008 WL 4890896 (D. Del. Nov. 12, 2008) (moving party bears burden of establishing that it is a party in interest within the meaning of section 1109 of the Bankruptcy Code); *Great Road Service Center, Inc. v. Golden, et al. (In re Great Road Service Center, Inc.),* 304 B.R. 547, 550 (B.A.P. 1st Cir. 2004) (same). As BANA has plainly not met its burden, the Venue Motion must be denied.

## II
## VENUE OF THE DEBTORS' CHAPTER 11 CASES IN THE DISTRICT OF DELAWARE IS PROPER

### A. Pursuant to 28 U.S.C. §1408, Venue is Proper

Venue in chapter 11 cases is governed by Section 1408 of title 28 of the United States Code. Pursuant to § 1408(1), the venue of a chapter 11 case is proper when the case is commenced in the district in which the debtor is domiciled or maintains its principal place of business. In pertinent part, the statute provides:

---

[4]     The Debtors expressly reserve the right to respond to supplement the Objection to respond to any further theories advanced by BANA before this Court in an attempt to manufacture standing with respect to the Venue Motion.

15

> A case under title 11 may be commenced in the district court for
> the district-
>
> (1) in which the domicile, residence, principal place of business in
> the United States, or principal assets in the United States of the
> person or entity that is the subject of such cases have been located
> for the 180 days immediately preceding such commencement...

28 U.S.C. §1408(1). VCT-NJ is incorporated in Delaware. Thus, the venue of VCT-NJ's

chapter 11 case is proper in Delaware. No party disputes this point.

The venue of a debtor's chapter 11 case is also proper when the case is commenced in the

same district in which the chapter 11 case of an affiliate of the debtor is pending. Section 1408(2)

provides, in pertinent part that a case under title 11 may be commenced in the district court for

the district "in which there is pending a case under title 11 concerning such person's *affiliate*,

general partner or partnership." 28 U.S.C. §1408(2) (emphasis added). Pursuant to section

101(2) of the Bankruptcy Code, an "affiliate" includes:

> (A) entity that directly or indirectly owns, controls, or holds with
> power to vote, 20 percent or more of the outstanding voting
> securities of the debtor;
>
> \*\*\*
>
> (B) corporation 20 percent or more of whose outstanding voting
> securities are directly or indirectly owned, controlled, or held with
> power to vote, by the debtor, or by an entity that directly or
> indirectly owns, controls, or holds with power to vote, 20 percent
> or more of the outstanding voting securities of the debtor; and
>
> (C) person whose business is operated under a lease or operating
> agreement by a debtor, or person substantially all of whose
> property is operated under an operating agreement with the debtor;

11 U.S.C. §101(2)(A), (B), (C), and (D).

16

The other Debtors are all affiliates of VCT-NJ – either via ownership or as a result of management agreements. As a result, venue for all of the other Debtors is proper in this Court.[5]

## B.     28 U.S.C § 1408 Rebuts Much of BANA's Case

To avoid overlooking the obvious, it is best to begin by first examining the language of 28 U.S.C. §1408 – the statute that governs where chapter 11 bankruptcy proceedings may be filed. *See Hartford Underwriters Ins. Co. v. Union Planters Bank, N. A.*, 530 U.S. 1 (2000) (reminding courts to begin by examining the underlying statute).

Section 1408(1) is very clear. It first differentiates between where a debtor's principal place of business is, where its state of incorporation (domicile) is, and where its principal assets are, and then pronounces that any of the three are legal venue selections. If the intent was that venue should be only where the majority of the debtor's employees, assets, and creditors are located, as BANA urges here, why would the statute expressly legalize venues in either the state of incorporation or states where the debtor's principal assets are? Clearly, the statute would be drafted differently if it truly codified what BANA apparently would like the law to be.

---

[5]     In fact, the propriety of venue in this District is virtually undisputed in the Venue Motion. In Footnote 5 of the Venue Motion, however, BANA does suggest that venue of three of the Debtors – Veluchamy, LLC, Creative Investments, a General Partnership ("*CIGP*"), and University Subscription Service, Inc. ("*USS*") "may not be" proper in Delaware. However, Veluchamy, LLC and CIGP are Debtors that own real property that is managed by Anar Real Estate, LLC – another Debtor – under separate management agreements. As such, venue is proper for both entities pursuant to 28 U.S.C. §1408(2)(A) and section 101(2)(C) of the Bankruptcy Code (both set forth above). As for USS, 30% of its equity is owned by Arun and Anu Veluchamy, who in turn own 80.2% of the voting stock of V-Mark, Inc. (which itself owns 100% of the equity of VCT-NJ). Although venue thus appears to be proper under 28 U.S.C. §1408(2)(B), the propriety of venue for USS is something of a moot point because the Debtors and their CRO – with the support of the Committee – have filed a motion to effectuate the dismissal of USS's chapter 11 case. As set forth more fully in the dismissal motion, upon further review of USS's business, it has become apparent that USS is not a core part of the Debtors' business operations (it sells print magazine subscriptions which no other Debtor does). Moreover, USS is losing money, and due to the declining nature of its industry (*i.e.* the printed newspaper and magazine business), the Debtors' CRO believes that its downward slide will only continue, and that it is instead appropriate to allow it to wind up its operations and pay off its non-insider unsecured creditors.

17

WM1A 1014768v1 11/04/11

Likewise, section 1408(2) expressly allows a debtor to select the venue of an affiliate's chapter 11 case even if none of the affiliate's employees, assets, or creditors are located in the venue selected. If the affiliate rule was to apply only when the largest affiliate files first – as BANA implicitly suggests by its complaints about the fact that most of the entities are not organized in Delaware – surely it would have been drafted that way. Again, BANA appears to believe that the statute means something other than what it actually says – an assumption that is plainly incorrect.

Finally, 28 U.S.C. § 1412 does nothing to refute the presumption that a debtor, over a creditor's objections, can prosecute its chapter 11 case in a venue other than where the majority of its employees, assets, and creditors are located. If that was the intent, Section 1412 would simply read that the court "shall" transfer a case to such venue on request of a party in interest – instead, the statute places a significant burden on the moving party to overcome the deference given to a debtor's choice of forum (discussed below).

## C. The Debtors' Choice of Forum is Entitled to Substantial Weight and Should Not be Disturbed

It is well established that when venue is proper, a debtor's choice of forum is to be accorded substantial weight and deference. *See In re Del. & Hudson Ry. Co.*, 96 B.R. 467, 469 (Bankr. D. Del. 1988), *appeal denied*, 96 B.R. 469 (D. Del.), *aff'd*, 884 F.2d 1383 (3d Cir. 1989); *see also In re Caribbean Petroleum Corp., et al.*, Case No. 10-12553 (KG) (Bankr. D. Del. Sept. 16, 2010) [Docket No. 159] at 54-58 ("Because venue is proper here, the Court will accord substantial weight in deference to debtor's choice of forum ..."). In such circumstances, the power to change venue should be used sparingly. The entity requesting a change of venue must demonstrate by a preponderance of the evidence that a transfer of venue is necessary to achieve the statutory purposes of the Bankruptcy Code. *Puerto Rico* v. *Commonwealth Oil Refining Co.*

18

(*In re Commonwealth Oil Refining Co.*), 596 F.2d 1239, 1241 (5th Cir. 1979) (citing *In re Fairfield P.R., Inc.*, 333 F. Supp. 1187, 1189 (D. Del. 1971)); *In re PWS Holding Corp.*, Case Nos. 98-212 (SLR) through 98-223 (SLR), 1998 Bankr. LEXIS 549 (Bankr. D. Del. Apr. 28, 1998); *Gulf States Exploration Co.* v. *Manville Forest Prods. Corp.* (*In re Manville Forest Prods. Corp.*), 896 F.2d 1384, 1390 (2d Cir. 1990); *In re Windtech, Inc.*, 73 B.R. 448, 450 (Bankr. D. Conn. 1987).

Absent tangible, substantial justification, a change of venue of properly filed chapter 11 cases from one district to another with resulting interruption of the pending administration should not be condoned. *In re United Button Co.*, 137 F. 668 at 671 (D. Del. 1904); *DeRosa* v. *C.P.P. Corp.* (*In re Legend Indus. Inc.*), 49 B.R. 935, 938 (Bankr. E.D.N.Y. 1985); *see also Great Am. Res., Inc.*, 85 B.R. 444, 446 (Bankr. N.D. Ohio 1988). Accordingly, absent unequivocally clear justification, a request for a transfer of venue of properly filed chapter 11 cases should be denied.

Given the heavy burden on a moving party to establish that transferring venue is appropriate, such cases are indeed rare. The few decisions that do actually transfer chapter 11 cases show the high level of need that must be shown to warrant a transfer, and illustrate that a transfer of venue in this case is completely unwarranted. In *In re Malden Mills Industries*, 361 B.R. 1, 11 (Bankr. D. Mass. 2007) for example – *a case that BANA relies heavily on* – venue was transferred primarily because the cases had been pending before the bankruptcy court in Massachusetts for over five years before being re-filed in the District of Delaware – so the real basis for the transfer was the familiarity of the Massachusetts bankruptcy court and the debtors' blatant forum shopping. In *In re Éclair Bakery Ltd.*, 255 B.R. 121 (Bankr. S.D.N.Y. 2000), the court transferred the case because the debtor had been in another district three previous times and

19

was obviously shopping for a different result. In *In re Raytech Corp.*, 222 B.R. 19 (Bankr. D. Conn. 1998), the case was transferred because the debtor was an affiliate of other debtors in chapter 11 cases pending in different districts.

Even the cases BANA relies upon belie the weakness of its argument. As already noted above, *Malden Mills* is totally inapposite in that it involved a case which for five years had been pending in Massachusetts, and the filing in Delaware constituted blatant forum shopping. Similarly, *In re Innovative Communications,* another case heavily relied upon by BANA, an involuntary bankruptcy petition was filed against a conglomerate of public utility companies which solely provided services in the United States Virgin Islands (the "*USVI*") and was one of the primary employers there. *See In re Innovative Communications, LLC,* 358 B.R. 120, 122 (Bankr. D. Del. 2006). The Debtors promptly filed a competing voluntary bankruptcy in the USVI, and the Debtors' motion to transfer venue of the involuntary proceeding in Delaware was ultimately granted largely because of (a) the substantial deference that the Court properly gave to the *Debtors'* choice of forum (as should be true here) and (b) the unusually high local interest in having the bankruptcy cases proceed in the USVI. *See id.* at 127. As none of these unusual factors are remotely applicable here, rather than supporting BANA's argument, *Innovative Communications* merely serves as a reminder of the unusual circumstances required to transfer a properly venued chapter 11 case.

Finally, the third case BANA largely bases its argument on is *Matter of Ocean Properties of Delaware, Inc.*, a real estate asset case involving two properties located on Miami Beach, which similarly has little applicability to a case involving an operating company with a national and international creditor base and operations in multiple states. *See Matter of Ocean Properties of Delaware, Inc.,* 95 B.R. 304, 306 (Bankr. D. Del. 1988).

20

BANA has failed to demonstrate by the requisite preponderance of evidence that a change of venue for these properly filed chapter 11 cases is warranted. Given, among other things, national (and in fact, global) scope of the Debtors' business and the geographical location of the Debtors' creditors, professionals, and major parties in interest who will be actually appearing in this matter, the Debtors' decision to commence chapter 11 cases in the District of Delaware in conformity with the venue provisions of 28 U.S.C. § 1408 should not be disturbed. This is particularly true where the Committee and other true economic parties in interest in the Chapter 11 Cases strongly oppose transfer – conclusively rebutting BANA's argument that the Debtors' selected forum is somehow inconvenient.

As shown below, BANA's bald allegations of "forum shopping" based solely on the fact that the majority of Debtors' employees, assets, and creditors are not located in Delaware do not satisfy section 1412 and are inapposite to reorganization cases as shown by all the successful reorganizations occurring far away from the debtors' headquarters. The existence of unrelated court proceedings involving the Debtors' shareholders in Illinois also do not tip the balance in favor of a transfer. Indeed, the facts of this case are remarkably similar to those in *Caribbean Petroleum* where the Court denied a motion to transfer venue brought by a party whose narrow interests did not "speak for other creditors and the constituency that [spoke] for other creditors … the official committee of unsecured creditors, oppose[d] transfer as [did] … the largest unsecured creditor and" the debtors' postpetition debtor in possession financing lender. *See Caribbean Petroleum*, Case No. 10-12553 (KG) (Bankr. D. Del. Sept. 16, 2010) [Docket No. 159] at 54-58 (discussed in greater detail in Section III below).

## II.
## TRANSFER OF THE DEBTORS' CHAPTER 11 CASES IS NEITHER IN THE INTEREST OF JUSTICE NOR FOR

## THE CONVENIENCE OF PARTIES

28 U.S.C. §1412, provides "[a] district court may transfer a case or proceeding under chapter 11 to a district court for another district, in the interest of justice or for the convenience of the parties." Although section 1412 allows for significant discretion, courts have identified six factors, among others, to help guide the use of that discretion.[6] These six factors are:

> (1) the proximity of creditors of every kind to the court;
>
> (2) the proximity of the debtor to the court;
>
> (3) the proximity of witnesses necessary to administration
>
> of the case;
>
> (4) the location of the assets;
>
> (5) the economic administration of the estate; and
>
> (6) the necessity for ancillary administration.

*In re Garden Manor Assocs., LP*, 99 B.R. 551, 553 (Bankr. S.D.N.Y. 1988) (Brozman, B.J.); *see Manville Forest Prods.*, 896 F.2d at 1390; *In re PWS Holding Corp. supra*; *In re Ernst Home Ctr., Inc.*, Case Nos. 96-1088 and 96-1089 (PJW), (Bankr. D. Del. Aug. 28, 1996);[7] *Del. & Hudson Ry. Co.,* 96 B.R. at 468; *see also, Commonwealth Oil*, 596 F.2d at 1241; *In re Fairfield P.R.*, 333 F. Supp. 1187, 1189 (D. Del. 1971).

---

[6]  Although BANA cites to the statutory provision for transfer of civil actions, 28 U.S.C. § 1404, that provision has little, if any, relevance to a motion pursuant to Section 1412 to transfer the venue of a bankruptcy case. Moreover, even if Section 1404 did have some applicability, great deference is still accorded under Section 1404 to the plaintiff's choice of forum. "The plaintiff's forum choice should not be disturbed unless the balance of factors tips heavily in favor of a transfer." *Rubinbaum LLP v. Related Corp. Partners V, L.P.*, 154 F. Supp. 2d 481, 495 (S.D.N.Y. 2001).

[7]  Copies of all unpublished decisions will be filed under separate cover.

WM1A 1014768v1 11/04/11

## A.    The Proximity Of The Court To Interested Parties

### 1.    The Debtors, Creditors, and Other Parties in Interest

Wilmington, Delaware is a close, short drive from the Philadelphia International Airport and a brief train ride (well under two hours) from New York City (and even less from New Jersey).  Thus, Wilmington is easily accessible by all parties in interest.  Indeed, access to Wilmington by any means of transportation is probably easier and more convenient then getting to downtown Chicago.

Moreover, even were BANA correct in its assertion that 42.86% of the Debtors' creditors (accounting for only 28.93% of the total claims pool) are located in Illinois, that should not have much bearing on the proprietary of the relief requested.  First, contrary to BANA's convoluted attempts to portray most of the creditor body as "closer to Illinois than Delaware," in the era of air travel a creditor located in Texas or Missouri can travel to Wilmington at least as easily as it can travel to Chicago.[8]  In fact, as noted above, the Debtors' creditor body is widely disbursed including creditors from at least thirty-one states and two Canadian provinces, not to mention China, Mexico, Germany, India, Singapore, the United Kingdom, and Hong Kong.  The Debtors' largest unsecured creditor is located in Mexico City, Mexico, and is opposed to the Venue Motion.  Among the top 30 creditors alone there are three creditors located abroad (Singapore, Hong Kong, and Canada) and an additional 13 creditors located in states other than Illinois (Wisconsin, Michigan, North Carolina, Maryland, Texas, Missouri, Ohio, Iowa, New Jersey, and California).

---

[8]    "[H]igh stakes controversies in this era often involve proceedings in distant locations, and the burden of travel in the mid-1990's is greatly mitigated by the convenience and speed of the airplane." *Texaco Inc.* v. *Sanders* (*In re Texaco Inc.*), 182 B.R. 937, 949 (Bankr. S.D.N.Y. 1995) (court denied request to transfer venue of action by Texaco against Louisiana landowners).

Additionally, the entire argument that creditors will be inconvenienced by having to fly to Wilmington to testify and appear in these Chapter 11 Cases is misconceived. Individual creditors rarely appear and testify in chapter 11 cases. *See Am. Film Techs.*, Case No. 93-1207 (PJW), at 71 (Bankr. D. Del. Nov. 23, 1993).[9] Although BANA includes several hand-picked quotes in a misguided effort to make it appear that Delaware courts place significant weight on the location of creditors, a closer review of the cases reveals that they are wholly inapposite to the case at hand.[10]

Similarly, a debtor's employees are rarely required to participate in the chapter 11 cases. *See Pic 'N Pay Stores*, Case No. 96-182 (PJW) (Bankr. D. Del. Mar. 8, 1996) ("[m]y experience suggests that rank and file employees do not participate in a bankruptcy proceeding.... I do not see the rank and file employees as having a role in the administration of this case."). The Debtors' rank and file employees will not be required to travel repeatedly to Delaware to testify or otherwise appear in Court in the Debtors' chapter 11 cases. Indeed, practice shows that it is

---

[9] To the extent witnesses located in the Chicago area are required to testify, it is likely that such witnesses will appear in this Court voluntarily, without need for the issuance of a subpoena. *See In re ML-Lee Acquisition Fund II, L.P.*, 816 F. Supp. 973, 978 (D. Del. 1993) ("[T]he Defendants are not likely to encounter problems obtaining the testimony of witnesses from Hills and Petco."); *Schwarzkopf Techs. Corp* v. *Ingersoll Cutting Tool Co.*, 820 F. Supp. 150, 152 (D. Del. 1992) ("Without some explanation of the nature and reasons for the unwillingness of Ingersoll's former employees to testify, the Court is unable to give much weight to this issue.").

[10] For example, in *Malden Mills*, venue was transferred primarily because the cases has been pending before the bankruptcy court in Massachusetts for over five years before being re-filed in the District of Delaware – so the real basis for the transfer was the familiarity of the Massachusetts bankruptcy court and the debtors' forum shopping. *See In re Malden Mills Industries*, 361 B.R. 1, 11 (Bankr. D. Mass. 2007). Again in *Old Delmar Corp.*, as opposed to the location of creditors, the factor which "overwhelmingly militate[d] in favor of transfer" was that the bankruptcy case was a single asset real estate case and the debtors' only asset, a garden apartment complex, was located in Houston, Texas. *See In re Old Delmar Corp.*, 45 B.R. 883, 884 (S.D.N.Y. 1985). Finally, *Dodart Properties* was an extreme case in which transferring venue was appropriate because not only were *all* the debtor's assets in California but *nearly all* of the creditors (over 90%) were located in California – significantly more than twice the percentage of creditors located in Illinois in the present case (42% numerically and only 28.93% of the dollar amount owed using BANA's own numbers). *See In re Dodart Properties, LLC*, 2009 WL 3202403, at *1 (D. Utah Sept. 30, 2009).

24

the professionals retained by a debtor that are routinely required to appear in court. As stated in

*In re Safety-Kleen Corp.*, Case No. 00-2303 (PJW), at 47 (Bankr. D. Del. July 11, 2000):

> The issue of convenience of the parties is not where the headquarters may be or what operations come out of those headquarters, but where the parties, or I should say the principals of the debtor have to be in connection with the chapter [11] case. [The principals] don't have to move out of South Carolina [to Delaware where the cases are filed] to continue the cash management system, to continue the day-to-day management and operations and none of that has anything in particular to do with appearances in this court.
>
> Indeed, as I'm sure most parties here are well aware, rarely, rarely do we have extended hearings in this court which would require any significant dislocation from one's operating services in a headquarters.
>
> Equally important, and I think parties here well recognize this, the vast majority of activities in this court involve lawyering and only a very, very limited number of principals have to appear on very, very limited occasions for a very limited period of time in this forum in connection with processing a Chapter 11 case.

## 2. Professionals Involved in the Chapter 11 Cases

As described above, in large chapter 11 cases the location of retained professionals is of paramount importance to the venue transfer analysis. *See American Film Technologies*, at 67 (denying transfer motion and stating that the "Debtor has employed bankruptcy counsel in Philadelphia and locally and also has employed the firm of Wolfe, Block, Schorr and Solis-Cohen for corporate matters. As the record shows, Wolfe Block is located in Philadelphia."); *see also Pic 'N Pay Stores*, at 27 ("Of course the Crummy Del Deo firm is located in Newark, New Jersey, and a Delaware forum is obviously more convenient than a Charlotte, North Carolina forum."); and *In re Safety-Kleen Corp., supra; cf. Ernst Home Ctr.*, at 8 ("While the Jones Day

25

firm has a significant pre-and post-petition relationship with the Debtors.... I note that Jones Day has a major office in Los Angeles, an easy two and one-half hour flight to Seattle.").

Wilmington offers a particularly favorable venue for the parties who have been actually appearing in Court in connection with the Debtors' chapter 11 cases. For example, the Committee's lead counsel is based out of New Jersey (a short train ride away), and the Committee's financial advisor is located in New York City (same). The Debtors' Chief Restructuring Officer has offices in Los Angeles and New York, and the primary people working on the engagement are based out of California, Washington State and New Jersey (meaning that venue in Delaware is either more convenient or about the same since either will require travel). The Debtors' lead counsel has offices in both Chicago and New York,[11] and the Debtors also have experienced Delaware counsel. A change in venue would just increase the number of professionals who have to travel to attend hearings.

## B.     The Location of the Debtors' Assets

The Debtors' primary assets are located in (a) New Jersey (where VCT-NJ operates the Debtors' primary plastic card production facility); (b) Iowa (where Debtor Automated Presort, Inc. operates a mail sorting facility); and (c) Illinois (where the balance of the Debtors' assets are located).

### 1.     The Location of Assets is not a Significant Factor in a Reorganization Proceeding Involving an Operating Company

Even if the location of the Debtors' assets favored the Northern District of Illinois as the appropriate venue, numerous courts have found in like situations that the location of assets is not a significant factor in deciding whether venue should be transferred. Indeed, a review of the case

---

[11]     In the Venue Motion BANA asserts that the Debtors are represented by two sets of Chicago-based bankruptcy attorneys. This is not correct. The Debtors' only bankruptcy attorneys are Goldstein & McClintock LLLP (with offices in Chicago and New York) and Fox Rothschild, LLP (based in Wilmington).

law establishes that location of assets becomes significant only where – unlike here where the Debtors' are operating companies that are seeking to reorganize, not liquidate – the Court is dealing with a Chapter 7 liquidation or a single asset real estate case. For example, the Fifth Circuit in *Commonwealth Oil*, found that the location of a debtor's assets "is of little importance in a Chapter 11 proceeding where the goal is financial rehabilitation, not liquidation."[12] Similarly, in *In re Pic 'N Pay Stores Inc.*, Case No. 96-182 (PJW) (Bankr. D. Del. Mar. 8, 1996), the Court held that "[u]nlike the number of reported decisions in this district and elsewhere and unreported decisions in this district which resulted in a transfer of venue, this case does not involve a debtor whose principal asset is commercial real estate located in a district other than this one." *See also Safety-Kleen*, 2001 WL 1820321, *3 (Bankr. D. Del. 2001) ("location of assets is generally only significant in a single asset real estate case or liquidation").

As the objective of the instant cases is reorganization and not liquidation, the location of the Debtors' assets should carry little weight in the venue analysis.

## 2. The Location of the Debtors' Books and Records is Not Dispositive

The fact that many of the Debtors' books and records are located in Illinois is also of minor relevance to the venue transfer analysis. As stated in *Tse v. Ventana Medical Systems*:

> technological advances have substantially reduced the burden of having to litigate in a distant forum…. These technologies have

---

[12] In *In re United Button Co.*, the Third Circuit also found that location of the principal place of business is not conclusive:

> Proximity of place of business of the bankrupt to the court entertaining proceedings in bankruptcy, though a circumstance sometimes entitled to weight is by no means conclusive.

> Much stress was laid by counsel for the petitioning creditors upon the fact that the principal place of business of the bankrupt was located in New York City. Assuming this to be the case…. I am unable to perceive that the fact has much materiality or relevancy, as orders and directions may be sent to the manufacturing plants in Mass. from the receiver in Wilmington, as well as from one in New York or Chicago. 137 F. 668, 672-74.

27

> shortened the time it takes to transfer information, reduced the bulk
> or size of documents or things on which information is recorded
> and can be transferred and have lowered the cost of moving that
> information from one place to another.

slip op at p.16 (D. Del. Nov. 25, 1997) (quoting *Wesley-Jessen Corp. v. Pilkington Visioncare, Inc.,* 157 F.R.D. 215, 218 (D. Del. 1993)); *see also Int'l Filter Corp.*, 33 B.R. at 957 ("[M]odern discovery devices lessen the concern that full and fair discovery cannot be had far from the courthouse."); *In re Suzanne de Lyon, Inc.*, 125 B.R. 863, 868 (Bankr. S.D.N.Y. 1991) ("Although the books and records of the company are kept in Houston, these records can easily be transported to New York when needed. Consequently, this factor does not weigh in favor of transfer"). The Debtors' books and records are largely computerized and the necessary files can be transported quickly and cheaply by electronic mail via the internet to Delaware as necessary. Accordingly, as is increasingly true, the present location of computerized books and records is of little significance for purposes of the Venue Motion.

## C. Transfer of Venue Would Not Promote The Efficient And Economic Administration of the Estate

Numerous decisions encompass the conclusion that the most important factor in determining a request for a change of venue is whether the requested transfer would promote the economic and efficient administration of the estate. *See Commonwealth Oil*, 596 F.2d at 1247; *Am. Film Techs.*, at 71 ("With respect to the economics of the administration of the estate . . . I think the case law suggests that this is really the most important factor to be considered . . . ."). Here, this factor weighs strongly in favor of maintaining venue in Delaware.

As set forth above, BANA's sole objective in seeking to transfer venue of the Chapter 11 Cases is to embroil the Debtors in the Shareholder Litigation. One major goal of the bankruptcies and the appointment of an independent CRO is to limit this, thereby preventing an

28

exodus of customers by showing that the Debtors remain healthy, in control of their businesses, and focused on the world-class services they have always provided.

In many cases, an exodus of customers might not result from a venue transfer. However, prior to the bankruptcy filing, customers – who entrust their most sensitive customer data to the Debtors – were becoming concerned about the Debtors' ability to continue providing services in light of the negative publicity stemming from litigation involving the Debtors' shareholders. To avoid a situation where significant customers began to pull their business – which could have quickly spiraled out of control as others followed suit – the Debtors' newly-appointed CRO decided to initiate the instant Chapter 11 Cases.

Although the filing obviously came as a surprise to many customers, the Debtors' management team and CRO were prepared to immediately address the issue, and they have spent countless hours explaining the filing, and reassuring customers that the Debtors remain healthy and able to service their orders just as they always have done before. A large part of that process has been explaining the process – that the Debtors initiated the bankruptcy proceedings in Delaware of their own volition, and that if anything, customers should be reassured because they can now transparently see that the Debtors are healthy and working to reorganize their operations under the leadership of an independent CRO.

To this point, this effort has assisted in averting a mass exodus of customers, and the Debtors are hopeful that they will ultimately be able retain the majority of their customer base and reorganize in a manner that will provide a substantial return to creditors. Given the already fragile state of the customer base, however, and the fact that the filings already resulted largely from jitters caused by negative publicity stemming from the Shareholder Litigation, little could be worse for the Debtors' reorganization prospects than having venue transferred at the behest of

BANA – a non-creditor whose sole objective is to embroil the Debtors in litigation. If the Venue Motion is granted it would send the exact wrong message to the Debtors' customers, and the Debtors' CRO may be powerless to prevent the exodus he has been struggling to avoid.

For this reason alone, it is inconceivable that transferring venue would promote the efficient or economic administration of the Debtors' estates. To the contrary, it will almost certainly result in even more vehement attacks by BANA, increased litigation, and likely severe damage to the Debtors' reorganization prospects. Thus, the Committee vehemently opposes a venue change, as do many creditors who are seriously interested in maximizing the value of the Debtors' assets.

Even if one were to ignore these "big picture" concerns, a transfer would still not be efficient or economical. As noted above, although creditors rarely appear in court, given the Debtors' national creditor base, a Delaware venue is no less convenient than Illinois. Moreover, Delaware is substantially more convenient for the majority of the professionals retained in these chapter 11 cases – the parties who typically appear in court.

Additionally, there is no denying that disruption would occur simply because of the logistics and the bureaucratic paperwork in effecting a transfer of a large chapter 11 bankruptcy proceeding to another court. *See, e.g., Pic 'N Pay Stores*, at 24; *cf. Am. Film Techs.*, at 72 ("I am very concerned about a possible serious disruption which could be caused to the case if it were transferred to California."). The amount of time necessary for an Illinois bankruptcy court to familiarize itself with the Debtors' chapter 11 cases would be significant. Accordingly, the efficient and economic administration of these cases favors maintaining venue in Delaware.

BANA's argument that a venue transfer is appropriate because Illinois is "likely to supply the applicable state law for many of the claims involving the Debtors" is also misplaced.

30

First, this argument ignores the fact that contract interpretation rarely differs state to state and this Court is more than competent to interpret the "loan and forbearance agreements" – the primary examples given by BANA. Moreover, BANA's entire argument revolves around documents that it states are a key part of its (now stayed) dispute with the Debtors' shareholders. *See* Venue Motion at ¶ 44. BANA does not explain how these documents would be needed in connection with the Debtors' reorganization proceeding, and to the extent that some conceivably might be, as noted, having administered some of the largest and most complex chapter 11 cases in history, this Court is more than competent to interpret corporate loan documents and related agreements in this case, if necessary. BANA's argument, therefore, does not weigh in favor of a transfer of venue of these chapter 11 cases to Northern District of Illinois.

## D. The Relative Economic Harm to the Debtors and Other Interested Parties

As noted above, a venue transfer would significantly endanger the progress the Debtors' Chief Restructuring Officer has made to date to stabilize the Debtors' operations and prevent a significant loss of customers. This point cannot be overstated in this case, where the Shareholder Litigation has served as a major distraction to the Debtors' businesses, which are still struggling to recover even under the stable auspices of this Court. To shift venue at this juncture, when relations with customers, vendors and lenders have just normalized, would only work to completely upset the apple cart, creating further confusion, instability and massive disruption to the Debtors' businesses. The Debtors genuinely believe that to transfer venue at this time would have catastrophic impact on their businesses.

A venue transfer would also result in additional travel time and inconvenience for the professionals who will be primarily attending court proceedings, and many creditors will likely be required to obtain new counsel altogether. A new court would require substantial time to get

31

up-to-speed on the many matters this Court has already ruled on and addressed, as will a new United States Trustee (after the Initial Debtor Interviews and 341 Meetings have been substantially completed). In sum, neither the interest of justice nor the convenience of the parties would be served by a change of venue to the Northern District of Illinois – the only thing that would be served is BANA's selfish litigation interests. BANA has not satisfied the stringent burden necessary to overcome the strong deference to be accorded to a debtor's choice of venue.

## III.
## THE WEIGHT OF AUTHORITY SUPPORTS RETENTION OF THESE CHAPTER 11 CASES IN THE DISTRICT OF DELAWARE

A review of the case law in this District evidences that venue transfer requests denied with more potent facts than here. In *Caribbean Petroleum* for example, all of the Debtors' assets were in Puerto Rico, including some of its most significant petroleum facilities and its only deepwater dock for major vessels, and ninety percent of its creditors were located in Puerto Rico (though 70% in amount was held by non-Puerto Rican creditors). As here, the official committee of creditors and numerous other parties in interest opposed the transfer motion, and the professionals were located in and around Delaware. The Court denied the motion to transfer and explained:

> I will say right at the start that I'm going to deny the motion to transfer. We have pending before me the secretary of Treasury of Puerto Rico's motion to transfer venue to Puerto Rico and of the Puerto Rico Electric Power Authority. And the motion now is opposed by the debtors, the official committee of unsecured creditors, AOT, the debtors' largest unsecured creditor, First Bank of Puerto Rico and its DIP lender and Chartis Insurance Company, debtors' insurer of claims.
>
> And the movant argues that it filed the motion promptly; that the debtors' assets and operations are in Puerto Rico; that ninety percent of debtors' creditors are located in Puerto Rico; that the witnesses are in Puerto Rico; Puerto Rico law ma y apply; the

32

secretary will have to conduct a tax audit; and employees are located in Puerto Rico and Delaware may be an inconvenient forum for the employees. And although the foregoing are all important considerations, the Court is that it must deny the motion as I've indicated.

First of all, venue is appropriate in this district. 28 United States Code, Section 1408(1) provides if the case is properly commenced in the district in which the debtor is domiciled; .... Because venue is proper here, the Court will accord substantial weight in deference to debtors' choice of forum ....

The burden is on the movant to prove by a preponderance of the evidence that the transfer serves the interest of justice and the convenience of the parties. Here, the facts strongly militate against transfer .... This is a sale case. The Bankruptcy Code is applicable and will largely control the outcome of the bankruptcy case before the Court. And where Puerto Rican law, the Court is fully able to determine and apply Puerto Rican law. As has been indicated, this Court is no stranger to the laws of other jurisdictions. When a Court's jurisdiction is largely based on the fact that a corporation's domicile here -- that there is jurisdiction over a corporation's domicile here, it's clear that very often this Court is asked to apply foreign law.

I'm also moved by the fact that the movant, Hacienda, does not speak for other creditors and the constituency that speak for other creditors, which is the official committee unsecured creditors, opposes transfer as does AOT, the largest unsecured creditor, and First Bank. And cases supporting that important factor are Cuarcao (ph.) and In re Fairfield Puerto Rican Inc. Transferring the case is fraught with risk for these debtors. The sale process and the DIP loan facility both largely hinge upon this case moving promptly and any delay regardless of how necessary it would be in the event of a transfer put these debtors at risk that they will not be able to accomplish the milestones that are really the center of the sale process and the recovery for creditors.

*In re Caribbean Petroleum Corp., et al.*, Case No. 10-12553 (KG) (Bankr. D. Del. Sept 16, 2010) (Dkt # 159), transcript of hearing from September 8, 2010, at 54 -58 (Bankr. D. Del. 2010).

33

Although the facts in support of maintaining venue in Delaware in the present case are much stronger, Judge Gross's reasoning in *Caribbean Petroleum* is directly on point. As in the present case, the Committee and the most significant creditors are strenuously opposed to a transfer. Additionally, chief Judge Gross was obviously well aware of the practical implications that the proposed transfer would have with respect to the debtors' efforts to maximize value. While in *Caribbean Petroleum* the concern was that a transfer would derail a sale (whereas here the danger is losing customers who the Debtors and their CRO have been working to reassure), the harm that a transfer would cause in the present case is at least equally acute and could devastate the value that the entire case is designed to preserve. As is logical in connection with the reorganization of an operating company, chief Judge Gross was not overly-concerned about the location of the assets, nor was he concerned about the hypothetical need to apply foreign law.

Many other examples abound. For instance, in *In re Louise's Inc.,* Case No. 97-514 (JJP) (Bankr. D. Del. June 19, 1997), the bankruptcy court denied the transfer request of a significant secured claim of the debtor despite the fact that Kentucky was the situs of all the debtor's assets.

Similarly, in *American Film Technologies*, the court denied the motion of the largest secured claimholder to transfer venue to California (where all the debtor's employees were located) based on the DIP Lender's proximity to Delaware, the location of the debtors' officers and professionals in New York City and Philadelphia, and the disruption a transfer would have on the administration of the cases. *See also, In re Smith Corona Corp.*, Case No. 95-788 (HSB) (Bankr. D. Del. Sept. 20, 1995). In *In re Safety-Kleen Corp.*, *supra*, the bankruptcy court denied a request to transfer venue of the debtors' chapter 11 cases to the District of South Carolina despite the fact that the debtor's corporate headquarters, assets, books, records and employees were located in South Carolina.

34

Again, these are only a few selected examples. Over the last three decades, hundreds of Delaware venued debtors have successfully reorganized despite the fact that their corporate headquarters, employees, primary assets, and books and records were located thousands of miles from the bankruptcy court. [13] A map of the United States containing just a few examples – but graphically depicting the commonplace nature of the Debtors' restructuring efforts – is attached hereto as Exhibit B. The choice of Delaware venue by these debtors has in no way impacted their ability to reorganize, nor has it impeded the bankruptcy court's ability to successfully administer their cases for the benefit of all parties in interest.

---

[13] Just to give a few examples: Finova Corp. reorganized in Delaware, although it is based in Phoenix. Maxwell Corporation reorganized in New York with its main headquarters in London, England. Global Ocean Carriers Ltd. reorganized in Delaware with its headquarters in Athens, Greece. Meridian Automotive System, Inc. reorganized in Delaware with its headquarters in Detroit. Pliant Corporation reorganized in Delaware with its headquarters just outside of Chicago. Harry and David Holdings, Inc. reorganized in Delaware with its headquarters in Medford, Oregon. Enron Corp. reorganized in New York with its headquarters in Houston. G. Heileman Brewing Co. reorganized in Delaware with its headquarters in LaCrosse, Wisconsin. John Mansville Corp. reorganized in New York with its headquarters in Denver. And the list goes on.

35

Accordingly, for all of the foregoing reasons, the Debtors respectfully submit that BANA has not alleged the requisite facts and cannot establish the requisite proof to overcome the substantial deference to be accorded to the venue selected by the Debtors and endorsed by the Committee (the fiduciary for the Debtors' creditor body) and a number of the Debtors' most significant secured and unsecured creditors – the true parties in interest in the Chapter 11 Cases.

Dated: November 4, 2011
Wilmington, Delaware

FOX ROTHSCHILD LLP

Jeffrey M. Schlerf (DE Bar No. 3047)
Eric M. Sutty (DE Bar No. 4007)
L. John Bird (DE Bar No. 5310)
Citizens Bank Center, Suite 1300
919 North Market Street
Wilmington, Delaware 19801
Telephone: (302) 654-7444
Facsimile: (302) 656-8902

-and-

GOLDSTEIN & McCLINTOCK LLLP
Harley J. Goldstein, Esq. (*Pro Hac Vice*)
Matthew E. McClintock, Esq. (*Pro Hac Vice*)
David A Hall, Esq. (*Pro Hac Vice*)
980 North Michigan Avenue, Suite 1400
Chicago, Illinois 60611
Telephone: (312) 337-7700
Facsimile: (312) 227-2305

*Co-Counsel for the Debtors and*
*Debtors in Possession*

36